1 | WILLIAM J. BRIGGS II (BAR NO. 144717)
2 | HENRY L. SELF III (BAR NO. 223153)
   | LAVELY & SINGER
3 | PROFESSIONAL CORPORATION
   | 2049 Century Park East, Suite 2400
4 | Los Angeles, California 90067-2906
   | Telephone: (310) 556-3501
5 | Facsimile: (310) 556-3615
   | Email: wbriggs@lavelysinger.com
6 |        hself@lavelysinger.com

7 | Attorneys for Plaintiff
   | RICHARD REINSDORF

FILED
CLERK, U.S. DISTRICT COURT

SEP 27 2010
10:35

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RICHARD REINSDORF, an individual,

        Plaintiff,

        v.

SKECHERS U.S.A., INC., a Delaware corporation; SKECHERS U.S.A., INC. II, a Delaware corporation; and DOES 1–10, inclusive,

        Defendants.

CASE NO. CV 10 7181-DDP (SSx)

**COMPLAINT FOR:**

(1) **COPYRIGHT INFRINGEMENT;**
(2) **BREACH OF CONTRACT;**
(3) **STATUTORY UNFAIR COMPETITION**

**DEMAND FOR JURY TRIAL**

Plaintiff RICHARD REINSDORF alleges as follows:

## JURISDICTION AND VENUE

1. The Court has exclusive subject matter jurisdiction of this action pursuant to 28 U.S.C. Sections 1331 and 1338 because this action arises under the Copyright Act, 17 U.S.C. Sections 101 *et seq*.

2. Venue is proper pursuant to 28 U.S.C. Sections 1391 and 1400.

**INTRODUCTION**

3.     The defendants, Skechers U.S.A., Inc., and its affiliates and subsidiaries, have engaged in a stunningly massive, intentional and wilful infringement of the copyrighted photos of Richard Reinsdorf, all in the pursuit of corporate profits.  In a staggering display of corporate hubris, greed, and disdain for the rights of others, Skechers stole the intellectual property of Richard Reinsdorf in pursuit of its profits.

4.     In 2006, Skechers first engaged the services of Reinsdorf, a renowned photographer,  in an effort to help it successfully market its brand of active wear shoes.  Skechers wanted Reinsdorf because he has a natural talent for bringing out the best in his subjects and their surroundings.  Reinsdorf's also knows how to capture energy and action; and he knows how to make the models appear alive and expressive. Through his creativity and genius, Reinsdorf literally captured lightning in a bottle for Skechers.  Reinsdorf's photographs of models were so captivating and universally appealing that Skechers based virtually its entire marketing campaign around Reinsdorf's photographs.  From these seeds of creativity, Skechers grew its plan to literally steal and infringe Reinsdorf's copyrighted images.

5.     When Skechers engaged Reinsdorf's services, it did not hire him as a "work-for-hire."  And, Skechers did not offer to "buy-out" Reinsdorf's rights in the photographs.  Rather, Skechers engaged Reinsdorf's services and his photographs under a very limited license, one for no more than six months with the territory generally confined to North America.  In other words, Skechers could only use Reinsdorf's photographs for a six month period, basically within the United States, and only confined to certain media, *e.g.*, point of sale displays, magazines, and certain outdoor advertisements.

6.     Yet, Skechers completely and utterly ignored the terms of the license.  Rather than confine its usage of Reinsdorf's images to a six month term, Skechers has instead used Reinsdorf's photographs in a completely unauthorized and

1   unlicensed fashion for years.  Rather than confine its usage of Reinsdorf's images
2   to North America, Skechers has instead intentionally and completely unauthorized
3   copied those images and sent the images to its overseas affiliates and subsidiaries to
4   be used in its global marketing efforts, and therefore wilfully exceeding the
5   territorial limits of the license.  And, rather than confine its usage of Reinsdorf's
6   images to point of sale, magazines, and outdoor advertisements, Skechers has
7   instead intentionally and wilfully used the images on its packaging and other
8   unauthorized media.  All of these activities, and those described in this complaint,
9   constitute a serial theft and infringement of Reinsdorf's copyrighted photographs.
10      7.     In federal filings with the Securities and Exchange Commission,
11  Skechers credits its aggressive marketing campaign, which was built almost entirely
12  around Reinsdorf's copyrighted photographs, as being responsible for its record
13  sales growth.   Indeed, the CEO of Skechers, Robert Greenberg, attributes the
14  company's tremendous success to advertising strategies, methods and creative
15  campaigns.    Those campaigns were built almost entirely around Reinsdorf's
16  photographs between 2006 and 2009.  Here is one of Reinsdorf's iconic images used
17  in Skechers' ads:
18
19
20
21                          
22
23
24
25
26
27
28

