DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
ROBERT C. WELSH (S.B. #130782)
rwelsh@omm.com
DREW E. BREUDER (S.B. #198466)
dbreuder@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

Attorneys for Defendants
Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD REINSDORF,<br><br>Plaintiff,<br><br>v.<br><br>SKECHERS U.SA., INC.;<br>SKECHERS U.S.A., INC. II; and<br>DOES 1-10,<br><br>Defendants. | Case No. CV10-7181-DDP (SSx)<br>Hon. Dean D. Pregerson<br><br>**[DISCOVERY DOCUMENT: Referred to Magistrate Judge Suzanne H. Segal]**<br><br>**DEFENDANTS SKECHERS U.S.A., INC. AND SKECHERS U.S.A., INC. II'S NOTICE OF MOTION AND MOTION FOR ENTRY OF A PROTECTIVE ORDER GOVERNING CONFIDENTIAL INFORMATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[DECLARATION OF ROBERT C. WELSH AND [PROPOSED] PROTECTIVE ORDER** filed concurrently herewith]<br><br>Courtroom 23 (3rd Floor)<br>Date:   February 7, 2012<br>Time:   10:00 a.m.<br><br>Discovery Cutoff:         April 2, 2012<br>Pretrial Conference:      July 2, 2012<br>Trial Date:                    July 10, 2012 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on February 7, 2010 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 23 (3rd Floor) of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California 90012, defendants Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II ("Skechers") will and hereby do move for the entry of a Protective Order governing the disclosure of confidential information in this action.  This motion for a protective order is brought pursuant to Rule 26(c) of the Federal Rules of Civil Procedure on the grounds that good cause exists to award protective relief to limit the disclosure and dissemination of Skechers' trade secrets and confidential commercial information.  Skechers' proposed Protective Order (filed concurrently herewith) provides necessary safeguards for the parties to produce sensitive and confidential information in this action.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the declaration of Robert C. Welsh and the exhibits attached thereto, the [Proposed] Protective Order filed concurrently herewith, the pleadings and other materials in the Court's record, and such other matters or argument as may be provided on or before the hearing hereof.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 21, November 4, 7, 23, 28, and December 28, 2011, and January 3 and 5, 2012.

Dated:  January 10, 2012                    O'MELVENY & MYERS LLP


By: /s/ Robert C. Welsh
    Robert C. Welsh
Attorneys for Defendants Skechers
U.S.A., Inc. and Skechers U.S.A., Inc. II

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Skechers seek the entry of a standard protective order preventing the dissemination of non-public evidence the parties designate as "confidential."[1] For reasons that have never been adequately explained, Plaintiff and his counsel have simply refused to enter into any protective order governing the production of non-public company records and documents from Skechers. Even though Skechers proposed a version that responded to Plaintiff's stated objections, Plaintiff remained adamant that he would not stipulate. It is now clear that Plaintiff will not stipulate to any protective order, regardless of the terms.

Plaintiff's refusal to stipulate to a standard protective order becomes even more problematic given that he has propounded numerous discovery requests seeking non-public company records and financial information. Skechers has advised Plaintiff that it is ready to produce responsive company documents. Skechers wishes to make these documents "confidential" under the terms of the proposed protective order and thereby obligate Plaintiff and his counsel to only use such materials in the context of this lawsuit and for no other purpose. Plaintiff has made it clear he will not voluntarily agree to such limitations. Accordingly, Skechers has no choice but to bring this motion requesting entry of the attached proposed protective order. Following entry of a protective order, Skechers will produce its documents to Plaintiff.

## II. MEET AND CONFER EFFORTS

As explained below, over the past few months Skechers has repeatedly sought to engage with Plaintiff over the terms of a suitable protective order. However, at every turn Plaintiff has refused to negotiate—notwithstanding repeated

---

[1] The [Proposed] Protective Order submitted by Skechers in connection with this motion is substantively identical to the draft protective order sent by Skechers to Plaintiff on January 5, 2012, and which Plaintiff refused to stipulate to.

accommodations and concessions by Skechers to address Plaintiff's purported concerns.

- On October 21, 2011, Skechers produced the first round of documents responsive to Plaintiff's document requests. As a precautionary measure and in order to expedite the production, Skechers marked these documents "Confidential" and requested that Plaintiff limit disclosure of the documents solely to himself and the attorneys working on the case. Skechers also indicated that it would send over shortly a draft protective order for Plaintiff's consideration. *See* Declaration of Robert C. Welsh ("Welsh Decl."), Exhibit ("Ex.") A (10/21/11 letter from D. Breuder).

