# EXHIBIT 56

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3

4    RICHARD REINSDORF,

     an individual,

5

          Plaintiff,

6

          vs.          No. CV-10-7181-DDP(SSx)

7

     SKECHERS U.S.A., INC., a

8    Delaware corporation;

     SKECHERS U.S.A., INC. II, a

9    Delaware corporation, and

     DOES 1-10, inclusive,

10

          Defendants.

11   _____

12

13

14

15        VIDEOTAPED DEPOSITION OF JASON A. GREENBERG

16            VOLUME I, A.M. SESSION ONLY

17            10:15 a.m. - 12:17 p.m.

18                May 2, 2012

19        2049 Century Park East, Suite 2400

20              Los Angeles, California

21

22

23   Reported by:

24   DARLENE MATURA MORGAN

25   CSR No. 5959

```
1       APPEARANCES:

2

3       For Plaintiff:

4           LAVELY & SINGER
            BY:  HENRY L. SELF III
5               WILLIAM J. BRIGGS, II (A.M. ONLY)
            Attorneys at Law
6           2049 Century Park East
            Suite 2400
7           Los Angeles, California  90067-2906
            (310) 556-3501
8           Hself@lavelysinger.com
9

10

11

            For Defendants:
12

            O'MELVENY & MYERS, LLP
13          BY:  ROBERT C. WELSH
            Attorneys at Law
14          1999 Avenue of the Stars
            Suite 700
15          Los Angeles, California  90067-6035
            (310) 553-6700
16          Rwelsh@omm.com
17

18

19

20      Also Present:
21          IRVING FONG, Videographer
            RICHARD REINSDORF
22          PHILIP PACCIONE
23

24

25
```

**EXHIBIT 56**

**528**

1        INDEX TO EXAMINATION

2        VIDEOTAPED DEPOSITION OF

3        JASON A. GREENBERG

4        A.M. SESSION ONLY

5

6    EXAMINATION                    PAGE

7    BY MR. SELF                     5

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      A  Twenty-two.

2         Q  And how long was it after that year before you

3   began working with photography and photographers in your

4   role at Skechers?

5         A  Four years.  In 1996.

6         Q  Okay.  What was your job title, if any, when

7   the company was founded in 1992?

8         A  God, I don't think I had a title.

9         Q  By 1996, when you began working in advertising

10  and working with photographers, did you have a job title

11  at that point?

12        A  I don't believe I had a title.

13        Q  You do have a title today, correct?

14        A  Yeah.

15        Q  And what is that title?

16        A  It's Senior VP of Visual Imaging, is what the

17  technical term -- name is.  Vice-president of Visual

18  Imaging.

19        Q  In internal company terminology, is visual

20  imaging synonymous with marketing?

21        A  Yes.  Visual imaging meaning -- I think

22  they classify it as the visual look of the company,

23  yeah.  The people, the models, the look of what Skechers

24  is.

25        Q  The reason I ask is because I believe I ran

1          Q   Now, you told us earlier that, in your 20 years

2      with the company, you've worked with at least 30 to 40

3      photographers in addition to an untold number of others

4      that may have been hired by other departments, correct?

5          A   Yes.

6          Q   Prior to 19- -- or prior to 2006, about how

7      many Skechers photo shoots, if any, have you participated

8      in?

9          A   Oh, I would say close to 200.

10         Q   In your experience, has the number of Skechers

11     photo shoots per year increased over the past two

12     decades?

13         A   Past two decades.  It fluctuates, you know.

14     Prior to 2006, it was really heavy because we had these

15     mail order catalogues that went out six times a year, so

16     there was some years there that was 35, 40 photo shoots

17     for about two or three years running.  Then it dipped

18     down a little bit in the '05, '06, '07 area, '08.

19         And then, prior to -- then, 2009, '10 to

20     current, with our new divisions at Skechers, it's --

21     it's -- it's taken off more.