8. According to David Weinberg, Skechers' Chief Operating Officer, Skechers achieved annual sales of over $1.4 billion in 2009 due substantially to the company's marketing efforts, marketing efforts built almost entirely around Reinsdorf's copyrighted photographs. Because Skechers intentionally and wilfully infringed Reinsdorf's copyrighted photographs, and because Skechers profited from its intentional and wilful infringement of Reinsdorf's copyrighted photographs, Reinsdorf is entitled to a substantial portion of Skechers profits on its annual sales. Reinsdorf believes he is entitled to no less than $250 million dollars arising from Skechers intentional, wilful, wanton, and malicious infringement of his copyrights.

## THE PARTIES

9. Plaintiff Richard Reinsdorf ("Plaintiff" or "Reinsdorf") is, and at all times relevant hereto was, an individual residing in the County of Los Angeles County, State of California. Reinsdorf is a brilliant photographer. He has been described as a "Master of Architectural Fashion" (*Digital Photo Pro*, December 2009). His photography has been widely recognized as blending building design and glamour into provocative images. He has a natural talent for bringing out the best in his subjects and their surroundings. He has a talent to evoke gestures and facial expressions that are both sublime and captivating.

10. Defendant Skechers U.S.A., Inc. is, and at all times relevant hereto was, a Delaware corporation with its principal place of business in the State of California.

11. Defendant Skechers U.S.A., Inc. II is, and at all times relevant hereto was, a Delaware corporation with its principal place of business in the State of California.

12. Plaintiff is presently unaware of the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of such fictitiously named defendants when the same

1  have been ascertained. Plaintiff is informed and believes and based thereon alleges
2  that each of the fictitiously named defendants is responsible in some manner for the
3  occurrences, acts and omissions alleged herein and that Plaintiff's damages were
4  proximately caused by their conduct. Hereinafter, all defendants (including the Doe
5  defendants) will sometimes be referred to collectively as "Defendants" or
6  "Skechers."

7        13.    Plaintiff is informed and believes and based thereon alleges that at all
8  material times Defendants, and each of them, were the agents, employees, partners,
9  joint venturers, co-conspirators, owners, principals, and employers of the remaining
10  Defendants, and each of them, and are, and at all times herein mentioned were,
11  acting within the course and scope of that agency, employment, partnership,
12  conspiracy, ownership or joint venture. Plaintiff is informed and believes and based
13  thereon alleges that the officers, directors and/or managing agents of the business
14  entity defendants authorized, directed and/or ratified the wrongful acts of the
15  employees and representatives of said defendants and, consequently, all of said
16  defendants are jointly and severally liable to Plaintiff.

17                    **FACTS COMMON TO ALL CLAIMS**
18  **Skechers Engages Reinsdorf to Help It Create a Marketing Campaign**
19                         **November 2006 Photo Shoot**

20        14.    In October 2006, Jason Greenberg of Skechers spoke with Reinsdorf's
21  agent at Opus Photo about engaging Reinsdorf for a photo shoot. The details of
22  Reinsdorf's precise engagement were discussed between Reinsdorf's agent, Bobby
23  Heller, and Jill Simonian, an individual in Skechers' marketing department. Based
24  on that brief discussion, Heller sent Simonian an Estimate (No. E00133), dated
25  October 30, 2006, for the proposed project. That Estimate provides in pertinent
26  part: Shooting - Los Angeles 11/16/2006; Usage: Approx (24) images for P.O.S.,
27  World Wide Web and lookbooks (only) for six months. Significantly, Reinsdorf's
28  services were not engaged as a "work-for-hire" nor did Skechers offer to "buy-out"

1    Reinsdorf's rights.  Rather, Simonian notified Heller that the Estimate was approved
2    as written.  Indeed, Greenberg signed the Estimate and faxed it back to Heller as
3    approved.