- A few weeks later, Skechers forwarded Plaintiff a copy of a standard draft protective order.[2] Because Plaintiff had previously indicated that he was "highly disinclined to agree to [a protective order] if Skechers plans to . . . stamp every single page of every document CONFIDENTIAL," *see id.*, Ex. B (11/4/11 letter from H. Self), Skechers agreed to withdraw its confidentiality designations for more than half of the documents produced on October 21. However, Skechers indicated that if the parties could not agree on a reasonable protective order, this would likely delay production of additional documents until adequate protections were in place. Plaintiff never responded to or acknowledged this concession. *Id.*, Ex. C (11/7/11 letter from R. Welsh and draft protective order).

- For more than two weeks, Plaintiff ignored and refused to address the draft protective order sent by Skechers, notwithstanding multiple requests from Skechers that Plaintiff provide his comments and input.

---

[2] A copy of the November 7, 2011 draft protective order is part of Exhibit C to the concurrently-filed Welsh Declaration.

Welsh Decl. ¶ 5, Ex. D (11/22/11 letter from R. Welsh). Indeed, Skechers heard nothing from Plaintiff until November 23, 2011, when he sent a letter repeating his prior statement that he was "not inclined to agree to" a protective order "given Skechers' apparent plan to stamp every page of virtually every single document CONFIDENTIAL when they plainly are not." *Id.*, Ex. E (11/23/11 letter from H. Self). Notably, Plaintiff raised no substantive objections to the form or content of the proposed protective order. Plaintiff's letter also conveniently ignored Skechers' prior (November 7) offer to withdraw its "Confidential" designations for more than half of the documents produced by Skechers. As it had before, Skechers reserved its right to seek appropriate relief with the Court. *Id.*, Ex. F (11/28/11 letter from R. Welsh).

- On December 28, 2011, the parties participated in a lengthy meet and confer concerning the status of Skechers' remaining document production. During this meet and confer, Skechers explained that it was nearing the completion of a months-long search and investigation for responsive materials, and was prepared to begin producing the remaining batches of documents that week and continuing over the course of the following two weeks. Because of the documents' sensitive nature, however, Skechers requested that Plaintiff revisit its refusal to stipulate to the November 7 draft protective order. Plaintiff's counsel, Mr. Self, agreed to check again with his partner, Mr. Briggs, and the client regarding their willingness to stipulate to entry of the proposed protective order, and promised to get back to Skechers by Friday, December 30, 2011. *Id.* ¶ 8, Exs. G (12/29/11 letter from H. Self) & K (1/6/12 letter from R. Welsh).

- Skechers did not hear back from Plaintiff until January 3, 2012. In his January 3 letter, Plaintiff offered vague assurances that Skechers' documents would only be used for this case, but again refused to enter into a stipulated protective order memorializing this agreement. In addition, Plaintiff raised *for the first time* several new concerns about the November 7 draft protective order. Specifically, Plaintiff indicated that (i) he did not want to have to comply with the "laborious and burdensome document-sealing procedures mandated under Local Rule 79-5 in order to present to the Court any materials so designated in connection with any legal paper . . . filed with the clerk;" (ii) he did not want to bear the "burden of expending further time and attorneys' fees" challenging any of Skechers' confidentiality designations; and (iii) "under absolutely no circumstances" would he agree to an "Attorneys' Eyes Only" level of confidentiality. *Id.*, Ex. H (1/3/11 letter from H. Self).

- In light of Plaintiff's continued refusal to stipulate to a protective order, Skechers indicated that it would seek appropriate relief with the Court. *Id.*, Ex. I (1/5/11 letter from R. Welsh). In a final attempt to address Plaintiff's concerns, however, Skechers sent over a second, revised draft of the proposed protective order. In this second draft, Skechers added language shifting the burden and responsibility of filing an application to seal to the party responsible for the confidential designations at issue (i.e., to Skechers). *Id.*, Ex. J (1/5/12 letter and revised protective order) at § 10. Skechers also explained to Plaintiff that his concerns about an "Attorneys' Eyes Only" level of protection were not well-founded, given that Skechers had not yet designated any documents as "Attorneys' Eyes Only" and did not anticipate doing so. *Id.*, Ex. J (1/5/12 letter from R. Welsh).