22         Q   What do you --

23         A   So it's kind of fluctuated.

24         Q   What are those new divisions that you just

25     referred to?

1          MR. WELSH:  I'm waiting for you to finish.

2     Then I'm going to make an objection.  So go ahead.

3     BY MR. SELF:

4          Q   Do you usually participate in any meetings with

5     Skechers photographers prior to the day of or the days of

6     the shoot?

7          A   Yes.

8          Q   Are most Skechers photo shoots preceded by at

9     least one such meeting?

10         A   Yes, one plus -- one such meeting, and

11    sometimes there will be two, even three meetings.

12         Q   And what do you discuss -- let me back up.

13         Who is usually present at this pre-shoot

14    meeting?

15         MR. WELSH:  Okay.  We are now talking about

16    hundreds of photo shoots that he's already testified to,

17    and it's just unfair to ask him a single question, who

18    was usually present at hundreds of photo shoots.  I think

19    it's an unfair question.

20         So again, please make clear in your answer --

21    if you're not answering for each and every photo shoot,

22    then please make clear that you are just answering

23    generally or on some other basis.

24         Because I think the question, as framed, is

25    improper.

**EXHIBIT 56**

**532**

1          THE WITNESS:  But I think the question was

2     the -- they're pre-deciding on the photo shoots, they're

3     before the photo shoots, right, where it's the -- the

4     decision process of what -- you know, pre-planning,

5     that's what you're asking --

6     BY MR. SELF:

7          Q   Correct.

8          A   -- I believe, yeah.  Okay.

9              Now, that pre-planning, what's involved is

10    myself and -- Fred Machuca was the art director, and

11    the -- say five or six or eight designers that are

12    involved with the campaigns that are going to be shot.

13         Q   Okay.

14         A   So say in some of these campaigns, we would

15    have -- we'd have our five designers that each designed

16    their lookbook and drew up how it's going to look and the

17    schematics and the blueprints and how it's going to be

18    shot and their vision of it.  Then, myself and

19    Fred Machuca, we would sit there and we would look at it

20    and say, "Well, this is good, and let's go this way,

21    let's go this route, not that route, this is good, how's

22    it going to be shot?  What props we're going to use?"

23    You know, what kind of angles it's going to be shot at,

24    what the graph is going to look like, you know, what

25    the -- the end picture.  Then we say, "Okay, this is what

1    we're going to go with."

2         Then, from there we would decide on those

3    themes, and then we would go ahead and -- in -- in this

4    particular instance, we would have those themes.  We'd

5    meet with Mr. Reinsdorf.  We would -- we would come in

6    and we discuss, you know, how each one of these is going

7    to be played out, how we're going to -- how we're going

8    to attack this and how we're going to shoot it, and this

9    is going to be shot like this, this person is going to be

10   at this angle, I think we'll pose like this; then

11   afterwards they're going to be sitting in this book just

12   like this and the graphics would be around it and that's

13   how that one works; this is the necessary props and --

14   you know, pieces we'll need for this campaign.  That's --

15   Exit A, that's one, you know, designer.

16        Next designer comes in, "This is my camp- -- my

17   catalogue.  It's going to be a runway-show-based

18   catalogue where there's going to be a stage and the

19   lighting's dramatic, it's dark."  Then, "Okay, that's

20   good, I can make that happen."  Boom.

21        The next one comes in, "These guys are going to

22   be in these cylindrical boxes, we're going to shoot them

23   this way, this is the end result, here's the pictures,

24   how it's going to look," so on and so forth to the tune

25   of the five campaigns that we're going to shoot.

**EXHIBIT 56**
**534**

1        Then, from there I -- we do a casting and I

2    find -- we, you know, meet the people, like these are the

3    girls and guys that we need, this quantity, these are

4    what their looks are going to be.

5        Then, from there we decide, you know, the hair

6    and makeup people that we use, which is our same team

7    that we'd use, our styling, our stylist, how they look.