4         15.    On November 16, 2006, Reinsdorf conducted the photo shoot.  To say
5    that Skechers—Greenberg and his marketing team—was pleased with the results of
6    that photo shoot would be an understatement.  Skechers was absolutely thrilled with
7    Reinsdorf's photography and it used at least 30 of the photos from that session in its
8    marketing campaign.

9         16.    While Reinsdorf granted Skechers a six-month license to use the
10   November 2006 photos for "Point of Sale" advertisements, and the Web and
11   lookbooks, Skechers blithely ignored the terms of that license.  Indeed, the terms
12   of the license were confirmed on an Invoice (No. 00319), dated November 21,
13   2006, generated by Opus and sent to Skechers.  Skechers began to run ads using the
14   November 16 images captured by Reinsdorf in either late January or early February
15   2007.  Thus, the latest that Skechers was authorized to use Reinsdorf's photos from
16   the November 16, 2006, photo shoot was July 2007.  Many, if not all, of those
17   photos were still being used by Skechers as recently as June and July 2010.  Here
18   are some of those images:

 

17.     In fact, many of the 2006 copyrighted images have been found not only in Skechers' retail stores located throughout Southern California, but also in retail establishments nationally.   For example, the 2006 images have been found in Arizona, Florida, Michigan, New Jersey, New York and Texas.  And, in violation of Reinsdorf's rights, Skechers also made copies of some of Reinsdorf's protected images here in the United States and shipped those protected images to various foreign territories, including for example Ecuador and Venezuela, where the images have been extensively used.   Reinsdorf never gave Skechers the right to use his images outside of the United States. Further investigation will likely reveal that the 2006 images can be found wherever Skechers has a retail outlet.   Skechers has therefore violated the terms of the license granted to it for the use of the 2006 images because its use of the images exceeds the terms of the license.

### September 2007 Photo Shoot

18.     In the fall of 2007, Skechers (Jill Simonian) contacted Reinsdorf's agent, Bobby Heller.  Skechers requested Reinsdorf's services for a photo shoot to commence on or about September 19, 2007.  Heller sent Simonian an Estimate (No. E00254) on September 11, 2007.  Again, the Estimate provided that Skechers would be allowed to use Reinsdorf's copyrighted images from the photo shoot for only six months at "Point of Sale," Web, lookbooks and "Out of Home" (Outdoor Ads) displays.  Notably, Reinsdorf's services were not requested as a "work for hire" nor did Skechers offer to buy out Reinsdorf's rights.  (In fact, this course of business dealing—*i.e.*, not requesting Reinsdorf's services as a work for hire nor an offer to buy out Reinsdorf's rights—was repeated for each photo shoot on which Skechers engaged Reinsdorf's services so this fact will not be repeated in order to avoid redundancy.)

19.     Skechers approved the Estimate and on September 19, 2007, Reinsdorf worked the entire day capturing stunning images of models.   On September 24, 2007, Bobby Heller sent Skechers Invoice No. 00599 for the September 19 photo

1    shoot.  That invoice memorialized the terms of the license for use of Reinsdorf's
2    copyrighted works.

3        20.    From Reinsdorf's September 19, 2007, photo shoot, Skechers created
4    ads that used Reinsdorf's protected images as early as December 2007.  Skechers'
5    license to use Reinsdorf's copyrighted images in its advertisements expired no later
6    than June 1, 2008, six months after Skechers first began to use them.  Yet, in
7    violation of Reinsdorf's rights, Skechers has continued to use advertisements
8    containing Reinsdorf's copyrighted images.  Indeed, the images are still up in
9    stores.  And, in violation of Reinsdorf's rights, Skechers made copies of some of
10   Reinsdorf's protected images here in the United States and again shipped those
11   protected images to various foreign territories, including for example Britain and
12   Europe, where the images have been extensively used.  Reinsdorf never gave
13   Skechers the right to use his images on advertisements outside of the United States.
14   Here is an example of the 2007 copyrighted images that Skechers has infringed:

 

21.    Skechers exceeded  the terms of the September 2007 license by its usage of the images past the six-month period and by its foreign use of the images. Doubtlessly, further investigation will reveal that the 2007 images can be found wherever Skechers has a retail outlet.  Skechers has violated the terms of the license granted to it for the use of the 2007 images because its use of the images exceed the terms of the license.