4

SKECHERS' MEMORANDUM OF
POINTS AND AUTHORITIES
CV10-7181-DDP (SSX)

- Skechers asked Plaintiff to let it know whether he would stipulate to the revised draft protective order, and offered to continue to meet and confer. Plaintiff never responded, however. *Id.* ¶ 10, Ex. J. Skechers then filed the instant motion.

## III. ARGUMENT

### A. A Protective Order Is Necessary to Safeguard Skechers' Confidential Information.

"[F]or good cause," the Court may issue protective orders limiting or setting conditions on the disclosure of "trade secret[s] or other confidential research, development, or commercial information . . . ." FED R. CIV. P. 26(c)(1)(G); *see also* SCHWARZER ET AL., CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL, § 11:1110 (Rutter 2011). Courts routinely issue orders granting confidential status to trade secrets and sensitive commercial information. *See*, *e.g., Slade v. Gates*, No. CV 01-8244-RMT (EX), 2003 WL 21920285, at *1 (C.D. Cal. July 30, 2003) (limiting disclosure of confidential documents to counsel only); *Official Unsecured Creditors Comm. of Media Vision Tech., Inc. v. Jain*, 215 F.R.D. 587, 590 (N.D. Cal. 2003) (same); *ICG Commc'ns, Inc. v. Allegiance Telecomm.*, 211 F.R.D. 610, 615 (N.D. Cal. 2002) (same*); Upjohn Co. v. Hygieia Biological Labs.*, 151 F.R.D. 355, 361 (E.D. Cal. 1993) (same); *Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*, 120 F.R.D. 687, 692 (C.D. Cal. 1988) (same); *Davidson Pipe Co. v. Laventhol and Horwath*, 120 F.R.D. 455, 465 (S.D.N.Y. 1988) (same); *GTE Prods. Corp. v. Gee*, 112 F.R.D. 169, 172 (D. Mass. 1986) (same); *Pfeiffer v. K-Mart Corp.*, 106 F.R.D. 235, 236-37 (S.D. Fla. 1985) (same).

To justify the entry of a protective order, a party need only make a "threshold showing of good cause to believe that discovery will involve confidential or protected information." *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 268 (M.D.N.C. 1988). Indeed, "[a] 'blanket' protective order (e.g., forbidding each party from disclosing any information

produced in discovery absent permission from the other party or the court) is often obtained without a substantial showing of good cause for each document covered by the order." SCHWARZER ET AL., *supra*, § 11:1126.5.

Here, Plaintiff has propounded 176 total document requests to Skechers. Among other things, Plaintiffs' requests seek non-public and confidential documents and records of the company. By way of example, Plaintiff seeks:

- Documents relating to Skechers' corporate marketing plans for 2006-2010. Welsh Decl., Ex. L (Plaintiff's First Set of Requests for Production) at RFP No. 145.
- Copies of Skechers' corporate agreements with its domestic and foreign distributors and retailers. *Id.*, Ex. L (RFP Nos. 149-152).
- Documents relating to Skechers' marketing business plans, including documents evidencing the company's development and usage of ads (e.g., ad buys, purchase orders, and invoices). *Id.*, Ex. L (RFP Nos. 68, 70-72, 86-87, 89-90, 103-104, 106-107, 120-121, 123-124, 137-138, 140-141, 146).
- Documents relating to corporate directives to retail stores and distributors regarding Skechers' marketing materials. *Id.*, Ex. L (RFP Nos. 69, 73, 88, 91, 105, 108, 122, 125, 139, 142).
- Internal communications regarding the set-up for Skechers' photo shoots involving Plaintiff. *Id.*, Ex. L (RFP Nos. 58-61, 76-79, 93-96, 109-113, 126-130).
- Settlement agreements and other documents concerning prior litigation between Skechers and third party models and photographers, none of whom have any connection to this case. *Id.*, Ex. M (Plaintiff's Second Set of Requests for Production) at RFP Nos. 159-166; Ex. N (Plaintiff's Third Set of Requests for Production) at RFP Nos. 172-176.