8    And we'd book the studio, we'd book the time, and put the

9    whole thing together.

10        And then -- I don't know if this is part of

11    this conversation or the next one, it goes into what

12    happens at the photo shoots.

13        Q   So let's --

14        A   So I don't know where you want me to stop at.

15        Q   Let -- yeah, let's pause there because we're

16    still just focusing on --

17        A   Proceeding.

18        Q   -- the time period leading up to the day of the

19    shoot.

20        A   Okay.

21        Q   So you told us that there is always at least

22    one, usually two to three meetings that precede --

23    typically precede a Skechers photo shoot, correct?

24        A   Yes.

25        Q   And that first meeting you said was usually

1  STATE OF CALIFORNIA   )
              )
2  COUNTY OF LOS ANGELES  )

3

4     I, Darlene Matura Morgan, a Certified Shorthand

5  Reporter, do hereby certify:

6     That prior to being examined, the witness in

7  the foregoing proceedings was by me duly sworn to testify

8  to the truth, the whole truth, and nothing but the truth;

9     That said proceedings were taken before me at

10  the time and place therein set forth and were taken down

11  by me in shorthand and thereafter transcribed into

12  typewriting under my direction and supervision;

13     I further certify that I am neither counsel

14  for, nor related to, any party to said proceedings, not

15  in anywise interested in the outcome thereof.

16     In witness whereof, I have hereunto subscribed

17  my name.

18

19  Dated:  May 4, 2012

20

21  *Darlene Matura Morgan*

22  Darlene Matura Morgan
   CSR No. 5959

23

24

25

                   108

# EXHIBIT 57

Connelly, David  5/14/2012  12:00:00 PM

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3

4          _____

5     RICHARD REINSDORF,       )

6          Plaintiff,      )

7     vs.            ) No. CV10-7181-DDP

8     SKECHERS U.S.A., INC.;   )

9     SKECHERS) CV10-7181-DDP  )

10    (SSx),            )

11         Defendants.    )

12    _____)

13

14

15         VIDEOTAPED DEPOSITION OF DAVID CONNELLY

16              Los Angeles, California

17              Monday May 14, 2012

18                 Volume I

19

20    Reported by:

21    LORI M. BARKLEY

22    CSR No. 6426

23    Job No. 143450

24

25    PAGES 1 - 109

Skechers_USA, Inc._Reinsdorf          Unsigned                    Page 1

**EXHIBIT 57**
**537**

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

4          _____

5          RICHARD REINSDORF,       )

6               Plaintiff,       )

7          vs.                ) No. CV10-7181-DDP

8          SKECHERS U.S.A., INC.;  )

9          SKECHERS) CV10-7181-DDP )

10         (SSx),                )

11              Defendants.     )

12         _____)

13

14

15

16              Videotaped deposition of DAVID CONNELLY,

17         Volume I, taken on behalf of Defendant, at 1999 Avenue

18         of that Stars, 7th Floor, Los Angeles, California,

19         beginning at 10:11 a.m. and ending at 1:01 p.m., on

20         Monday, May 14, 2012, before LORI M. BARKLEY Certified

21         Shorthand Reporter No. 6426.

22

23

24

25

EXHIBIT 57
538

Connelly, David  5/14/2012  12:00:00 PM

1     APPEARANCES:

2

3     For Plaintiff Richard Reinsdorf:

4         LAVELY & SINGER

5         BY:  Henry Self, ESQ.

6         2049 Century Park East

7         Suite 2400

8         Los Angeles, California 90067

9         (310) 556-3501

10        Hself@lavelysinger.com

11

12    For Defendant SKECHERS U.S.A., INC.

13        O'MELVENY & MYERS LLP

14        BY:  Robert C. Welsh, Esq.

15            - and -

16          Erica Rasch, Esq.

17        1999 Avenue of the Stars

18        Seventh Floor

19        Los Angeles, California 90067

20        (310) 553-6700

21        Jbarker@omm.com

22

23    Also Present:

24        Videographer: Gregory Eklund

25

**EXHIBIT 57**
**539**

Connelly, David  5/14/2012  12:00:00 PM

1      A.   I'm not aware of that.

2      Q.   Well, are you aware, sir, that in 2006 at the

3   time the photo shoot was undertaken, Skechers had stores

4   outside the United States?