### 2008 Photo Shoots

22.    In 2008, Karey Teng of Skechers contacted Heller in order to secure the services of Reinsdorf.  On or about March 31, 2008, Skechers, through Teng, requested Reinsdorf's services for a photo shoot on April 18, 2008.   Skechers agreed the license term for those images was North America, point of sale, Web and look books, and out of home and print.  (Invoice No. 00800, dated April 23, 2008.)

23.    On April 18, 2008, Reinsdorf again worked his particular brand of magic.  He posed the models in front of the camera, he arranged the backdrop, props, accessories, lighting, he arranged the models so as to present dramatic outlines, and he suggested and evoked the desired expression of the models. (Reinsdorf infused each photo he took for Skechers with a certain degree of personality which entered them.)

 

24.    These images and earlier ones as well as the ads created from the images were found to still be in use long after expiration of the license period and in foreign territories such as Australia, Brazil, Chile, China, Ecuador, France, Japan, Panama, Phillipines, the United Kingdom and elsewhere.

25.    On or about September 30, 2008, Teng, on behalf of Skechers, requested Reinsdorf's services for a photo shoot on October 2, 2008.  Skechers agreed that the license for those images was for six months, United States, point of sale, Web, lookbooks, out of home, print and collateral. (**Invoice No.** 00975, dated October 16, 2008.)

26.    On October 2, 2008, Reinsdorf captured what has apparently become the iconic brand image for Skechers.  He posed a brunette model and suggested that she pout her lips while wearing large brown sunglasses.  The expression on the model invoked by Reinsdorf was similar to capturing lightning in a bottle.  Skechers was more than pleased with the photo.  It was ecstatic.



27.    Many of these Reinsdorf photos have been used in advertisements throughout the world, and according to Skechers the marketing campaign built around these photos has propelled the company's profitability.

28.    Apparently emboldened by its serial infringement of Reinsdorf's rights, Skechers proceeded on a massive scale to further encroach on Reinsdorf's rights when it brazenly decided to copy and use Reinsdorf's photo of the brunette model with the pouty lips as the iconic brand for its products on all conceivable marketing ads, indoor posters, outdoor displays, and on packaging for which it had never obtained a license.  In fact, Skechers uses this photo on approximately 70% of the shoe boxes for women's shoes.  This photo has been used by Skechers to generate excitement in the buying public.  This photo has become the face of Skechers.

**2009 Photo Shoot**

29.    In 2009, Skechers once again contacted Heller in order to secure the services of Reinsdorf.  On or about April 30, 2009, Skechers requested Reinsdorf's services for a photo shoot on May 28, 2009.  Skechers again agreed that the license term for those images was North America, point of sale, Web, look books and, optionally, out of home and print in the same territory.  (Estimate No. E00561, dated April 20, 2009.)

30.    On May 28, 2009, Reinsdorf conducted the photo shoot.  On June 24, 2009, Heller sent Skechers Invoice No. 01169 for the May 28 photo shoot.  That invoice memorialized the terms of the license for use of Reinsdorf's copyrighted works.

31.    From Reinsdorf's May 28, 2009, photo shoot, Skechers created marekting materials that used Reinsdorf's protected images as early as September 2009.  Skechers' license to use Reinsdorf's copyrighted images thus expired no later than April 2010—six months after the first uses.  Yet, in violation of Reinsdorf's rights, Skechers has again continued to use Reinsdorf's copyrighted images beyond the term of the license agreement.  Additionally, although Reinsdorf never

1   authorized Skechers to use any of these images outside of the United States, he has

2   nonetheless discovered such use by Skechers in many foreign territories in Asia,

3   Europe and South America.

4   ### Skechers' Marketing Plan

5   ### Skechers Annual Reports

6   32.   In its 2008 Annual Report, Skechers Chairman and CEO, Robert

7   Greenberg, stated that although 2008 was a tough year for many American

8   businesses, it was imperative for Skechers to maintain its brand image.  According

9   to Greenberg, Skechers was named Company of the Year by *Footwear Plus* despite

10   the economic challenges of 2008.  Greg Dutter, the editor of *Footwear Plus*, said:

11   > As everyone knows, the past year has presented unprecedented

12   > challenges, yet Skechers posted record sales growth.  The company

13   > forged ahead with aggressive marketing campaigns, new launches and

14   > brand extensions — proving time and again that growth opportunities

15   > remain despite a difficult retail climate.