1  Plainly, Plaintiff should not be permitted to threaten Skechers with a court order
2  compelling production of non-public company records without Plaintiff and his
3  counsel submitting to a protective order that ensures that such information will only
4  be used in this lawsuit and will be properly destroyed or returned to Skechers when
5  the lawsuit is concluded.
6      The Ninth Circuit agrees. "The power of courts, state as well as federal, to
7  delimit how parties may use information obtained through the court's power of
8  compulsion is of long standing and well-accepted." *Bittaker v. Woodford,* 331 F.3d
9  715, 726 (9th Cir. 2003). As the Court of Appeal went on to acknowledge: "Courts
10 could not function effectively in cases involving sensitive information-trade secrets,
11 medical files and minors, among many others–if they lacked the power to limit the
12 use parties could make of sensitive information obtained from the opposing party
13 by invoking the court's authority." *Id*.
14     Skechers respectfully requests that the Court use its inherent power to impose
15 what by any definition is a reasonable set of protections for the treatment of
16 confidential information produced by the parties in this lawsuit.

17     **B.    The Restrictions Imposed By Skechers' Proposed Protective Order Are Reasonable And Do Not Prejudice Plaintiff.**
18

19     Skechers' proposed protective order is reasonable and contains provisions
20 commonly used by litigants to protect precisely the type of confidential information
21 at issue here. For instance, the proposed protective order permits either Plaintiff or
22 Skechers (as well as non-parties) to designate as "Confidential" limited categories
23 of documents pertaining to, among other things, the parties' financial information,
24 product development, and marketing and business strategies and plans. *See*
25 [Proposed] Protective Order at § 2.3 (definition of "Confidential" Information or
26 Items). The proposed protective order carefully delineates who is permitted to have
27 access to material designated as "Confidential," and the manner in which such
28 materials may be used in the case. *Id*. at § 7.2 ("Disclosure of 'Confidential'

1  Information or Items"). The protective order also requires that the parties limit
2  their designations to specific material that qualifies under the appropriate standards,
3  and contains procedures requiring the parties to meet and confer over any
4  designations that are allegedly over-inclusive or improper. *Id*. at §§ 5.1; 6. To
5  address concerns raised by Plaintiff, Skechers also included in the proposed
6  protective order various provisions designed to alleviate the burden (and shift the
7  cost to the designating party) of filing "Confidential" materials with the Court. *Id*.
8  at § 10 ("Filing Protected Material").

9       It is equally clear that the restrictions proposed by Skechers will not
10 prejudice Plaintiff's ability to use the evidence for legitimate purposes. As the
11 proposed protective order makes clear, any documents or testimony designated
12 "Confidential" may be used "for prosecuting, defending, or attempting to settle this
13 litigation." *See* [Proposed] Protective Order at § 7.1. Plaintiff, Plaintiff's outside
14 and in-house counsel, Plaintiff's experts, and deposed witnesses would all be
15 permitted access to use any material designated "Confidential" by Skechers in this
16 case. *Id*., § 7.2.

17      Federal courts routinely approve protective orders containing provisions
18 similar or identical to the ones contained in Skechers' proposed protective order.
19 *See* SCHWARZER ET AL., *supra*, at §11:1114 (noting that "the court may order
20 that trade secret or commercial information not be revealed or be revealed only in a
21 specified way" including, that "use of the discovered information should be limited
22 to the particular lawsuit," "limit[ing] the persons who are given access," and
23 "limit[ing][ or prohibit[ing] entirely, the reproduction of all confidential
24 documents."). As demonstrated above, Skechers merely seeks to protect the
25 confidentiality of the information being produced. It does not seek to restrict
26 Plaintiff's use of the material in this lawsuit.

27
28

### C. Skechers Is Prepared To Produce Documents Subject To A Reasonable Protective Order.

Skechers has advised Plaintiff's counsel that it is ready and willing to produce company records and information responsive to Plaintiff's document requests. Welsh Decl. ¶ 8, Ex. K at 1. At the same time, Skechers has made it clear it is not willing to produce such non-public company information without proper safeguards in place to ensure that the information will not be misused, that it will be used only in connection with this lawsuit, and that it will be destroyed or returned upon the conclusion of the lawsuit. As noted above, protective orders approved by federal courts typically contain such standard provisions. These are reasonable procedures designed to accomplish reasonable ends, namely to protect Skechers' otherwise confidential information from misuse. Had they been agreed to by Plaintiff, Skechers would have proceeded to produce its responsive documents.

## II. CONCLUSION

For all the foregoing reasons, Skechers respectfully requests that the Court enter Skechers' proposed Protective Order.

Dated: January 10, 2012                    O'MELVENY & MYERS LLP


By: /s/ Robert C. Welsh
    Robert C. Welsh
Attorneys for Defendants Skechers
U.S.A., Inc. and Skechers U.S.A., Inc. II