5          MR. SELF:  Same objections.

6          THE WITNESS:  I believe they did, yes.

7   BY MR. WELSH:

8      Q.  Yes, they did.

9          But nonetheless despite the fact that you have

10   found no -- nothing in the record of Skechers agreeing

11   to a territorial limitation, you have assumed for

12   purposes of your analysis that such a territorial

13   limitation exits with regard to Exhibit 519, correct?

14     A.   I -- I have -- my -- my computation is based on

15   a break out of USA only with respect to this initial

16   invoice, yes.

17     Q.   Now, where on this invoice does it state when

18   the six months that's referenced on the invoice begins?

19     A.   I don't think there is a specific statement of

20   when the usage period begins on this document.

21     Q.   And who gets to determine when the usage begins,

22   Skechers or Mr. Reinsdorf?

23         MR. SELF:  Objection, lacks foundation and calls

24   for speculation.

25         THE WITNESS:  I understand it commences upon

Skechers_USA, Inc._Reinsdorf               Unsigned                          Page  30

**EXHIBIT 57**
**540**

Connelly, David  5/14/2012  12:00:00 PM

1      A.   The US of A is within the world, I think we can

2      agree.  It's a certain subset, I mean, I don't mean to

3      belittle, but there is a difference between a

4      territorial restriction and a time restriction as to the

5      nature of -- of what we're discussing.

6      Q.   But in 2006, Skechers was a global company; it

7      had Skechers stores outside the United States, correct?

8          MR. SELF:  Objection, assumes facts, calls for

9      speculation, and we're still beyond the scope of this

10     expert's designation.

11         THE WITNESS:  I understand from looking at the

12     financial data that Skechers was operating outside the

13     US in 2006.

14     BY MR. WELSH:

15     Q.   Okay.

16     A.   Apparently Mr. Heller was not aware of that

17     fact.

18     Q.   Apparently.  That's what he says.

19         Have you seen anything from Skechers that

20     indicated that it did not intend to use Mr Reinsdorf's

21     photographs outside of the United States?

22     A.   Well, this conveyance that: Oh, by the way it's

23     not just the US by a Skechers employee, it's also

24     Canada, to me, is such a disclosure.

25     Q.   By the way did you ever see that in a document,

**EXHIBIT 57**
**541**

1   STATE OF CALIFORNIA.        ) ss.

2   COUNTY OF LOS ANGELES       )

3

4           I, Lori M. Barkley, CSR No. 6426, do hereby

5   certify:

6           That the foregoing deposition testimony taken

7   before me at the time and place therein set forth and at

8   which time the witness was administered the oath;

9           That the testimony of the witness and all

10  objections made by counsel at the time of the

11  examination were recorded stenographically by me, and

12  were thereafter transcribed under my direction and

13  supervision, and that the foregoing pages contain a

14  full, true and accurate record of all proceedings and

15  testimony to the best of my skill and ability.

16          I further certify that I am neither counsel for

17  any party to said action, nor am I related to any party

18  to said action, nor am I in any way interested in the

19  outcome thereof.

20          IN WITNESS WHEREOF, I have subscribed my name

21  this 15th day of May, 2012.