16   33.   Greenberg acknowledged that "our achievements in 2008 include our

17   comprehensive marketing support.  We firmly believe in the power of targeted

18   marketing and continue to develop multimedia campaigns for each of the brands."

19   34.   According to its 2008 Annual Report, Skechers "aggressively promoted

20   its brands through comprehensive marketing campaigns for men, women and

21   children.  During 2008, our Skechers brand was supported by print, television and

22   outdoor campaigns for men and women . . . ."  The 2008 Annual Report states:

23   > With a marketing philosophy of "Unseen, Untold, Unsold," we take

24   > a targeted approach to marketing to drive traffic, build brand

25   > recognition and properly position our diverse lines within the market

26   > place.  Senior management is directly involved in shaping our image

27   > and the conception, development and implementation of our advertising

28   > and marketing activities.  The focus of our marketing plan is print and

television advertising, which is supported by outdoor, trend influence marketing, public relations, promotions and in store support.

*** 

The majority of our advertising is conceptualized by our in-house design team.  We believe that our advertising strategies, methods and creative campaigns are directly related to our success.  Through our lifestyle and image driven advertising, we generally seek to build and increase brand awareness by linking the Skechers brand and our fashion and street brands to the youthful, contemporary lifestyles and attitudes.  We have built on this approach by featuring select styles in our lifestyle ads.  In addition to our compelling Skechers lifestyle ads, we have also created product specific ads for our men's lines to appeal to men as well as women who purchase footwear for men.  Our ads are designed to provide merchandise flexibility and to facilitate the "brands and product designs" direction of evolving footwear fashions and consumer preferences.

***

With a targeted approach, our print ads appear regularly in popular fashion and lifestyle consumer publications, such as *GQ*, *Cosmopolitan*, *Elle*, *Lucky*, *InStyle*, *Seventeen*, *Maxim*, *Men's Fitness*, and *Complex*, as well as in weekly publications such as *People*, *US Weekly*, *Star*, *Sports Illustrated* and *In Touch*, among others.  Our advertisements also appear in international magazines around the world.

***

*Outdoor.*  In an effort to reach consumers where they shop and in high-traffic areas as they travel to and from work, we continued our multilevel outdoor campaign that included kiosks in key malls around

1  the United States and billboards, transportation systems, and telephone

2  kiosks in North America and Europe.  We believe these are effective

3  and efficient ways to reach a broad range of consumers and leave a

4  lasting impression for our brands.

5         ***

6  ***Promotions.***   By applying creative sales techniques via a broad

7  spectrum of media, our marketing team seeks to build brand

8  recognition and drive traffic to Skechers' retail stores, websites, and

9  our retail partners' locations . . . . our imaginative promotions are

10  consistent with Skechers' imagining and lifestyle.

11         ***

12  ***Visual Merchandising.***  Our in-house visual merchandising department

13  supports wholesale customers, distributors and our retail stores by

14  developing displays that effectively leverage our products at the point

15  of sale.  Our point-of-purchase display items include signage, graphics,

16  displays, counter cards, banners and other merchandising items for

17  each of our brands.  <u>These materials mirror the look and feel of each</u>

18  <u>brand and reinforce the image as well as draw consumers into stores.</u>

19

20  Our visual merchandise coordinators ("VMC's") work with our sales

21  force and directly with our customers to insure better sale-through at

22  the retail level by generating greater consumer awareness through

23  Skechers brand displays.  Our VMC's communicate with and visit our

24  wholesale customers on a regular basis to aid in proper display of our

25  merchandise.  They also run in-store promotions to enhance the sale of

26  Skechers footwear and create excitement surrounding the Skechers

27  brand.  <u>We believe that these efforts help stimulate impulse sales and</u>

28  <u>repeat purchases.</u>

35.   The 2008 Annual Report goes on to describe Skechers' product distribution channels.   The report states that there four reportable segments—domestic wholesale sales, international wholesale sales, retail sales and e-commerce sales. In describing its domestic wholesale distribution channel, Skechers notes that its visual merchandise coordinators work with its wholesale customers to ensure that its merchandise and point-of-purchase marketing materials are properly presented.