22

23

24  _____

25          LORI M. BARKLEY, CSR No. 6426

Page 109

**EXHIBIT 57**
**542**

# EXHIBIT 58

Kramer, Bruce  5/15/2012  12:00:00 PM

1           UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3

4      ---------------------------------

5      RICHARD REINSDORF,           )

6              Plaintiff,      ) Case No.

7         vs.                 ) CV10-7181-DDP (SSx)

8      SKECHERS U.S.A., INC.; SKECHERS ) VOLUME I

9      U.S.A., INC. II; and DOES 1-10, )

10             Defendants.     )

11     ---------------------------------

12

13

14         VIDEOTAPED DEPOSITION OF BRUCE KRAMER

15             LOS ANGELES, CALIFORNIA

16             TUESDAY, MAY 15, 2012

17

18

19

20

21     Reported by:

22     RICKI Q. MELTON, CSR No. 9400

23     Job No. 143452

24

25     PAGES 1 - 199

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3

4     -------------------------------

5     RICHARD REINSDORF,            )

6              Plaintiff,     ) Case No.

7        vs.              ) CV10-7181-DDP (SSx)

8     SKECHERS U.S.A., INC.; SKECHERS )

9     U.S.A., INC. II; and DOES 1-10, ) VOLUME I

10             Defendants.    )

11    -------------------------------

12

13

14

15       VIDEOTAPED DEPOSITION OF BRUCE KRAMER taken at

16    1999 Avenue of the Stars, Seventh Floor, Los Angeles,

17    California, commencing at 10:31 A.M., Tuesday,

18    May 15, 2012, before Ricki Q. Melton, CSR 9400,

19    RPR 45429.

20

21

22

23

24

25

1     APPEARANCES OF COUNSEL:

2

3     FOR THE PLAINTIFF:

4        LAVELY & SINGER

5        BY:  HENRY L. SELF III, ESQ.

6        2049 Century Park East

7        Suite 2400

8        Los Angeles, California 90067

9        (310) 556-3501

10       hself@lavelysinger.com

11

12    FOR THE DEFENDANTS:

13       O'MELVENY & MYERS LLP

14       BY:  JEFFREY A. BARKER, ESQ.

15       1999 Avenue of the Stars

16       Seventh Floor

17       Los Angeles, California 90067

18       (310) 553-6700

19       jbarker@omm.com

20

21    ALSO PRESENT:

22       GREGORY EKLUND, Video Operator

23

24

25

1     A   That they have the right to use the images

2     anywhere and everywhere based on territory and time.

3     Q   Okay. And the last category is "Buyout

4     (all uses in perpetuity)."

5     A   They could do anything they want with the

6     images.

7     Q   Okay. And that's -- a buyout would be all

8     media and all points in time; correct?

9     A   Correct.

10    Q   And it would also include all geographies;

11    correct?

12    A   Correct.

13    Q   Is that a term of art in your industry?

14    "Buyout"?

15    A   A term of?

16    Q   "Art." Maybe you are not familiar with

17    that concept.

18        Is that a term that has specific meaning

19    in your industry?

20    A   Yes.

21    Q   Okay. Since I so badly muffed that

22    question, does the term "buyout" have a specific

23    meaning in your industry?

24    A   It does.

25    Q   Okay. And is that meaning that you can

EXHIBIT 58
546

1    use the photographs in question for all uses, for

2    all time periods, and in all geographic areas?

3       A   Yes, it does.

4           Often we have a stipulation with that that

5    they can't provide the images to third parties and

6    they can't use it for merchandising, and that's the

7    only stipulations, and if they want those, it

8    increases the -- the use fee that we're going to

9    charge.

10      Q   Right.

11          But those -- those are conditions that you

12   put on a buyout when you price it; correct?

13      A   Correct.

14      Q   The term "buyout" itself means all uses,

15   all time periods, and all geographies; correct?

16      A   Correct.

17      Q   Okay.  You say in the next paragraph:

18          "A client such as a magazine

19          requires a one-time editorial

20          use for a specific issue with

21          additional rights to sell to

22          sister publications in other

23          countries at a fixed rate for

24          that use. An international

25          brand doing an advertising

**EXHIBIT 58**
**547**

1    an agreement.