36.   As for its international wholesale distribution efforts, Skechers notes that its products are sold in more than 100 countries and territories throughout the world.   The report indicates that Skechers generates revenues from outside the United States from three principal sources: (i) Direct sales to department stores and specialty retail stores through Skechers subsidiaries in Canada, France, Germany, Spain, Portugal, Italy, Switzerland, Austria, Malaysia, Thailand, the Benelux Region, the United Kingdom and Brazil; (ii) Sales to foreign distributors who distribute Skechers footwear to department stores and specialty retail stores in countries and territories across Eastern Europe, Asia, Latin America, South America, Africa, the Middle East and Australia, among other regions; and (iii) To a lesser extent, royalties from licensees who manufacture and distribute its non footwear products outside the United States.   Notably, Skechers states that it intends to further increase its share of international footwear market by heightening its marketing in those countries in which it currently has presence through its international advertising campaign, which are designed to establish Skechers as a global brand synonymous with trend-right casual shoes.

### Skechers' 2009 Earnings Call Transcript

On Skechers USA, Inc.'s Fourth Quarter 2009 Earnings Call Transcript, David Weinberg, Skechers Operating Officer, stated that "Key achievements include annual sales of over $1.4 billion in a difficult retail environment, domestic and international backlog of 40% at year's end, and an improved balance sheet with

1  approximately $296 million in cash and short-term investments, representing $6.21

2  per share and current and on plan inventory to support our new divisions and retail

3  store growth." <u>Weinberg made clear that Skechers supports its women's and men's</u>

4  <u>lines with print, outdoor and television campaigns along with grass roots marketing,</u>

5  <u>creating a buzz across America and inspiring considerable press coverage. He said</u>

6  <u>that, with the marketing efforts, helped the company achieve double digit</u>

7  <u>improvement. He specifically noted that Skechers' international subsidiaries utilized</u>

8  <u>the proven marketing campaigns Skechers has created domestically. Weinberg</u>

9  <u>explained that the marketing image reflects the Skechers identity. Indeed, according</u>

10  <u>to Weinberg, the majority of Skechers distributors used the marketing campaigns</u>

11  <u>Skechers creates in-house to support its brands in their region.</u>

12      37.   Weinberg said that, for the year ended at December 31, 2009, net sales

13  were $1.436 billion compared with net sales of $1.441 billion for the prior year.

14  Fourth quarter growth profit was $189.3 million or 48.7% of sales.  Weinberg

15  explained that gross profit for the year ended December 31, 2009 was $621 million

16  dollars, and the gross margin for the year was 43.2%.  He further explained that

17  at December 31, 2009, Skechers had $295.7 million in cash and short-term

18  investments.

19      38.   Weinberg concluded by stating that Skechers' focus in 2010 is on

20  delivering strong product and marketing, coupled with inventory and expense

21  management, and growth in its domestic, international, retail, and e-commerce

22  distribution channels.

23      **Reinsdorf's Photographs are Protected Under Copyright Law**

24      39.   As their author, Reinsdorf owns the copyright in all of the photographs

25  and images he captured during the 2006, 2007, 2008 and 2009 photo shoots for

26  Skechers.  (Attached as Exhibit "A" are true and correct copies of the Copyright

27  Registration Certificates of all of the photographs and images Reinsdorf captured

28  during his 2006, 2007, 2008, and 2009 photo shoots for Skechers.)  Reinsdorf

1   helped arrange the costumes and other accessories that are found in the photographs;

2   he arranged each model so as to present unique and interesting outlines of their

3   figures, and he also arranged and orchestrated the light and shade to capture and

4   evoke certain images from the models; he also directed and suggested and evoked

5   certain desired expressions from the models, expressions that captured unique and

6   universal emotions.  Reinsdorf's photographs are infused with his personal influence

7   such that all of the images he captured are protectable under copyright.   As

8   Reinsdorf never signed an agreement with Skechers that any of his photographs

9   were to be considered a work made for hire, he is the sole copyright owner of all

10  of the images and photographs.