2        Q    And in the conversation with Mr. Heller --

3    this was in February of 2012?

4        A    Yes.

5        Q    Okay.

6            MR. SELF:  Same objection.

7    BY MR. BARKER:

8        Q    Okay.  In the conversation with Mr. Heller

9    in February of 2012, did he tell you what the terms

10    of the buyout were that he had proposed?

11        A    He did not.

12        Q    Okay.  Did he tell you with whom he was

13    trying to negotiate the buyout?

14        A    He did not.

15        Q    What did he tell you about the buyout he

16    had attempted to negotiate with Skechers?

17            MR. SELF:  Same objections.

18            THE WITNESS:  That he attempted to

19    negotiate a buyout.

20    BY MR. BARKER:

21        Q    Okay.

22        A    That's it.

23        Q    Okay.  In formulating your opinions in

24    this case, did you think it was relevant to know

25    whether Mr. Heller had -- strike that.

```
 1    STATE OF CALIFORNIA    ) ss:
 2    COUNTY OF LOS ANGELES  )
 3
 4       I, RICKI Q. MELTON, CSR No. 9400, RPR No. 45429,
      do hereby certify:
 5
         That the foregoing deposition testimony of
 6    BRUCE KRAMER was taken before me at the
      time and place therein set forth, at which time the
 7    witness was placed under oath and was sworn by me to
      tell the truth, the whole truth, and nothing but the
 8    truth;
 9       That the testimony of the witness and all objections
      made by counsel at the time of the examination were
10    recorded stenographically by me and were thereafter
      transcribed under my direction and supervision, and
11    that the foregoing pages contain a full, true, and
      accurate record of all proceedings and testimony to
12    the best of my skill and ability.
13       I further certify that I am neither counsel for
      any party to said action nor am I related to any
14    party to said action, nor am I in any way interested
      in the outcome thereof.
15
16
17       IN WITNESS WHEREOF, I have subscribed my name
      this 16th day of May, 2012.
18
19
20
21
22
23    _____
24        RICKI Q. MELTON, C.S.R. No. 9400
25
```

Page 199

**EXHIBIT 58**
**549**

# EXHIBIT 59

*-APPLICATION-*

## Title
Title of Work: Collection of Models on Pink and Blue Backgrounds with Props

## Completion/Publication
Year of Completion: 2006

## Author
■    Author: Richard E Reinsdorf

Author Created: photograph(s)

Citizen of: United States                    Domiciled in: United States

## Copyright claimant
Copyright Claimant: Richard E Reinsdorf

1844 N Catalina St, Burbank, CA, 91505-1207, United States

## Rights and Permissions
Name: Richard E Reinsdorf

Email: rrpix@me.com                         Telephone: 818-519-3555

Address: 1844 N Catalina St

Burbank, CA 91505-1207  United States

## Certification
Name: Richard E Reinsdorf

Date: May 6, 2010

Applicant's Tracking Number: 061116RR0074

Page 1 of 1

**EXHIBIT 59**
**550**

RR 002287

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number**

**VAu 1-032-729**

**Effective date of registration:**

July 7, 2010

## Title

Title of Work: Collection of Models on Pink and Blue Backgrounds with Props

## Completion/Publication

Year of Completion: 2006

## Author

Author: Richard E Reinsdorf

Author Created: photograph(s)

Citizen of: United States          Domiciled in: United States

## Copyright claimant

Copyright Claimant: Richard E Reinsdorf

1844 N Catalina St, Burbank, CA, 91505-1207, United States

## Rights and Permissions

Name: Richard E Reinsdorf

Email: rrpix@me.com          Telephone: 818-519-3555

Address: 1844 N Catalina St

Burbank, CA 91505-1207  United States

## Certification

Name: Richard E Reinsdorf

Date: May 6, 2010

Applicant's Tracking Number: 061116RR0074



EXHIBIT 59
552



**EXHIBIT 59**
**553**



**EXHIBIT 59**
554