11        40.   Reinsdorf has registered the photographs that he took for Skechers with

12  the United States Copyright Office.  (See Exhibit A.)

13  **<u>Skechers Violated Reinsdorf's Exclusive Rights In the Images</u>**

14        41.   Reinsdorf granted Skechers only limited licenses to use his

15  photographs.  Those licenses generally provided that Skechers could use the images

16  only at point-of-sale, the Web, lookbooks, and out of home advertisements.

17  Skechers was also limited to a sixth month time frame and in only North America.

18  Yet, Skechers exceeded the limits of its license by copying the images onto

19  packaging, mobile displays, poster boards and product inserts.  Moreover, Skechers

20  exceeded the permissible usage of the images by copying those images and including

21  them on product packaging.

22        42.   Skechers has both routinely and egregiously exceeded the terms of its

23  license without authority from Reinsdorf.  Skechers has used Reinsdorf's images

24  long past the expiration of the license.  For example, Skechers still has images

25  Reinsdorf took in 2006 on display in stores throughout the world.  The same can be

26  said for the photo sessions from 2007 and 2008 and 2009.  Most significantly,

27  Skechers converted one of Reinsdorf's most captivating images, that of a young lady

28  in sunglasses and a disco ball, and converted it to its own iconic image and brand

1  and plastered those photographs on the majority of its shoe boxes for woman despite
2  the fact that Skechers was not granted any license for packaging.  Indeed, one of
3  Skechers' entire shoe lines—the Sassy line of footwear—is packaged with this iconic
4  image created by Reinsdorf.  That shoe line alone has sold in excess of a million
5  pairs.   Skechers was never given the right or authority to use Reinsdorf's
6  copyrighted image in this fashion.  Skechers was never permitted to use this image
7  for packaging.  Yet, it brazenly stole this image and wrapped it around virtually
8  70% of the women's shoe boxes that carry Skechers.

9       43.    There can be no question that Skechers has willfully infringed
10 Reinsdorf's copyrights by its conduct.  No doubt Skechers believed that it could
11 trample upon Reinsdorf's rights in its march for increased profits.  Skechers has
12 achieved those profits and now its time to share.

13                          **FIRST CLAIM**

14        **(By Plaintiff For Copyright Infringement Against All Defendants)**

15       44.    Reinsdorf repeats, realleges and incorporates by reference each and
16 every allegation contained in Paragraphs 1 through 43, inclusive, as though fully set
17 forth herein.

18       45.    As alleged hereinabove, Reinsdorf took numerous photographs and
19 images during his 2006, 2007, 2008 and 2009 photo shoots for Skechers.  As their
20 author, Reinsdorf owns the copyright in all such works.

21       46.    Reinsdorf has registered the photographs and images that he took for
22 Skechers with the United States Copyright Office.  (See Exhibit A.)

23       47.    By using Reinsdorf's copyrighted works in the manner described herein
24 including, but not limited to, making unauthorized copies of Mr. Reinsdorf's
25 copyrighted photographs and images, exceeding the permissible usage of the images
26 by copying those images and including them on product packaging, by publicly
27 displaying the photos and images beyond the permissible scope of the limited
28 licenses, making unauthorized copies of the photos and images and distributing those

images in foreign territories, and by the intentional continued exploitation of the copyrighted images and photos beyond the scope of any licenses and without Reinsdorf's necessary permission, Skechers has infringed his copyrights in those works.

48.     By reason of Skechers' past and continuing infringement, Reinsdorf has sustained and will continue to sustain substantial injury, loss and damage.

49.     Reinsdorf is entitled to recover from Skechers the damages sustained by Reinsdorf as a result of Skechers' acts of copyright infringement.  Reinsdorf is at present unable to ascertain the full extent of the monetary damage he has suffered by reason of Skechers' acts of copyright infringement, but Reinsdorf is informed and believes, and on the basis of such information and belief alleges, that he has sustained such damage in an amount exceeding $250 million.

50.     Reinsdorf is further entitled to recover from Skechers the gains, profits and advantages Skechers have obtained as a result of their acts of copyright infringement.  Reinsdorf is at present unable to ascertain the full extent of the gains, profits and advantages Skechers has obtained by reason of its acts of copyright infringement, but Reinsdorf is informed and believes, and on the basis of such information and belief alleges, that such gains, profits and advantages exceed $250 million.

51.     Alternatively, Reinsdorf is entitled to recover an award of statutory damages for Skechers' acts of copyright infringement.

52.     Further irreparable harm to Reinsdorf is imminent as a result of Skechers' conduct, and Reinsdorf is without an adequate remedy at law.  Reinsdorf is entitled to an injunction restraining Skechers, its officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of copyright infringement.

53.     Reinsdorf is further entitled to recover from Skechers an award of his attorneys' fees and costs.

## SECOND CLAIM

**(By Plaintiff For Breach of Contract Against All Defendants)**

54.   Reinsdorf repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 43, and 45 through 48, inclusive, as though fully set forth herein.

55.   As alleged hereinabove, through his agent at Opus Photo, Bobby Heller, Reinsdorf entered into a series of written license agreements with Skechers for its exclusive use of his photos and images from the 2006, 2007, 2008 and 2009 photo shoots.

56.   Reinsdorf has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of his agreements with Skechers.

57.   By using his works in the manner described herein, beyond the scope of the license agreements, Skechers has breached those agreements.

58.   As a result of Skechers' breaches of the agreements, Reinsdorf has been damaged in an amount that is not yet fully ascertainable but, when Reinsdorf has ascertained the full amount of his damages, he will seek leave of court to amend this Complaint accordingly.

## THIRD CLAIM

**(By Plaintiff For Statutory Unfair Competition Against All Defendants)**

59.   Reinsdorf repeats, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 43, and 45 through 48, 55 through 57, inclusive, as though fully set forth herein.

60.   Skechers is, and at all times relevant hereto was, a Delaware corporation with its principal place of business in the State of California.

61.   Skechers acts hereinabove alleged are acts of unfair competition within the meaning of California Business and Professions Code Sections 17200 et seq. Reinsdorf is informed and believes and based thereon alleges that Skechers will

1  continue to do those acts unless the Court orders Skechers to cease and desist.

2      62.    As a result of Skechers' wrongful conduct alleged herein, Reinsdorf has

3  been injured and is entitled to relief, including full restitution of all revenues,

4  earnings, profits, compensation and benefits that may have been obtained by

5  Skechers as a result of such acts of unfair competition.

6      63.    Reinsdorf has incurred and, during the pendency of this action, will

7  incur expenses for attorneys' fees and costs herein.

8                              **PRAYER FOR RELIEF**

9      Wherefore, Reinsdorf prays judgment against Defendants, and each of them,

10  as follows:

11     1.    For actual damages and Defendants' profits in amounts to be

12  determined at trial;

13     2.    For statutory damages in an amount at the discretion of the Court;

14     2.    For restitution of all revenues, earnings, profits, compensation and

15  benefits wrongfully obtained by Skechers;

16     3.    For a preliminary injunction and a permanent injunction enjoining

17  Defendants and their agents, servants, and employees, and all persons acting under,

18  in concert with, or for them from continuing to infringe Reinsdorf's copyrights;

19     4.    For attorneys' fees and costs of suit herein incurred;

20     5.    For interest at the maximum legal rate; and/or

21     6.    For such other and further relief as the Court may deem proper.

22

23  DATE: September 27, 2010                    LAVELY & SINGER
                                                 PROFESSIONAL CORPORATION
24                                               WILLIAM J. BRIGGS II
                                                 HENRY L. SELF III
25

26                                               By:
                                                 WILLIAM J. BRIGGS II
27                                               Attorneys for Plaintiff
                                                 RICHARD REINSDORF
28                                               wbriggs@lavelysinger.com

# DEMAND FOR JURY TRIAL

1

2

3      Plaintiff Richard Reinsdorf hereby reserves his right to a trial by jury on all

4   issues so triable.

5

6   DATE: September 27, 2010                    LAVELY & SINGER
                                                PROFESSIONAL CORPORATION
7                                               WILLIAM J. BRIGGS II
                                                HENRY L. SELF III
8

9                                               By: _____
10                                                   WILLIAM J. BRIGGS II
                                                Attorneys for Plaintiff
11                                              RICHARD REINSDORF
                                                wbriggs@lavelysinger.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28