# EXHIBIT 1

**LAVELY & SINGER**

PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

SUITE 2400

2049 CENTURY PARK EAST

LOS ANGELES, CALIFORNIA 90067-2906

TELEPHONE (310) 556-3501

TELECOPIER (310) 556-3615

www.LAVELYSINGER.com

JOHN H. LAVELY, JR.
MARTIN D. SINGER
BRIAN G. WOLF
LYNDA B. GOLDMAN
MICHAEL D. HOLTZ
WILLIAM J. BRIGGS, II
PAUL N. SORRELL
MICHAEL E. WEINSTEN
EVAN N. SPIEGEL

TODD STANFORD EAGAN
HENRY L. SELF, III
ANDREW B. BRETTLER
DAVID B. JONELIS

ALLISON S. HART
KEVIN JAMES
OF COUNSEL

December 29, 2011

**VIA EMAIL** rwelsh@omm.com, dbreuder@omm.com
**& U.S. MAIL**

Bob C. Welsh, Esq.
Drew E. Breuder, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

Re:   **Richard Reinsdorf v. Skechers USA, Inc. et al.**
**Our File No. 4814-2**

Dear Bob and Drew:

This confirms our telephone conference of yesterday afternoon pursuant to Local Rule 37-1.   Please let me know if any of the following is inconsistent with your recollection or understanding of our discussion.

**Document Production**

Putting aside for a moment the matter of your clients' request for a stipulated protective order (addressed below), you indicated that you otherwise plan to produce another set of documents at the end of this week and continue providing further responsive materials for a maximum of two weeks thereafter, at which point you expect the document production to be complete.

**Request for Production Nos. 1–19**

You indicated that Skechers either has already produced or shortly will produce copies of all documents (to the extent, if any, that they exist) in its possession, custody or control that are responsive to these requests, which seek any evidence on which your clients base their factual denials and affirmative defenses as well as materials identified in their initial disclosures. When I advised you that the plaintiff plans to bring a motion in limine to exclude from trial anything not previously provided during discovery, you invited such a motion.

EXHIBIT 1
10

Bob C. Welsh, Esq.
O'Melveny & Myers LLP
Re:     <u>Richard Reinsdorf v. Skechers USA, Inc. et al.</u>
December 29, 2011
Page 2

---

### Request for Production Nos. 20–52

You indicated that Skechers either has already produced or shortly will produce copies of all documents it has been able to locate (to the extent, if any, that they exist) in its possession, custody or control that are responsive to these requests.

### Request for Production No. 53

Although—as stated in your letter dated October 14, 2011—Skechers has produced or will produce copies of documents in its possession, custody or control evidencing the contributions that Skechers claims to have made to the Skechers Advertisements, you said that your clients are unable to provide many advertising and marketing images in their native (e.g., layered Photoshop) formats because they do not as a matter of practice maintain copies of such digital files in the regular course of business.  While we and our client express disbelief of this statement, you affirmatively represented it to be true.

### Request for Production Nos. 68–142, 146

We agreed to temporarily postpone additional discussion of these requests pending your continued production of documents in the next couple of weeks, which may obviate any need to meet and confer further.

### Request for Production No. 144

I agreed to look into whether copies of Skechers' earnings call transcripts for 2006 through 2010 are publicly available.  If so, then that may resolve our dispute over your non-production of them.

### Request for Production No. 145, 149–152

You told me that Skechers will only be producing documents (to the extent that they exist) in its possession, custody or control that are responsive to these requests if they specifically relate or refer to Mr. Reinsdorf.  Otherwise, you are declining to honor these requests.

### Request for Production Nos. 153–157

You indicated that Skechers either has already produced or shortly will produce copies of all documents is has been able to locate (to the extent, if any, that they exist) in its possession, custody or control that are responsive to these requests.

EXHIBIT 1

11

Bob C. Welsh, Esq.
O'Melveny & Myers LLP
Re:    <u>Richard Reinsdorf v. Skechers USA, Inc. et al.</u>
December 29, 2011
Page 3

---

### Request for Production No. 158

You stated that Skechers has already complied with this request, which seeks documents sufficient to evidence its revenues and profits from 2006 until the present, by producing copies of its annual reports for the relevant period. I reminded you of a copyright defendants' burden to prove its "deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).

### Request for Production Nos. 159–166

You are declining to comply with these requests on grounds that the documents sought are, in your view, not relevant.

### Stipulated Protective Order

I agreed to double-check with Mr. Briggs and Mr. Reinsdorf regarding their willingness to stipulate to entry of a proposed protective order such as the draft that you provided by email on November 7, 2011. In the absence of such an agreement, however, you said that Skechers would probably not produce any more documents in this case.

Nothing contained herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of our client's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

Sincerely,

HENRY L. SELF
For
LAVELY & SINGER
PROFESSIONAL CORPORATION

cc:    William J. Briggs II, Esq.

4814-2\LET\HLS-WELSH-BREUDER 122911

EXHIBIT 1
12

# EXHIBIT 2



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

January 6, 2012

OUR FILE NUMBER
0798,320-43

**VIA E-MAIL AND U.S. MAIL**

WRITER'S DIRECT DIAL
(310) 246-6712

Henry L. Self
Lavely & Singer
2049 Century Park East, Suite 2400
Los Angeles, CA  90067

WRITER'S E-MAIL ADDRESS
rwelsh@omm.com

Re:   *Reinsdorf v. Skechers USA, Inc., et al*.

Dear Henry:

We write in response to your December 29, 2011 letter purporting to recap the parties' telephonic meet and confer which took place on December 28, 2011.  The subject matters below roughly correspond to those raised in your letter, with some corrections and additions.

Document Production and Stipulated Protective Order

As we explained at length during the meet and confer, Skechers has not been sitting idle the past few months.  To the contrary, Skechers has spent literally hundreds of hours trying to make sense of the copyright registrations and other documents which your client failed to produce until September 2012, and determining which of the more than 27,000 images registered by Mr. Reinsdorf are at issue, which images were actually used by Skechers in its marketing campaign, and the extent of such usage.  During the call, we advised that Skechers has already substantially completed its document production, and that the outstanding materials to be produced largely consisted of non-public marketing documents evidencing Skechers' usage of the images which Skechers believes to be at issue in this case.  We also indicated that we were ready to commence production of these materials starting Friday, December 30, 2011, but that we first needed your client's agreement to a suitable protective order so as to prevent dissemination of these non-public and confidential materials to Skechers' competitors or their use for purposes other than this litigation.  As indicated in your letter, you agreed to double-check with your partner, Mr. Briggs, and your client regarding their willingness to stipulate to entry of a proposed protective order such as the draft we provided you on November 7, 2011.

EXHIBIT 2
13

O'MELVENY & MYERS LLP

Henry L. Self, Esq., January 6, 2012 - Page 2

Request for Production Nos. 1-19

We indicated that Skechers has already produced or will produce all responsive, non-privileged documents (to the extent, if any, that they exist) in its possession, custody or control that Skechers has been able to locate following a reasonable investigation and search. You indicated that you intended on filing a motion *in limine* barring Skechers' use at trial of any documents not produced during discovery. We indicated we would file a similar motion vis-à-vis your client.

Request for Production Nos. 20-52

With respect to the so-called "spoliation" requests (RFP Nos. 20-30), we explained that many of these requests were unintelligible and nonsensical. We repeated, as indicated in our written discovery responses, that to the extent these requests sought "spoliation" documents, Skechers was not aware of any such documents. You then asked us to "put aside spoliation" and asked whether Skechers had any memos "instructing to put up or take down ads." We explained that, to the extent there are documents of this type, they would be contained in the usage documents that Skechers was prepared to produce following entry of a protective order.

With respect to Request Nos. 31-52, we indicated that these requests were not at issue, and that Skechers has already produced or will produce all responsive, non-privileged documents (to the extent, if any, that they exist) in its possession, custody or control that Skechers has been able to locate following a reasonable investigation and search.

Request for Production No. 53

We explained that, as indicated in our October 14, 2011 letter, Skechers has or will produce all responsive, non-privileged documents (to the extent, if any, that they exist) in its possession, custody or control that Skechers has been able to locate following a reasonable investigation and search, insofar as this specific request was clarified and explained in your October 10, 2011 letter.

Request for Production No. 54-67

We indicated that Skechers has or will produce all responsive, non-privileged documents (to the extent, if any, that they exist) in its possession, custody or control that Skechers has been able to locate following a reasonable investigation and search, as these requests were limited by Skechers' written responses.

Also, when addressing these requests the parties had a brief conversation about metadata. We explained that the bulk of Skechers' production to date did not contain metadata because the documents were hard copy documents. For example, we explained that the copies of the Skechers ads produced to date did not have "photoshop layers" intact (*see*, *e.g*., Request No. 55) because these were largely hard copy documents. We explained that this should not be surprising since the photo shoots in question occurred more than five years ago, were a relatively

EXHIBIT 2

14

O'MELVENY & MYERS LLP
Henry L. Self, Esq., January 6, 2012 - Page 3

small part of Skechers' overall marketing campaign, and Skechers simply did not maintain in the regular course of business extensive records relating to those photo shoots.  We indicated that we had produced whatever electronic documents we had been able to find, with whatever metadata was available, and pointed to the documents produced by us on December 8, 2011 as one such example.  We also explained that the usage documents to be produced were largely electronic documents, and that we intended to produce these with metadata intact.

<u>Request for Production No. 68-73, 86-91, 103-108, 120-125, 137-142, 146, 153-157</u>

We agreed that, broadly speaking, these Requests seek documents relating to Skechers' usage of the images in question.  We explained how we anticipated that the usage documents Skechers intended to produce would adequately address your concerns, and would be sufficient to show the parameters that your client has asked about in these requests (namely, territories of usage, time periods of use, manner of usage, etc.).  As indicated in your letter, the parties agreed to postpone any further meet and confer concerning these Requests pending your review of the usage documents to be produced by Skechers.[1]

<u>Request for Production No. 143-144</u>

We explained that we had already produced Skechers' Annual Reports, in response to Request No. 143.  With respect to Request No. 144, we asked you to explain how this request was relevant and pointed out how overbroad it was (seeking "all documents related to Skechers' earning call transcripts").  You then agreed to limit this request to simply the earnings call transcripts for 2006-2011.  Later in our conversation, you acknowledged that such transcripts may in fact be publicly available (and that you may have quoted from these in the complaint), and that if this were the case it would resolve any issue as to Request No. 144.

<u>Request for Production No. 145, 149-152</u>

These requests sought broad categories of documents related to Skechers' marketing plans (Request No. 145), and Skechers' agreements with domestic and foreign distributors and retailers (Request Nos. 149-152).  With respect to Request No. 145, we explained that we had already produced marketing documents—for example, the look books, marketing image charts, marketing ads, and corporate marketing books that contained Skechers' ads featuring images taken by Mr. Reinsdorf.  We indicated that, to the extent that this request sought general, corporate level marketing documents that did not reference or pertain to Mr. Reinsdorf, the request was overbroad, burdensome, and sought irrelevant documents.

With respect to Request Nos. 149-152, we told you that we did not know or understand what documents these requests sought and that we intended to produce usage-related documents.

---

[1] Your letter states that we indicated Skechers has produced or will produce documents responsive to Request Nos. 153-157.  This is not accurate.  As you will recall, the parties agreed that these requests also sought "usage" documents and resolved to postpone any further meet and confer pending your review of the usage documents to be produced by Skechers.

EXHIBIT 2
15

O'MELVENY & MYERS LLP

Henry L. Self, Esq., January 6, 2012 - Page 4

We explained that, to the extent these requests sought general, corporate level documents that did not reference or pertain to Mr. Reinsdorf, the request was overbroad, burdensome, and sought irrelevant documents.  You agreed to treat these requests similar to the usage-related requests, and agreed to postpone any further meet and confer pending your review of the usage documents to be produced by Skechers.

     <u>Request for Production No. 147-148</u>

These requests sought documents related to communications with Mr. Reinsdorf.  We explained that we had already addressed these requests in our October 14, 2011 letter, and that there did not appear to be any issue with respect to these requests.

     <u>Request for Production No. 158</u>

This request sought documents sufficient to reflect Skechers' revenues and profits.  We told you that we had already produced Skechers' annual reports, which should reflect this information.

     <u>Request for Production No. 159-166</u>

These requests seek documents relating to a number of other photographers who you claimed Skechers has hired since Mr. Reinsdorf's work for the company.  We asked you to explain the relevance of such requests.  You claimed that the documents sought by these requests would be relevant to demonstrate that Skechers "altered the way it did business" or used different language in its license agreements following Mr. Reinsdorf's engagements for the company.  We pointed out that this argument made no sense, and that Skechers couldn't have "changed the licensing language," since the invoices relevant to this case were created by Mr. Reinsdorf's agent, not by Skechers.  You then claimed that you were entitled to these documents because Skechers had sought similar documents from Mr. Reinsdorf.  We pointed out that your client had objected to such requests, and had not produced any such documents (notwithstanding your claim that they were "sitting on Mr. Briggs' desk ready to be produced").

          Very truly yours,

          /s/

          Robert C. Welsh

OMM_US:70161744.1

EXHIBIT 2

16

# EXHIBIT 3

1 | DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
2 | ROBERT C. WELSH (S.B. #130782)
rwelsh@omm.com
3 | DREW E. BREUDER (S.B. #198466)
dbreuder@omm.com
4 | O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
5 | Los Angeles, CA 90067-6035
Telephone:  (310) 553-6700
6 | Facsimile:   (310) 246-6779

7 | Attorneys for Defendants
Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II

8 |

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD REINSDORF,<br><br>Plaintiff,<br><br>v.<br><br>SKECHERS U.SA., INC.;<br>SKECHERS U.S.A., INC. II; and<br>DOES 1-10,<br><br>Defendants. | Case No. CV10-7181-DDP (SSx)<br><br>Hon. Dean D. Pregerson<br><br>**DEFENDANTS SKECHERS U.S.A., INC. AND SKECHERS U.S.A., INC. II'S OBJECTIONS AND RESPONSES TO PLAINTIFF RICHARD REINSDORF'S NOTICE OF DEPOSITION OF SKECHERS U.S.A., INC.**<br><br>Date:   March 22, 2012<br>Time:   10:00 a.m.<br><br>Address:<br>2049 Century Park East, Suite 2400<br>Los Angeles, CA 90067<br><br>Discovery Cutoff:         May 15, 2012<br>Pretrial Conference:     July 2, 2012<br>Trial Date:                    July 10, 2012 |

1       Defendants Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II (collectively,

2 "Skechers") hereby objects and responds to plaintiff Richard Reinsdorf

3 ("Reinsdorf")'s Notice of Deposition of Defendant Skechers U.S.A., Inc. (the

4 "Notice") on the following grounds:

5 ## PRELIMINARY STATEMENT

6       These responses and objections are made without in any way waiving

7 Skechers' right to raise, at the actual deposition or any other hearing or trial, any

8 other objections that its counsel deems appropriate based upon the question asked

9 of Skechers' designee(s), agents, managers, officers, or employees.

10 ## GENERAL OBJECTIONS

11       Skechers makes the following general objections to the Notice and each and

12 every matter identified therein (the "Topics"), whether or not specifically stated as

13 an objection to that Topic:

14       1.     Skechers objects to the deposition date set in the Notice on the grounds

15 that the amount of notice provided is unreasonable in light of the time and effort

16 required to (i) investigate the many Topics on which testimony has been requested;

17 and (ii) identify and prepare appropriate witness(es) to testify on Skechers' behalf.

18 Skechers further objects to the Notice as being inadequate and unreasonable

19 because neither Skechers' designees nor Skechers' counsel are available on the

20 unilaterally-selected deposition date of March 22, 2012, nor could they reasonably

21 have anticipated and expected to be available on that date because Reinsdorf's

22 counsel previously had claimed not to be available on March 22 when Skechers

23 inquired about available deposition dates.

24       2.     Skechers objects to each Topic to the extent that it is vague and/or

25 ambiguous, fails to describe with reasonable particularity the matters on which

26 examination is requested, or seeks information that is neither relevant to the subject

27 matter of this action nor reasonably calculated to lead to the discovery of admissible

28 evidence. Skechers further objects to each Topic to the extent that it is (i)

1

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3

18

overbroad, harassing, and oppressive; (ii) subjects Skechers to unwarranted annoyance, burden, or expense incommensurate with Reinsdorf's legitimate discovery needs; or (iii) purports to require more than is required under the Federal rules of Civil Procedure, the Central District of California Local Rules, and other applicable law.

3.     Skechers objects to each Topic to the extent that it seeks, or may be interpreted to seek, information protected by the attorney client privilege, work-product doctrine, right to privacy, or any other applicable privilege or protection.

4.     Skechers objects to each Topic to the extent that it seeks information of a confidential, competitively sensitive, proprietary, or trade secret nature. Skechers will only provide such information subject to the terms and conditions of the protective order entered in this case.

5.     Skechers objects to each Topic to the extent that the information sought concerns knowledge, recollections, or mental impressions of former employees who are no longer employed by Skechers, or any other information that is no longer in the custody or control of Skechers.

6.     Skechers objects to each Topic to the extent that it calls for legal conclusions or testimony relating to Skechers' legal contentions in this case.

7.     Skechers objects to each Topic to the extent that it is unreasonably cumulative or duplicative of other Topics.

8.     Skechers objects to each Topic to the extent that it contains any factual or legal misrepresentations.  Any statement of intent to comply with a particular Topic is not, and shall not be deemed, an admission of any factual or legal contention contained or incorporated in the Notice and/or Topic.  Moreover, any statement of intent to produce a witness to testify with respect to a particular Topic is not, and shall not be deemed, a representation that any responsive information exists or is in Skechers' possession, custody or control.

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3
19

9.     Skechers objects to the term "[u]se by Skechers or anyone affiliated therewith" on the ground that it overbroad, vague and ambiguous, and calls for a legal conclusion.

10.     Skechers objects to the term "photographs authored by plaintiff Richard Reinsdorf" on the ground that it is overbroad, vague, and ambiguous, and calls for a legal conclusion.

11.     Skechers objects to the undefined terms "Out of Home," "magazines," "print ads," "kiosk ads," "vehicle wraps," "trade show banners," "displays," and "cooperative and any other advertising" on the ground that these terms are overbroad, vague and ambiguous, and call for legal conclusions.

12.     Skechers incorporates each of the foregoing general objections into each specific objection to the Topics set forth below as if set forth in full therein. From time to time, for special emphasis, Skechers will repeat in the specific objections certain of the general objections set forth above. The specific objections are submitted without prejudice to, and without in anyway waiving, the general objections as incorporated fully therein.

## SPECIFIC RESPONSES AND OBJECTIONS

**TOPIC NO. 1:**

Use by Skechers and/or anyone affiliated therewith of photographs authored by plaintiff Richard Reinsdorf ("Reinsdorf").

**RESPONSE AND OBJECTIONS TO TOPIC NO. 1:**

Skechers hereby incorporates by reference each of the foregoing general objections. In addition, Skechers specifically objects to this Topic on the following grounds: (i) it is vague and ambiguous, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity. Skechers also specifically

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3
20

1  objects to this Topic on the grounds that it seeks information that it is not within its

2  possession, custody, or control.

3       Subject to and without waiving the foregoing general and specific objections,

4  Skechers responds as follows:  Skechers will designate a witness to testify on this

5  Topic.

6  **TOPIC NO. 2:**

7       Territories where Skechers and/or anyone affiliated therewith used

8  photographs authored by Reinsdorf.

9  **RESPONSE AND OBJECTIONS TO TOPIC NO. 2:**

10       Skechers hereby incorporates by reference each of the foregoing general

11  objections.  In addition, Skechers specifically objects to this Topic on the following

12  grounds:  (i) it is vague and ambiguous, not reasonably limited in scope or time

13  period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant

14  and/or not reasonably calculated to lead to the discovery of admissible evidence;

15  and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a

16  matter for examination with reasonable particularity.  Skechers also specifically

17  objects to this Topic on the grounds that it seeks information that it is not within its

18  possession, custody, or control.

19       Subject to and without waiving the foregoing general and specific objections,

20  Skechers responds as follows:  Skechers will designate a witness to testify on this

21  Topic.

22  **TOPIC NO. 3:**

23       Media in which Skechers and/or anyone affiliated therewith used

24  photographs authored by Reinsdorf.

25  **RESPONSE AND OBJECTIONS TO TOPIC NO. 3:**

26       Skechers hereby incorporates by reference each of the foregoing general

27  objections.  In addition, Skechers specifically objects to this Topic on the following

28  grounds:  (i) it is vague and ambiguous, not reasonably limited in scope or time

4

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3
21

period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity.  Skechers also specifically objects to this Topic on the grounds that it seeks information that it is not within its possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows:  Skechers will designate a witness to testify on this Topic.

**TOPIC NO. 4:**

Time periods during which Skechers and/or anyone affiliated therewith used photographs authored by Reinsdorf.

**RESPONSE AND OBJECTIONS TO TOPIC NO. 4:**

Skechers hereby incorporates by reference each of the foregoing general objections.  In addition, Skechers specifically objects to this Topic on the following grounds:  (i) it is vague and ambiguous, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity.  Skechers also specifically objects to this Topic on the grounds that it seeks information that it is not within its possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows:  Skechers will designate a witness to testify on this Topic.

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3
22

**TOPIC NO. 5:**

Skechers' approval or disapproval of photographs authored by Reinsdorf for use in any manner, including (without limitation) inclusion in marketing materials and/or advertisements.

**RESPONSE AND OBJECTIONS TO TOPIC NO. 5:**

Skechers hereby incorporates by reference each of the foregoing general objections.  In addition, Skechers specifically objects to this Topic on the following grounds:  (i) it is vague and ambiguous, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity.

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows:  Skechers will designate a witness to testify concerning the company's approval or disapproval of photographs authored by Reinsdorf for use in its marketing materials and/or advertisements.

**TOPIC NO. 6:**

Instructions (if any) by Skechers for anyone to delete, destroy, discard, remove or replace any materials that contain photographs authored by Reinsdorf.

**RESPONSE AND OBJECTIONS TO TOPIC NO. 6:**

Skechers hereby incorporates by reference each of the foregoing general objections.  In addition, Skechers specifically objects to this Topic on the following grounds:  (i) it is vague and ambiguous, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity.  Skechers also specifically objects to this Topic on the grounds that it assumes facts not in evidence.

6

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows: Skechers will designate a witness to testify on this Topic.

**TOPIC NO. 7:**

Skechers' hiring of photographers for purposes of advertising or marketing campaigns.

**RESPONSE AND OBJECTIONS TO TOPIC NO. 7:**

Skechers hereby incorporates by reference each of the foregoing general objections. In addition, Skechers specifically objects to this Topic on the following grounds: (i) it is vague and ambiguous, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity.

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows: Skechers will designate a witness to testify concerning the company's hiring of Reinsdorf for purposes of its advertising or marketing campaigns.

**TOPIC NO. 8:**

Use of Skechers marketing materials by its domestic and international affiliates, distributors and retailers including (without limitation) its franchise stores from 2006 through the present.

**RESPONSE AND OBJECTIONS TO TOPIC NO. 8:**

Skechers hereby incorporates by reference each of the foregoing general objections. In addition, Skechers specifically objects to this Topic on the following grounds: (i) it is vague and ambiguous, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence;

7

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3
24

and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity.  Skechers also specifically objects to this Topic on the grounds that it seeks information that it is not within its possession, custody, or control.

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows:  Skechers will designate a witness to testify concerning the domestic and international use of Skechers' marketing materials incorporating photographs taken by Reinsdorf from 2006 to the present.

**TOPIC NO. 9:**

Nature of Skechers' relationships with and control over its domestic and international affiliates, distributors and retailers including (without limitation) its franchise stores.

**RESPONSE AND OBJECTIONS TO TOPIC NO. 9:**

Skechers hereby incorporates by reference each of the foregoing general objections.  In addition, Skechers specifically objects to this Topic on the following grounds:  (i) it is vague and ambiguous, unintelligible, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity.

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows:  This Topic is unintelligible and seeks information that is not relevant to any issue in the case.  Pursuant to Local Rule 37-1, Skechers hereby requests that Reinsdorf meet and confer within the next 10 days concerning this Topic.  Otherwise, Skechers will seek a protective order.

**TOPIC NO. 10:**

Skechers' policies and practices with respect to document/data retention from 2006 through the present, including (without limitation) any purported loss or

8

1   destruction of digital graphic design files that contain photographs authored by

2   Reinsdorf.

3   **RESPONSE AND OBJECTIONS TO TOPIC NO. 10:**

4       Skechers hereby incorporates by reference each of the foregoing general

5   objections.  In addition, Skechers specifically objects to this Topic on the following

6   grounds:  (i) it is vague and ambiguous, not reasonably limited in scope or time

7   period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant

8   and/or not reasonably calculated to lead to the discovery of admissible evidence;

9   and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a

10   matter for examination with reasonable particularity.  Skechers also specifically

11   objects to this Topic on the grounds that it assumes facts not in evidence.

12       Subject to and without waiving the foregoing general and specific objections,

13   Skechers responds as follows:  Skechers will designate a witness to testify

14   concerning the company's retention and/or loss, if any, of digital graphic design

15   files containing photographs authored by Reinsdorf.

16   **TOPIC NO. 11:**

17       Media planning and buying for Skechers' domestic and international

18   marketing campaigns from 2006 through the present, including (without limitation)

19   "Out of Home," magazines, print ads, kiosks ads, vehicle wraps, trade show

20   banners and displays, cooperative and any other advertising containing photographs

21   authored by Reinsdorf.

22   **RESPONSE AND OBJECTIONS TO TOPIC NO. 11:**

23       Skechers hereby incorporates by reference each of the foregoing general

24   objections.  In addition, Skechers specifically objects to this Topic on the following

25   grounds:  (i) it is vague and ambiguous, not reasonably limited in scope or time

26   period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant

27   and/or not reasonably calculated to lead to the discovery of admissible evidence;

28   and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a

9

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3
26

matter for examination with reasonable particularity.  Skechers also specifically objects to this Topic on the grounds that the terms "Out of Home," "magazines," "print ads," "kiosk ads," "vehicle wraps," "trade show banners," "displays," and "cooperative and any other advertising" are overbroad, vague and ambiguous.

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows:  Skechers will designate a witness to testify concerning Skechers' use of advertising and/or marketing materials incorporating photographs taken by Reinsdorf from 2006 to the present.

**TOPIC NO. 12:**

Ordering, printing and distribution of marketing materials containing photographs authored by Reinsdorf such as (without limitation) banners, posters, counter-cards, cubes, standees, brochures, and point-of-purchase displays.

**RESPONSE AND OBJECTIONS TO TOPIC NO. 12:**

Skechers hereby incorporates by reference each of the foregoing general objections.  In addition, Skechers specifically objects to this Topic on the following grounds:  (i) it is vague and ambiguous, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity.

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows:  Skechers will designate a witness to testify on this Topic.

**TOPIC NO. 13:**

Skechers' revenues and profits from 2006 through the present attributable to Skechers' marketing campaigns in 2006, 2007, 2008, 2009 and 2010.

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3
27

**RESPONSE AND OBJECTIONS TO TOPIC NO. 13:**

Skechers hereby incorporates by reference each of the foregoing general objections. In addition, Skechers specifically objects to this Topic on the following grounds: (i) it is vague and ambiguous, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity. Skechers also specifically objects to this Topic on the grounds that it calls for expert testimony and is not a proper subject on which to examine a fact witness.

Subject to and without waiving the foregoing general and specific objections, Skechers responds as follows: Pursuant to Local Rule 37-1, Skechers hereby requests that Reinsdorf meet and confer within the next 10 days concerning this Topic. Otherwise, Skechers will seek a protective order.

**TOPIC NO. 14:**

Skechers' deductible expenses and elements of profit from 2006 through the present attributable to factors other than photographs authored by Reinsdorf.

**RESPONSE AND OBJECTIONS TO TOPIC NO. 14:**

Skechers hereby incorporates by reference each of the foregoing general objections. In addition, Skechers specifically objects to this Topic on the following grounds: (i) it is vague and ambiguous, not reasonably limited in scope or time period, and calls for a legal conclusion; (ii) it seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence; and (iii) it is overbroad, oppressive, unduly burdensome, and fails to delineate a matter for examination with reasonable particularity. Skechers also specifically objects to this Topic on the grounds that it calls for expert testimony and is not a proper subject on which to examine a fact witness.

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3

28

1    Subject to and without waiving the foregoing general and specific objections,

2   Skechers responds as follows:  Pursuant to Local Rule 37-1, Skechers hereby

3   requests that Reinsdorf meet and confer within the next 10 days concerning this

4   Topic.  Otherwise, Skechers will seek a protective order.

5

6   Dated:  March 21, 2012                O'MELVENY & MYERS LLP

7

8                                         By:_/s/ Drew E. Breuder_____
                                              Drew E. Breuder
9                                         Attorneys for Skechers U.S.A., Inc. and
                                          Skechers U.S.A., Inc. II
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              12

## PROOF OF SERVICE BY ELECTRONIC MAIL AND U. S. MAIL

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 1999 Avenue of the Stars, 7th Floor, Los Angeles, California  90067-6035.  On March 21, 2012, I served the within documents:

**DEFENDANT SKECHERS U.S.A., INC. AND SKECHERS U.S.A., INC. II'S OBJECTIONS AND RESPONSES TO PLAINTIFF RICHARD REINSDORF'S NOTICE OF DEPOSITION OF SKECHERS U.S.A., INC.**

by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

And, by causing the document(s) to be emailed or electronically transmitted to the person(s) at the email addresses set forth below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

William J. Briggs II
Henry L. Self III
LAVELY & SINGER
2049 Century Park East, Suite 2400
Los Angeles, CA  90067-2906
Telephone:  (310) 556-3501
Facsimile:  (310) 556-3615
E-Mail:  wbriggs@lavelysinger.com
         hself@lavelysinger.com

13

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3
30

1       I declare under penalty of perjury under the laws of the United States that the

2   above is true and correct.

3       Executed on March 21, 2012 at Los Angeles, California.

4

5

6   _____
                     Christine Hess

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SKECHERS' OBJECTIONS TO
PLAINTIFF'S 30(B)(6) DEP. NOTICE
CV10-7181-DDP (SSX)

EXHIBIT 3
31

# EXHIBIT 4

WILLIAM J. BRIGGS II (BAR NO. 144717)
HENRY L. SELF III (BAR NO. 223153)
LAVELY & SINGER
PROFESSIONAL CORPORATION
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
Email: wbriggs@lavelysinger.com
        hself@lavelysinger.com

Attorneys for Plaintiff
RICHARD REINSDORF

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD REINSDORF, an individual, | CASE NO. CV10-7181-DDP (SSx) |
| Plaintiff, | **PLAINTIFF RICHARD REINSDORF'S RESPONSES TO SKECHERS U.S.A., INC. AND SKECHERS U.S.A., INC. II'S THIRD SET OF INTERROGATORIES** |
| v. | |
| SKECHERS U.S.A., INC., a Delaware corporation; SKECHERS U.S.A., INC. II, a Delaware corporation; and DOES 1–10, inclusive, | [Hon. Dean D. Pregerson, Room 3] |
| Defendants. | Discovery Cut-Off: April 2, 2012<br>Motion Cut-Off: May 4, 2012<br>Trial Date: July 10, 2012 |

PROPOUNDING PARTY:    **Defendants Skechers U.S.A., Inc., and**

**Skechers U.S.A., Inc. II**

RESPONDING PARTY:    **Plaintiff Richard Reinsdorf**

SET NO:    **Three (4–13)**

1      TO  DEFENDANTS  SKECHERS  U.S.A.,  INC.  AND  SKECHERS

2  U.S.A., INC. II AND THEIR ATTORNEYS OF RECORD:

3      Plaintiff, Richard Reinsdorf ("Responding Party"), hereby responds to the

4  Third Set of Interrogatories propounded by Defendant Skechers U.S.A, Inc.

5  SKECHERS U.S.A., INC. II ("Propounding Party") as follows:

6  **I.**

7  **PRELIMINARY STATEMENT**

8      Each of the following objections and responses is made solely for the purposes

9  of this action.   Each response is subject to all objections as to competence,

10  relevance, materiality, propriety, and admissibility and any and all objections on any

11  ground that would require exclusion of any response herein if it were introduced in

12  court, all of which objections and grounds are expressly reserved and may be

13  interposed at time of trial.

14      No incidental or implied admissions are intended by the responses herein.

15  The fact that Responding Party responds to or objects to any interrogatory should

16  not be taken as an admission that it accepts or admits the existence of any facts

17  assumed by any such interrogatory or that such response or objection constitutes

18  admissible evidence as to any such assumed facts.  The fact that Responding Party

19  responds to part or all of any interrogatory is not intended to and shall not be

20  construed to be a waiver of any part of any objection to any interrogatory.

21      Each of the following objections and responses is based upon information,

22  documents and writings presently available to and located by Responding Party and

23  its attorneys.  Discovery is continuing and will continue as along as permitted by

24  rule, statute or stipulation of the parties herein, and the investigation of Responding

25  Party's attorneys and agents will continue to and through any hearing, judicial

26  proceeding, or trial in this action.  Responding Party reserves the right, prior to or

27  at the time of any hearing, judicial proceeding or trial, to introduce any evidence

28

1  from any source that hereafter may be discovered and testimony of witnesses whose

2  identities may hereafter be discovered.

3        Each of the following responses is made based on Responding Party's

4  interpretation and understanding of the respective interrogatory.    Should

5  Propounding Party subsequently assert an interpretation of an interrogatory that

6  differs from the interpretation and understanding of Responding Party, Responding

7  Party reserves the right to supplement its response and objections thereto.

8        As discovery proceeds, witnesses, facts and evidence may be discovered

9  which are not set forth herein but which may have been responsive to an

10  interrogatory.  Facts and evidence now known may be imperfectly understood, or

11  the relevance or the consequence of such facts and evidence may be imperfectly

12  understood and, accordingly, such facts and evidence may, in good faith, not be

13  included in the following answers.   It is anticipated that further discovery,

14  independent investigation, legal research and analysis will supply additional facts,

15  add meaning to the known facts, as well as establish entirely new factual conclusions

16  and legal contentions, all of which may lead to substantial additions to, changes in

17  and variations from the contentions herein set forth.  The following interrogatory

18  answers are given without prejudice to the Responding Party's right to produce

19  evidence of any subsequently discovered facts or witnesses that Responding Party

20  may later recall.  Accordingly, Responding Party reserves the right to change any

21  and all answers herein as additional facts are ascertained, analysis is conducted,

22  legal research is completed and contentions are made.

23        Responding Party assumes no obligation to voluntarily supplement or amend

24  these answers to reflect witnesses, facts and evidence following the filing of these

25  answers.  In addition, because some of these answers may have been ascertained by

26  Responding Party's attorney and/or investigators (if any), Responding Party may not

27  have personal knowledge of the information from which these answers are derived.

28

## II.

## <u>GENERAL OBJECTIONS</u>

1.      Responding Party objects to the interrogatories to the extent that they call for information, communications or documentation protected by the attorney-client privilege and/or the work product doctrine.

2.      Responding Party objects to the interrogatories to the extent that they are not specified with sufficient particularity or seek information that is not relevant to this action.

3.      Responding Party objects to the interrogatories to the extent that they seek disclosure of trade secret or other confidential and/or proprietary information.

4.      Responding Party objects to the interrogatories to the extent that they seek information protected from disclosure by rights of privacy under the Constitution of the United States or the State of California.

5.      Responding Party objects to Propounding Party's definition of "IDENTIFY" as overbroad and unduly burdensome, but will identify any document in sufficient detail to permit Propounding Party to locate and to identify such item.

6.      Responding Party objects to Propounding Party's definition of "SKECHERS PHOTOGRAPHS" as meaning all photographs taken by him during the relevant photo shoots.   Those photographs are solely his property, not Skechers'.

The preliminary statement and general objections are incorporated into each response below, regardless of whether specifically mentioned.   The specific objections set forth below are not a waiver, in whole or in part, of any of these general objections.  Subject to and without waiver of these objections, Responding Party responds below.

1                                 **RESPONSES TO INTERROGATORIES**

2

3 **INTERROGATORY NO. 4:**

4        IDENTIFY the alleged actual damages, if any, that YOU intend to seek at

5 trial.

6 **RESPONSE TO  INTERROGATORY NO. 4:**

7        Responding Party incorporates by this reference each and every general

8 objection as though fully set forth herein.  Responding Party further objects to this

9 interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome

10 and harassing.   Furthermore, this interrogatory as phrased is impermissibly vague,

11 ambiguous, compound and therefore unintelligible.

12        Subject to and without waiving the foregoing objections, Responding Party

13 responds: By reason of the defendants' past and continuing copyright infringements,

14 breaches of contract and other wrongful conduct, Responding Party has sustained

15 and will continue to sustain substantial injury, loss and damage in amounts to be

16 determined at trial.   As set forth, *inter alia*, in the Expert Report of David B.

17 Connelly, Responding Party has sustained at least $2,349,500 in actual damages for

18 periods through the filing of the complaint in September 2010 and potential

19 additional actual damages in the amount of at least $800,000 for periods through

20 December 2011.

21

22 **INTERROGATORY NO. 5:**

23        IDENTIFY all usage or license fees, if any, that YOU intend to seek at trial.

24 **RESPONSE TO  INTERROGATORY NO. 5:**

25        Responding Party incorporates by this reference each and every general

26 objection as though fully set forth herein.  Responding Party further objects to this

27 interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome

28

1   and harassing.   Furthermore, this interrogatory as phrased is impermissibly vague,

2   ambiguous, compound and therefore unintelligible.

3        Subject to and without waiving the foregoing objections, Responding Party

4   responds: By reason of the defendants' past and continuing copyright infringements,

5   breaches of contract and other wrongful conduct, Responding Party has sustained

6   and will continue to sustain substantial injury, loss and damage in amounts to be

7   determined at trial.   As set forth, *inter alia*, in the Expert Report of David B.

8   Connelly, Responding Party has sustained at least $2,349,500 in actual damages for

9   periods through the filing of the complaint in September 2010 and potential

10  additional actual damages in the amount of at least $800,000 for periods through

11  December 2011.

12

13  **INTERROGATORY NO. 6:**

14        IDENTIFY the specific portion of SKECHERS' profits, if any, that YOU

15  intend to seek at trial.

16  **RESPONSE TO  INTERROGATORY NO. 6:**

17        Responding Party incorporates by this reference each and every general

18  objection as though fully set forth herein.  Responding Party further objects to this

19  interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome

20  and harassing.   Furthermore, this interrogatory as phrased is impermissibly vague,

21  ambiguous, compound and therefore unintelligible.

22        Subject to and without waiving the foregoing objections, Responding Party

23  responds: Pursuant to Section 504 of the United States Copyright Act, 17 U.S.C.

24  § 504, Responding Party intends to seek at trial the portion(s) of the defendants'

25  profits that are attributable to their infringements and are not taken into account in

26  computing actual damages.

27

28

**INTERROGATORY NO. 7:**

State all facts supporting the allegation in paragraph 49 of YOUR COMPLAINT that YOU sustained damage in the amount of $250 million.

**RESPONSE TO INTERROGATORY NO. 7:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein. Responding Party further objects to this interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome and harassing. Furthermore, this interrogatory as phrased is impermissibly vague, ambiguous, compound and therefore unintelligible.

Subject to and without waiving the foregoing objections, Responding Party responds: Pursuant to Section 504 of the United States Copyright Act, 17 U.S.C. § 504, Responding Party is entitled to recover the actual damages suffered by him as a result of the infringements and any profits of the defendants that are attributable to the infringements and are not taken into account in computing actual damages.

**INTERROGATORY NO. 8:**

State all facts that support YOUR claim, if any, for an award of statutory damages for SKECHERS' alleged copyright infringement.

**RESPONSE TO INTERROGATORY NO. 8:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein. Responding Party further objects to this interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome and harassing. Furthermore, this interrogatory as phrased is impermissibly vague, ambiguous, compound and therefore unintelligible.

Subject to and without waiving the foregoing objections, Responding Party responds: Pursuant to Section 504 of the United States Copyright Act, 17 U.S.C. § 504, Responding Party may elect at any time before final judgment is rendered to

recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in this action.

**INTERROGATORY NO. 9:**

State all facts that support YOUR claim, if any, for the "gains, profits and advantages Skechers ha[s] obtained as a result of their acts of copyright infringement" as alleged in paragraph 50 of YOUR COMPLAINT.

**RESPONSE TO  INTERROGATORY NO. 9:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein.  Responding Party further objects to this interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome and harassing.   Furthermore, this interrogatory as phrased is impermissibly vague, ambiguous, compound and therefore unintelligible.

Subject to and without waiving the foregoing objections, Responding Party responds: Pursuant to Section 504 of the United States Copyright Act, 17 U.S.C. § 504, Responding Party is entitled to recover the actual damages suffered by him as a result of the infringements and any profits of the defendants that are attributable to the infringements and are not taken into account in computing actual damages.

**INTERROGATORY NO. 10:**

State all facts that support YOUR allegation in paragraph 50 of YOUR COMPLAINT that SKECHERS' "gains, profits and advantages exceed $250 million."

**RESPONSE TO  INTERROGATORY NO. 10:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein.  Responding Party further objects to this interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome

1  and harassing.   Furthermore, this interrogatory as phrased is impermissibly vague,

2  ambiguous, compound and therefore unintelligible.

3      Subject to and without waiving the foregoing objections, Responding Party

4  responds:

5      As set forth, *inter alia*, in the Expert Report of Jamie Turner and the sources

6  cited and relied upon therein, Skechers' gross profits (defined as a company's profit

7  after selling a product or service and deducting the cost associated with its

8  production and sale) during the 2007 to 2010 period were as follows: 2007 - $604

9  million; 2008 - $598 million; 2009 - $623 million; 2010 - $911 million.  The total

10 gross profits for Skechers during the 2007 to 2010 period were $2.736 billion.

11 Skechers' net profits (defined as a company's profit after selling a product or service

12 and deducting the cost associated with its production and sale as well as the cost of

13 depreciation, interest, taxes and other expenses) during the 2007 to 2012 period

14 were as follows: 2007 - $75 million; 2008 - $55 million; 2009 - $55 million;

15 2010 - $136 million.  The total net profits for Skechers during the 2007 to 2010

16 period were $321 million.

17     As set forth, *inter alia*, in the Expert Report of David B. Connelly and the

18 sources cited and relied upon therein, Skechers enjoyed a cumulative,

19 company-wide annual net sales revenue increase after beginning to use Responding

20 Party's photographs in or around January 2007.  During the fiscal (and calendar)

21 year 2007, Skechers enjoyed significant increases in its company-wide net sales,

22 which increased by $188.8 million (or 15.7%) from the preceding 2006 year, to a

23 year 2007 total net sales of $1.39 billion. Further, in 2007, Skechers enjoyed an

24 $83.9 million (or 45.7%) increase in net sales from its international wholesale

25 segment (for total international sales of $268 million in 2007). Moreover, our

26 review of the total revenues reported by Skechers' various (public company)

27 competitors 5 during the years 2007 through 2009 revealed that Skechers had

28 greater success than most of its competitors during this period.  In total, the

1   Skechers annual reports revealed that Skechers enjoyed a cumulative, company-wide

2   annual net sales revenue increase of $231 million during the years 2007 through

3   2009, and an additional $570 million increase in net sales revenues during 2010 (for

4   over $2 billion in net sales for the 2010 year).

5

6   **INTERROGATORY NO. 11:**

7       IDENTIFY all price schedules, usage or license fee schedules, pricing books,

8   reference materials, or other documents used by YOU to set usage or license fees

9   for YOUR photography assignments in the past five years.

10   **RESPONSE TO  INTERROGATORY NO. 11:**

11       Responding Party incorporates by this reference each and every general

12   objection as though fully set forth herein.  Responding Party further objects to this

13   interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome

14   and harassing.   Furthermore, this interrogatory as phrased is impermissibly vague,

15   ambiguous, compound and therefore unintelligible.

16       Subject to and without waiving the foregoing objections, Responding Party

17   responds: he is unaware of the existence of any documents responsive to the

18   interrogatory.

19

20   **INTERROGATORY NO. 12:**

21       IDENTIFY all photography assignments between 2006 to the present for

22   which YOU were personally hired and did not utilize or rely on the services of

23   OPUS.

24   **RESPONSE TO  INTERROGATORY NO. 12:**

25       Responding Party incorporates by this reference each and every general

26   objection as though fully set forth herein.  Responding Party further objects to this

27   interrogatory on the grounds that it calls for information that is neither relevant nor

28   reasonably calculated to lead to the discovery of admissible evidence.  Responding

Party further objects to this interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome and harassing.   Furthermore, this interrogatory as phrased is impermissibly vague, ambiguous, compound and therefore unintelligible. Responding Party further objects to the interrogatory on the grounds that it violates Responding Party's right of privacy and the right of privacy of third parties and calls for the production of confidential, proprietary information.

**INTERROGATORY NO. 13:**

IDENTIFY all photography assignments YOU have been hired for by any PERSON other than SKECHERS since the MAY 2009 SHOOT.

**RESPONSE TO  INTERROGATORY NO. 13:**

Responding Party incorporates by this reference each and every general objection as though fully set forth herein.  Responding Party further objects to this interrogatory on the grounds that it calls for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Party further objects to this interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome and harassing.   Furthermore, this interrogatory as phrased is impermissibly vague, ambiguous, compound and therefore unintelligible. Responding Party further objects to this interrogatory on the grounds that it violates Responding Party's right of privacy and the right of privacy of third parties and calls for the production of confidential, proprietary information.

DATE: May 14, 2012

LAVELY & SINGER
PROFESSIONAL CORPORATION
WILLIAM J. BRIGGS II
HENRY L. SELF III


By: ~·|⸍ᵢᵢˢᴸᴸᶠᵀⁱᴵ
      HENRY L. SELF III
Attorneys for Plaintiff
RICHARD REINSDORF

## PROOF OF SERVICE
### FRCP 5

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 2049 Century Park East, Suite 2400, Los Angeles, California 90067-2906.

On **May 14, 2012,** I served the foregoing document described as:

**PLAINTIFF RICHARD REINSDORF'S RESPONSES TO SKECHERS U.S.A., INC. AND SKECHERS U.S.A., INC. II'S THIRD SET OF INTERROGATORIES**

on the interested parties in this action by placing:
**[X] a true and correct copy -OR- [ ] the original document** thereof enclosed in sealed envelopes addressed as follows:

Robert C. Welsh, Esq.                   ***Attorneys for Defendants***
Drew E. Breuder, Esq.                   **Skechers U.S.A., Inc. and**
Jeffrey Barker, Esq.                    **Skechers U.S.A., Inc. II**
O'Melveny & Myers LLP
1999 Avenue of the Stars
7th Floor
Los Angeles, California 90067-6035

**[X]   BY MAIL:**
    **[ ]**  I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.
    **[X]**  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am duly employed in the office of a member of the bar of this Court at whose direction the service was made.  Executed **May 14, 2012,** at Los Angeles, California.

_____
Jelena Jovanovic



First Class Mail

FROM

LAVELY & SINGER
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
2049 CENTURY PARK EAST, SUITE 2400     LOS ANGELES, CA 90067-2906

TO

Robert C. Welsh, Esq.
Drew E. Breuder, Esq.
Jeffrey Barker, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars
7th Floor
Los Angeles, California 90067-6035

US POSTAGE $02.90

ZIP 90067
011D11629073

EXHIBIT 4
44

**WILLIAMS LEA | SYMPHONY**
CENTURY CITY

# CALENDAR REQUEST

| | |
|---|---|
| Job Number | 0 0 0 0 0 5 2 2 2 9 - 0 0 0 |

| | | | |
|---|---|---|---|
| Requested Date | 05/16/2012 01:50 PM | Requested By | CALENDAR,LITIGATION |
| Due Date | 05/16/2012 04:50 PM | User ID | 1000000000 |
| Case Number | CV10-7181 DDP (SSx) | Phone | |
| Client Number | 0798320 | Office Floor | |
| Matter Number | 00043 | Room Number | |
| | | Number of Documents | 4.000 |

| | |
|---|---|
| Client Name | SKECHERS USA, INC. |
| Matter Name | SKECHERS ADV. REINSDORF AND OPUS PHOTOGRAPHY |
| Email Legal Team 1 | |
| Email Legal Team 2 | |

Number of Pages including coversheet    43          ☒ Document sent to Calendar

Document Type   FIFTH SET OF REQUESTS FOR PROD

**Method of Service**
☑ USPS Mail
☐ Overnight Courier
☐ Personally Served
Other

| | |
|---|---|
| Postmark date-Date sent | MAY 14 2012 |
| Deliver Original To | ROBERT.WELSH |
| Time Received to Mailroom | 05/16/2012 12:34 PM |

Special Instructions

EXHIBIT 4

# EXHIBIT 5

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3

4   --------------------------------          **ORIGINAL**

5   RICHARD REINSDORF,                    )

6              Plaintiff,       ) Case No.

7       vs.                     ) CV10-7181-DDP (SSx)

8   SKECHERS U.S.A., INC.; SKECHERS )

9   U.S.A., INC. II; and DOES 1-10, )

10             Defendants.       )

11  --------------------------------

12

13

14       VIDEOTAPED DEPOSITION OF RICHARD REINSDORF

15          LOS ANGELES, CALIFORNIA

16         TUESDAY, FEBRUARY 28, 2012

17

18

19  Reported by: RICKI Q. MELTON, CSR No. 9400

20  Job No. 136084

21

22

23

24

25  PAGES 1 - 360

Page 1

| 1 | A | No. | 10:52:52 |

1    A    No.                                                    10:52:52

2    Q    Okay.  So is it your understanding that           10:52:52

3    someone at Opus does that?                               10:52:54

4    A    I would understand that.                           10:52:55

5    Q    Yeah, okay.  All right.                            10:52:57

6         And then you said that, if there is a            10:53:05

7    client that is interested in hiring you, that Opus     10:53:07

8    will sent out an estimate; is that correct?            10:53:09

9    A    Sure.                                              10:53:12

10   Q    What involvement, if any, do you play in          10:53:12

11   the sending out of an estimate?                         10:53:16

12        MR. BRIGGS:  Objection.  Vague and               10:53:18

13   ambiguous.                                              10:53:19

14   BY MR. WELSH:                                           10:53:22

15   Q    You may answer.                                    10:53:22

16   A    Could you please rephrase?                         10:53:23

17   Q    Yeah.                                              10:53:25

18        What role, what activities are you               10:53:25

19   involved in, if any, with regard to the sending out    10:53:28

20   of an estimate?                                         10:53:31

21   A    I'm not.                                           10:53:32

22   Q    Okay.  So do you review any estimates            10:53:33

23   before they go out to clients?                          10:53:38

24   A    Depends.  Not normally.                            10:53:41

25   Q    Okay.  Again, just talking normally, do          10:53:42

Page 45

| | | |
|---|---|---|
| 1 | you ever actually see the estimates that are sent | 10:53:48 |
| 2 | out? | 10:53:50 |
| 3 | A    Not typically. | 10:53:51 |
| 4 | Q    Okay.  Do you have conversations with | 10:53:52 |
| 5 | Mr. Heller before an estimate is sent out? | 10:54:00 |
| 6 | A    Sometimes. | 10:54:03 |
| 7 | Q    Okay.  And when you do have conversations | 10:54:03 |
| 8 | with Mr. Heller about -- strike that. | 10:54:09 |
| 9 | Do you ever have conversations with | 10:54:12 |
| 10 | Mr. Heller specifically about what should be | 10:54:14 |
| 11 | included in an estimate? | 10:54:16 |
| 12 | A    No. | 10:54:19 |
| 13 | Q    Okay.  You don't recall that ever | 10:54:19 |
| 14 | happening? | 10:54:24 |
| 15 | A    No. | 10:54:25 |
| 16 | Q    Okay.  And then the next thing you | 10:54:25 |
| 17 | mentioned was negotiating deals. | 10:54:34 |
| 18 | Do you personally get involved in | 10:54:41 |
| 19 | negotiating the deals with clients? | 10:54:43 |
| 20 | A    No. | 10:54:46 |
| 21 | Q    Is that exclusively done by Mr. Heller? | 10:54:46 |
| 22 | A    That's Mr. Heller. | 10:54:48 |
| 23 | Q    Does Mr. Heller have the authority to | 10:54:49 |
| 24 | represent you in these negotiations? | 10:55:11 |
| 25 | MR. BRIGGS:  Objection -- | 10:55:16 |

Page 46

| | | |
|---|---|---|
| 1 | asking a question.  Let me phrase it a different | 10:57:20 |
| 2 | way. | 10:57:22 |
| 3 | When Mr. Heller completes his negotiation | 10:57:23 |
| 4 | of a deal on your behalf, does he then inform you | 10:57:25 |
| 5 | of what the deal is? | 10:57:30 |
| 6 | A    When he negotiates -- if it goes through. | 10:57:33 |
| 7 | Q    Yes. | 10:57:35 |
| 8 | If it -- if he negotiates a deal to a | 10:57:36 |
| 9 | conclusion -- | 10:57:39 |
| 10 | A    Right, yeah. | 10:57:39 |
| 11 | Q    -- does he then inform you of what that | 10:57:39 |
| 12 | conclusion is? | 10:57:42 |
| 13 | A    Not necessarily -- | 10:57:43 |
| 14 | MR. BRIGGS:  Wait, wait, wait, wait. | 10:57:44 |
| 15 | As phrased, it's vague and ambiguous.  It | 10:57:46 |
| 16 | also calls for a legal conclusion. | 10:57:48 |
| 17 | If you understand it -- | 10:57:50 |
| 18 | MR. WELSH:  I'm not asking -- | 10:57:51 |
| 19 | THE WITNESS:  Actually, I don't. | 10:57:53 |
| 20 | Because -- the reason I don't understand is I | 10:57:54 |
| 21 | don't -- | 10:57:56 |
| 22 | Could you repeat it? | 10:57:56 |
| 23 | BY MR. WELSH: | 10:57:57 |
| 24 | Q    Okay.  There are times when Mr. Heller has | 10:57:58 |
| 25 | negotiated a deal to a conclusion with a particular | 10:57:59 |

Page 49

```
 1    about this.  Honestly.                        10:58:43

 2        A    I appreciate that --                 10:58:44

 3        Q    Okay.                                10:58:44

 4        A    -- Mr. Welsh.                        10:58:45

 5        Q    At some point -- strike that.        10:58:46

 6             Mr. Heller negotiates with clients on your   10:58:48

 7    behalf; correct?                              10:58:53

 8        A    Correct.                             10:58:54

 9        Q    Okay.  Sometimes those negotiations result   10:58:54

10    in you being hired for a photo shoot; correct?   10:58:59

11        A    Correct.                             10:59:03

12        Q    Okay.  In those instances when the   10:59:04

13    negotiation results in you being hired as a    10:59:09

14    photographer at a photo shoot, does Mr. Heller then   10:59:13

15    inform you of the terms that he has negotiated?   10:59:17

16        A    No.                                  10:59:20

17        Q    Okay.  When is it you learn of the terms   10:59:21

18    that he has negotiated?                        10:59:24

19        A    Sometimes I don't even know.  Sometimes I   10:59:26

20    do.                                           10:59:28

21        Q    Okay.  So if he negotiates an agreement   10:59:28

22    for you to do a photo shoot for corporation "X,"   10:59:47

23    because this is a hypothetical --             10:59:53

24        A    Uh-huh.                              10:59:54

25        Q    -- and then you go out and you do the   10:59:54
```

Page 51

| | | | |
|---|---|---|---|
| 1 | A | Show up and shoot. | 11:01:05 |
| 2 | Q | Show up and shoot?  Okay. | 11:01:07 |
| 3 | A | Take some pictures. | 11:01:08 |
| 4 | Q | Okay. | 11:01:11 |
| 5 | | MR. BRIGGS:  Bottom line. | 11:01:11 |
| 6 | BY MR. WELSH: | | 11:01:11 |
| 7 | Q | There we go.  Okay. | 11:01:12 |
| 8 | | MR. BRIGGS:  Can we take a quick break? | 11:01:12 |
| 9 | | MR. WELSH:  Sure can. | 11:01:13 |
| 10 | | MR. BRIGGS:  Where is the rest room? | 11:01:14 |
| 11 | | MR. WELSH:  Let's go off the record. | 11:01:16 |
| 12 | | VIDEO OPERATOR:  Off the record.  11:01. | 11:01:17 |
| 13 | | (Off the record.) | 11:01:28 |
| 14 | | VIDEO OPERATOR:  Okay.  We are back on the | 11:08:57 |
| 15 | record.  11:08. | | 11:09:00 |
| 16 | BY MR. WELSH: | | 11:09:04 |
| 17 | Q | Okay.  One of the other things that you | 11:09:07 |
| 18 | mentioned in addition to helping you acquire | | 11:09:09 |
| 19 | clients, sending out estimates, negotiating deals, | | 11:09:13 |
| 20 | you then mentioned that Opus Photo handles billing; | | 11:09:17 |
| 21 | is that correct? | | 11:09:17 |
| 22 | A | That's correct. | 11:09:26 |
| 23 | Q | Okay.  Do you have any involvement in the | 11:09:27 |
| 24 | billing process? | | 11:09:30 |
| 25 | A | Not really. | 11:09:30 |

Page 53

| 1 | Q | Okay.  Do you prepare any of the bills? | 11:09:31 |
| 2 | A | No. | 11:09:33 |
| 3 | Q | Okay.  Do you review them before they go | 11:09:33 |
| 4 | out? | | 11:09:35 |
| 5 | A | No. | 11:09:35 |
| 6 | Q | Okay.  Typically do you ever even see them? | 11:09:35 |
| 7 | A | No. | 11:09:42 |
| 8 | Q | Okay.  Have you ever seen any of the | 11:09:45 |

```
 9    estimates that Opus prepared for any of the     11:09:47
10    Skechers photo shoots?                          11:09:50
11            MR. BRIGGS:  Excuse me.                  11:09:51
12            Objection.  Vague and ambiguous as to time. 11:09:52
13            Prior to them going out?  After this     11:09:54
14    lawsuit?                                         11:09:56
15            MR. WELSH:  I said "ever."               11:09:56
16            MR. BRIGGS:  Oh.                          11:09:57
17            MR. WELSH:  "Ever" means --              11:09:57
18            MR. BRIGGS:  Okay.  I didn't hear that,  11:09:57
19    the "ever."                                      11:09:58
20            MR. WELSH:  Ever, ever.                  11:09:59
21            MR. BRIGGS:  Okay.                        11:10:00
22            THE WITNESS:  Yes.                        11:10:01
23    BY MR. WELSH:                                     11:10:01
24        Q   Okay.  And when did you first see any of  11:10:02
25    the estimates for the Skechers photo shoots?      11:10:05
```

Page 54

| | | |
|---|---|---|
| 1 | A    Hmm.  I believe sometime at the end of | 11:10:20 |
| 2 | 2009. | 11:10:24 |
| 3 | Q    Okay.  Was that after the lawsuit was | 11:10:25 |
| 4 | filed? | 11:10:27 |
| 5 | A    Maybe just before. | 11:10:31 |
| 6 | Q    Okay.  But it was in connection with the | 11:10:32 |
| 7 | lawsuit -- | 11:10:38 |
| 8 | A    Yeah. | 11:10:38 |
| 9 | Q    -- correct? | 11:10:38 |
| 10 | A    Uh-huh. | 11:10:39 |
| 11 | Q    That's a "yes"? | 11:10:39 |
| 12 | A    Yes. | 11:10:40 |
| 13 | Q    Okay.  And when is the first time you ever | 11:10:41 |
| 14 | saw an invoice for a Skechers photo shoot? | 11:10:46 |
| 15 | A    I believe the same time. | 11:10:54 |
| 16 | Q    Okay.  And when you first saw either an | 11:10:55 |
| 17 | estimate or an invoice for a Skechers photo shoot, | 11:11:11 |
| 18 | this was after you had completed your last photo | 11:11:16 |
| 19 | shoot for Skechers; correct? | 11:11:19 |
| 20 | A    Correct, I believe -- oh, it may not -- | 11:11:21 |
| 21 | that may not be true. | 11:11:24 |
| 22 | MR. BRIGGS:  Okay.  You've answered. | 11:11:27 |
| 23 | BY MR. WELSH: | 11:11:28 |
| 24 | Q    We will go -- | 11:11:28 |
| 25 | A    Okay. | 11:11:29 |

Page 55

| | | |
|---|---|---|
| 1 | would you say fall into the groups that you | 11:19:11 |
| 2 | identified -- fashion, apparel, travel and leisure, | 11:19:14 |
| 3 | lifestyle, and celebrity? | 11:19:20 |
| 4 | A   I would say all of them. | 11:19:28 |
| 5 | Q   Okay.  And has that generally been true -- | 11:19:29 |
| 6 | A   Generally. | 11:19:32 |
| 7 | Q   -- for you? | 11:19:33 |
| 8 | A   Uh-huh. | 11:19:36 |
| 9 | Q   And was it true during the time that you | 11:19:36 |
| 10 | were doing photo shoots for Skechers? | 11:19:38 |
| 11 | A   It was. | 11:19:40 |
| 12 | MR. WELSH:  Okay.  Mark as our first | 11:19:58 |
| 13 | exhibit, 50. | 11:19:59 |
| 14 | (Exhibit 50 was marked for | 02:19:26 |
| 15 | identification by the reporter | 02:19:26 |
| 16 | and is attached hereto.) | 11:20:08 |
| 17 | THE WITNESS:  I need to get my glasses. | 11:20:08 |
| 18 | BY MR. WELSH: | 11:20:33 |
| 19 | Q   Okay.  I have -- Mr. Reinsdorf, I have | 11:20:34 |
| 20 | marked as Exhibit 50 the complaint in this lawsuit. | 11:20:39 |
| 21 | If you wouldn't mind, please take a look at it and | 11:20:47 |
| 22 | tell me -- | 11:20:49 |
| 23 | MR. BRIGGS:  Do you want him to read it? | 11:20:49 |
| 24 | MR. WELSH:  No.  I want him to tell me if | 11:20:51 |
| 25 | he has ever seen the document before. | 11:20:53 |

Page 62

```
 1              THE WITNESS:  It appears to be the        11:20:54

 2    document.                                           11:20:55

 3    BY MR. WELSH:                                       11:20:55

 4       Q    Okay.  And did you read this document       11:20:55

 5    before the lawsuit was filed?                       11:20:56

 6       A    I did.                                      11:20:58

 7       Q    Okay.  Did you read it word for word?       11:20:59

 8       A    I did.                                      11:21:01

 9       Q    Did you agree with everything that was      11:21:02

10    said in there?                                      11:21:05

11              MR. BRIGGS:  You can answer.              11:21:09

12              THE WITNESS:  I believe so.               11:21:11

13    BY MR. WELSH:                                       11:21:12

14       Q    And was there anything that you -- that     11:21:13

15    you disagreed with when you read it?                11:21:15

16       A    To the best of my knowledge, no.            11:21:17

17       Q    Okay.  Did Mr. Heller review the complaint  11:21:19

18    before it was filed?                                11:21:28

19       A    I don't remember.                           11:21:31

20       Q    Now, in this lawsuit -- in this complaint,  11:21:33

21    you have referenced various photo shoots for        11:21:40

22    Skechers; correct?                                  11:21:45

23              MR. BRIGGS:  Objection.  Lacks foundation,  11:21:46

24    assumes facts not in evidence.                      11:21:48

25              He didn't do it.  That was your question.  11:21:54
```

Page 63

```
 1    are -- there's one, Danny Luna.                 11:52:05

 2        Q    Okay.   They all have names; right?     11:52:07

 3        A    Right.                                  11:52:10

 4        Q    Okay.   So what are their names?        11:52:11

 5        A    Paul Ramore, Danny Luna, pretty much    11:52:12

 6    myself were the ones that researched.           11:52:17

 7        Q    Okay.   And these are college interns?  11:52:20

 8        A    One was a college student intern, and the 11:52:22

 9    other one a photographer who I hired.           11:52:25

10        Q    And who were they interning for?        11:52:28

11        A    Me.                                     11:52:31

12        Q    I see.                                  11:52:31

13             And you were paying them?               11:52:33

14        A    Yes.                                    11:52:34

15        Q    Okay.   And what research did you do to try 11:52:36

16    to figure out the dates of first publications for 11:52:38

17    these various copyright registrations?          11:52:41

18        A    Well, I est -- not just research.   I   11:52:47

19    estimated the time I shot and the time that I   11:52:49

20    estimated the shots would have come out or how soon 11:52:52

21    they would have started to be used after I did the 11:52:54

22    photo shoots.                                   11:52:57

23        Q    Other than just estimating, did you do  11:52:57

24    anything else?                                  11:53:00

25        A    Researched on the Internet.            11:53:06
```

Page 87

| | | |
|---|---|---|
| 1 | Q    What research? | 11:53:08 |
| 2 | A    Just started Googling, looking on online, | 11:53:09 |
| 3 | looking -- | 11:53:14 |
| 4 | Q    What were you looking at? | 11:53:12 |
| 5 | A    -- at magazines. | 11:53:13 |
| 6 | Skechers ads, different time periods. | 11:53:16 |
| 7 | Started looking through publications to see when | 11:53:22 |
| 8 | ads first ran, one after another.  Figured out what | 11:53:25 |
| 9 | publications they were run in. | 11:53:28 |
| 10 | Q    And how did you know when an at first ran? | 11:53:30 |
| 11 | A    I didn't.  I had to investigate. | 11:53:33 |
| 12 | Q    And did you figure out -- how did you | 11:53:35 |
| 13 | determine when an ad first ran? | 11:53:38 |
| 14 | A    Looking. | 11:53:40 |
| 15 | Q    Well, how did you know that, if you found | 11:53:41 |
| 16 | an ad that ran in a particular month, that there | 11:53:42 |
| 17 | wasn't another ad that ran before that? | 11:53:45 |
| 18 | A    There could be errors. | 11:53:48 |
| 19 | Q    So quite fair to say that -- like, for the | 11:53:53 |
| 20 | first one, you have here August 28, 2009.  You | 11:53:56 |
| 21 | don't know for a fact that it first published on | 11:54:00 |
| 22 | that day; correct? | 11:54:03 |
| 23 | A    Correct. | 11:54:04 |
| 24 | Q    And that's true for each of the copyright | 11:54:04 |
| 25 | registrations that you have attached here to the | 11:54:07 |

Page 88

```
 1    magazines.                                          12:28:39

 2    BY MR. WELSH:                                       12:28:40

 3        Q    Did you have any discussions with anyone   12:28:44

 4    at Skechers as to what was meant by the term        12:28:45

 5    "print" on the invoices?                            12:28:48

 6        A    No.                                        12:28:50

 7        Q    Did Mr. -- to your knowledge, did          12:28:51

 8    Mr. Heller have any conversations with anyone at    12:28:52

 9    Skechers about the meaning of the term "print" as   12:28:55

10    used on the invoices?                               12:28:59

11        MR. BRIGGS:  Objection.  Calls for              12:29:00

12    speculation.                                        12:29:01

13        MR. WELSH:  I asked if he knew.                 12:29:01

14        THE WITNESS:  I don't know.                     12:29:03

15        MR. WELSH:  It doesn't -- it's not              12:29:05

16    speculation to figure out if he knows something or  12:29:05

17    not.                                                12:29:08

18        MR. BRIGGS:  I can still state my               12:29:08

19    objection.                                          12:29:10

20    BY MR. WELSH:                                       12:29:13

21        Q    Did you discuss with Mr. Heller what the   12:29:13

22    term "print" meant as applied to the Skechers       12:29:15

23    invoices?                                           12:29:22

24        A    No.                                        12:29:22

25        Q    Fair to say that you were not aware of the 12:29:29
```

Page 115

```
 1    restrictions set forth in the invoices at the time      12:29:31

 2    that you did the photo shoots?                           12:29:35

 3           MR. BRIGGS:  Objection.  It lacks                 12:29:38

 4    foundation, assumes facts not in evidence, calls         12:29:40

 5    for speculation, and is compound as phrased.             12:29:44

 6           THE WITNESS:  Could you please rephrase?          12:29:48

 7    BY MR. WELSH:                                            12:29:49

 8       Q    Sure.                                            12:29:49

 9           When you did the November 2006 photo              12:29:50

10    shoot, did you know what the restrictions were on        12:29:54

11    the use of your photographs at the time you did the      12:29:56

12    shoot?                                                   12:29:59

13       A    Which one was that?                              12:29:59

14       Q    November 2006, your first one that's             12:30:00

15    referenced in the complaint.                             12:30:04

16       A    I believe all I knew is the six-month part       12:30:08

17    verbally.                                                12:30:12

18       Q    Okay.                                            12:30:13

19       A    I knew that Fred and -- Fred and Jason had       12:30:14

20    mentioned we were shooting for lookbooks.                12:30:22

21       Q    But again, I'm asking about any -- any           12:30:26

22    restrictions set forth in -- or terms set forth in       12:30:30

23    the invoices.                                            12:30:33

24           MR. BRIGGS:  Other than what he has just          12:30:34

25    testified?                                               12:30:36
```

Page 116

```
 1    BY MR. WELSH:                                      12:30:37

 2        Q    So let me go back and make sure that we're  12:30:37

 3    clear on this.                                     12:30:39

 4            At the time that you did the photo shoot   12:30:40

 5    on November 16, 2006, you were not aware of the    12:30:42

 6    terms, if any, that had been communicated by Opus  12:30:48

 7    to Skechers in either an estimate or an invoice.   12:30:52

 8            Is that fair to say?                       12:30:57

 9            MR. BRIGGS:  Objection.  Lacks foundation,  12:30:58

10    assumes facts not in evidence.                     12:30:59

11            THE WITNESS:  Being as I know everything    12:31:05

12    now, to look back and speculate, I don't want to   12:31:07

13    give any false answer.                             12:31:09

14    BY MR. WELSH:                                      12:31:11

15        Q    You have no recollection of being aware of  12:31:15

16    that information at the time --                     12:31:16

17        A    I don't have a recollection.              12:31:17

18        Q    -- you --                                 12:31:19

19            Okay.  And then for the September 19,       12:31:21

20    2007, photo shoot, which was the next one you have  12:31:23

21    identified in the complaint, were you aware of the  12:31:25

22    terms that were set forth in the Opus Photo         12:31:31

23    estimate or invoice at the time you did the photo   12:31:35

24    shoot?                                             12:31:39

25        A    Was that one that had a provision to       12:31:39
```

Page 117

| | | |
|---|---|---|
| 1 | license advertising? | 12:31:41 |
| 2 | There were a couple in there that had a | 12:31:42 |
| 3 | shoot -- a separate usage in case it went to | 12:31:45 |
| 4 | advertising.  I knew, if they were going to move to | 12:31:49 |
| 5 | advertising on a few of them, that there was going | 12:31:51 |
| 6 | to be an extra fee involved, license fee, to | 12:31:54 |
| 7 | license that use. | 12:31:57 |
| 8 | Q    Okay.  Other than that one aspect, are you | 12:31:58 |
| 9 | aware -- were you aware of any other of the terms | 12:32:01 |
| 10 | in the invoices or estimates at the time you did | 12:32:05 |
| 11 | the photo shoots? | 12:32:08 |
| 12 | MR. BRIGGS:  Do you mean usage terms or | 12:32:09 |
| 13 | other terms on the invoice? | 12:32:11 |
| 14 | MR. WELSH:  I'm talking about any of the | 12:32:13 |
| 15 | terms. | 12:32:14 |
| 16 | THE WITNESS:  I knew six months. | 12:32:16 |
| 17 | BY MR. WELSH: | 12:32:19 |
| 18 | Q    Okay. | 12:32:19 |
| 19 | A    That was a time frame given to me. | 12:32:19 |
| 20 | Q    Okay.  That was given to you by Skechers? | 12:32:23 |
| 21 | A    Both Skechers and Bobby -- | 12:32:25 |
| 22 | Q    Okay. | 12:32:27 |
| 23 | A    -- mentioned it. | 12:32:28 |
| 24 | Q    Okay.  Other than six months, anything | 12:32:30 |
| 25 | else? | 12:32:35 |

Page 118

| | | |
|---|---|---|
| 1 | A    At which point are we talking about?  Is | 12:32:35 |
| 2 | there a certain time frame? | 12:32:38 |
| 3 | Q    At the time that you were doing the photo | 12:32:40 |
| 4 | shoots. | 12:32:41 |
| 5 | MR. BRIGGS:  But -- objection.  Okay. | 12:32:41 |
| 6 | Objection.  It's compound. | 12:32:43 |
| 7 | He's already identified for the record | 12:32:44 |
| 8 | five separate photo shoots that are the subject of | 12:32:46 |
| 9 | the lawsuit. | 12:32:49 |
| 10 | Which photo shoot are you referring to? | 12:32:49 |
| 11 | BY MR. WELSH: | 12:32:49 |
| 12 | Q    Again, I was going through them, but if -- | 12:32:52 |
| 13 | if your answer is going to be different for each -- | 12:32:54 |
| 14 | for any one of them, then we can go through | 12:32:56 |
| 15 | individually.  If not, there's no point.  I'm just | 12:32:59 |
| 16 | asking a lot of questions unnecessarily. | 12:33:01 |
| 17 | MR. BRIGGS:  We would rather be specific | 12:33:03 |
| 18 | than general. | 12:33:05 |
| 19 | MR. WELSH:  Well, then when you ask your | 12:33:08 |
| 20 | questions, you can be as specific as you want.  How | 12:33:09 |
| 21 | is that? | 12:33:12 |
| 22 | MR. BRIGGS:  Okay.  Then he's not going to | 12:33:12 |
| 23 | be able to answer the questions, then -- | 12:33:14 |
| 24 | MR. WELSH:  So -- | 12:33:14 |
| 25 | MR. BRIGGS:  -- because they are poorly | 12:33:16 |

Page 119

```
 1   phrased.                                        12:33:17

 2          MR. WELSH:  Please, please, please,      12:33:17

 3   Counsel.  We don't need it.                     12:33:18

 4      Q    So other than six months, six-month     12:33:20

 5   restriction, and other than the fact that some of  12:33:26

 6   these photo shoots had a provision that Skechers   12:33:30

 7   would pay more if they opted for an additional use,  12:33:33

 8   were you aware of any other restrictions applicable  12:33:39

 9   to any of the photo shoots at the time that you did  12:33:43

10   those photo shoots?                             12:33:46

11      A    I was aware that North America was a    12:33:48

12   restriction.                                    12:33:51

13      Q    Okay.  Anything else?                   12:33:52

14      A    Not that I can think of.                12:34:00

15      Q    Okay.  And how did you become aware that  12:34:05

16   North America was a restriction?                12:34:07

17      A    It was told to me.                      12:34:13

18      Q    By whom?                                12:34:14

19      A    My agent.                               12:34:14

20      Q    Okay.  Did you have any discussions with  12:34:15

21   Skechers about any restriction on North America?  12:34:17

22      A    Absolutely.                             12:34:20

23      Q    Who did you have the discussions with?  12:34:20

24      A    Fred Machuca.                           12:34:22

25      Q    Okay.  And when did you have those      12:34:25
```

Page 120

```
 1    discussions?                                    12:34:27

 2       A    Toward the last few shoots in a couple of  12:34:32

 3    the meetings we had.                             12:34:35

 4       Q    Okay.  And were those discussions before  12:34:36

 5    the photo shoot or after?                        12:34:42

 6       A    Both.                                     12:34:49

 7       Q    Okay.  And, again, just so we're clear,   12:34:50

 8    you have told me all the restrictions that you were  12:35:00

 9    aware of that had been communicated to you at the  12:35:02

10    time that you undertook these photo shoots; correct?  12:35:08

11       A    Uh-huh.                                    12:35:11

12       Q    That's a "yes"?                            12:35:11

13       A    Yes.                                       12:35:12

14       Q    Okay.  The invoices reference something    12:35:18

15    called OOH.                                        12:35:20

16            What does that refer to?                   12:35:24

17       A    Out of home.                               12:35:26

18       Q    And what does that -- what does "out of    12:35:26

19    home" mean?                                        12:35:30

20       A    Anything, I believe, to the best of my     12:35:37

21    understanding -- I'm not an expert, but anything   12:35:40

22    that's out of home, like a billboard, side of a    12:35:43

23    bus.                                               12:35:50

24       Q    Okay.  So it includes advertising,         12:35:50

25    advertisements --                                  12:35:52
```

Page 121

```
 1    copyright registrations?                    02:44:21

 2       A    Yes.                                 02:44:22

 3       Q    Okay.  And as part of that investigation,  02:44:24

 4    did you go back and review e-mails such as   02:44:26

 5    Exhibits 53 and 54 to try to figure out when the  02:44:30

 6    Skechers advertisements were first published?  02:44:36

 7       A    I don't recall.                      02:44:39

 8       Q    Did you personally do the investigation,  02:44:42

 9    or did you have your intern and the other person do  02:44:44

10    the investigation?                           02:44:48

11       A    I personally did it.                 02:44:49

12       Q    Okay.  What part of the investigation did  02:44:50

13    the intern and the other person do?          02:44:53

14       A    Sometimes they held up newspapers if I  02:44:55

15    went to stores.  We searched every magazine all  02:44:57

16    over the world.  We looked through magazine after  02:45:04

17    magazine.  Looked for the different dates.  Went  02:45:07

18    through page after page of publications to find ads.  02:45:09

19       Q    But do you have a recollection of     02:45:13

20    reviewing --                                 02:45:14

21            MR. BRIGGS:  He's not finished his -- 02:45:15

22            MR. WELSH:  I'm sorry.               02:45:16

23            MR. BRIGGS:  You were just giving him an  02:45:17

24    admonition about talking over each other.    02:45:19

25            MR. WELSH:  I said I was sorry.  I thought  02:45:21
```

Page 175

```
 1    STATE OF CALIFORNIA    ) ss:
 2    COUNTY OF LOS ANGELES  )
 3
 4        I, RICKI Q. MELTON, CSR No. 9400, RPR No. 45429,
      do hereby certify:
 5
          That the foregoing deposition testimony of
 6    RICHARD REINSDORF was taken before me at the
      time and place therein set forth, at which time the
 7    witness was placed under oath and was sworn by me to
      tell the truth, the whole truth, and nothing but the
 8    truth;
 9        That the testimony of the witness and all objections
      made by counsel at the time of the examination were
10    recorded stenographically by me and were thereafter
      transcribed under my direction and supervision, and
11    that the foregoing pages contain a full, true, and
      accurate record of all proceedings and testimony to
12    the best of my skill and ability.
13        I further certify that I am neither counsel for
      any party to said action nor am I related to any
14    party to said action, nor am I in any way interested
      in the outcome thereof.
15
16
17        IN WITNESS WHEREOF, I have subscribed my name
      this 12th day of March, 2012.
18
19
20
21
22
23    _____
24
25         RICKI Q. MELTON, C.S.R. No. 9400
```

Page 350

EXHIBIT 5

66

# EXHIBIT 6

# LAVELY & SINGER

PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

SUITE 2400

2049 CENTURY PARK EAST

LOS ANGELES, CALIFORNIA 90067-2906

TELEPHONE (310) 556-3501

TELECOPIER (310) 556-3615

www.LAVELYSINGER.com

JOHN H. LAVELY, JR.
MARTIN D. SINGER
BRIAN G. WOLF
LYNDA B. GOLDMAN
MICHAEL D. HOLTZ
WILLIAM J. BRIGGS, II
PAUL N. SORRELL
MICHAEL E. WEINSTEN
EVAN N. SPIEGEL

TODD STANFORD EAGAN
HENRY L. SELF, III
ANDREW B. BRETTLER
DAVID B. JONELIS
MICHAEL V. MANCINI

ALLISON S. HART
KEVIN JAMES
OF COUNSEL

May 18, 2012

**VIA EMAIL** dbreuder@omm.com
**& U.S. MAIL**

Drew E. Breuder, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

Re:     **Richard Reinsdorf v. Skechers USA, Inc. et al.**
         **Our File No. 4814-2**

Dear Drew:

Attached please find a list of Richard Reinsdorf's changes to his transcript of February 28, 2012.

Nothing contained herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of our client's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

Sincerely,

HENRY L. SELF
For
LAVELY & SINGER
PROFESSIONAL CORPORATION

Enclosure

4814-2\LET\HLS-BREUDER 051812

EXHIBIT 6
67

| Location | Original Response | Corrected Answer |
|---|---|---|
| Page 58, Line 19 | A: I don't recall. | A: Yes.  I was involved in acquiring the photo crew, digital package and printers.  I also determined and put together the equipment list of lighting, cameras, lenses, et cetera. |
| Page 63, Line 16 | A: To the best of my knowledge, no. | A: Yes.  Skechers did not actually get exclusive use of the pictures. |
| Page 76, Line 14 | A: Yes. | A: Yes.  We did not know the scope at the time. |
| Page 77, Line 12 | A: I don't believe so. | A: Yes, in email messages to and from the celebrities' publicists. |
| Page 88, Line 11 | A: I didn't.  I had to investigate. | A: I didn't.  I had to estimate based on my investigation, because Skechers would not let us know anything when Bobby asked them about when, where, and how they used my images. |
| Page 94, Line 24 | A: I'm not sure. | A: Yes.  I have the originals. |
| Page 113, Line 14 | A: I think I was deciding at that time. | A: We were trying to settle the matter.  We had a mediation that you cancelled. |
| Page 125, Line 17 | A: Yeah.  I believe Skechers had the option to buy advertising. | A: Yeah.  I believe Skechers had the option to license advertising. |
| Page 155, Line 24 through Page 156, Line 3 | A: No. I'm just saying I know -- I know what I recall was that I was going to do pink, blue, and there's possibly other colors.  Now that I look at this, I believe there was gray and white, as well as pink and blue. | A: No. I recall that I was going to do pink and blue.  Now that I look at this, I believe there was pink and blue. |
| Page 169, Lines 2-4 | A: I think there was a few e-mails where I expressed I was glad they were happy with them, the pictures. | A: There were no advertisements in 2006, only look books and in store. |
| Page 184, Line 5 | A: No. | A: No, but not until my investigation in 2010. |

EXHIBIT 6

68

| Location | Original Response | Corrected Answer |
|---|---|---|
| Page 185, Line 14 | A: I didn't complain. | A: I didn't complain at the time. I only noticed later during my investigation in 2010. |
| Page 192, Line 11 | A: The amount of their images they were allowed to use. | A: The amount of my images they were allowed to use. |
| Page 192, Line 18 | A: It's a good point. I didn't even check. | A: At least 30 plus images that we have found. I believe there are likely more. |
| Page 204, Line 13 | A: Have I ever bothered? Yeah, it looks like they did a little adjustment on her hair. | A: It looks like they did a little adjustment on her hair. But I never saw Exhibit 57 before my deposition today, so I could not have previously considered that issue. |
| Page 213, Line 9 | A: Can I see the - - | A: We appear to be looking at a processed file opened in Photoshop, not the Capture One file with my digital tech's adjustments. |
| Page 217, Line 19 | A: It appears to. | A: It appears that just the face was changed out, not the whole head. |
| Page 217, Line 24 | A: You company judge color on laser copies. | A: You cannot judge color from laser copies. |
| Page 224, Line 22 | A: Yes. | A: No. Some yes, but most no. |
| Page 225, Line 2 | A: That's correct. | A: That's correct only as to the graphics. |
| Page 242, Line 8 | A. Pretty certain. | A: Yes, I am 100% certain that Pennie was there and that she did in fact bring tears. |
| Page 243, Line 11 | A: Twice in 2006. | A: In 2006. |

EXHIBIT 6

69

| Location | Original Response | Corrected Answer |
|---|---|---|
| Page 261, Line 1 | A: He said, "If they decide to use the pictures - - any of your shots as an ad, you will get - - you will get extra usage." I remember that conversation. | A: He said, "If Robert Greenberg decides to use the pictures - - any of your shots as an ad, you will get - - you will get extra usage." I remember that conversation. |
| Page 268, Line 5 | A: I would say my answer is yes, because I - - because - - do I have to own the tear sheet to provide it, or can I pick it out of a magazine that's just in front of me and say, "I think that's a good idea"? | A: I would say my answer is yes, because I - - because - - do I have to own the tear sheet to provide it, or can I pick it out of a magazine that's just in front of me and say, "I think that's a good idea"? Also, Pennie brought tears in 2007. |
| Page 269, Line 8 | A: I don't recall. | A: Yes. |
| Page 270, Line 20 | A: Multiple tear sheets. | A: Multiple tear sheets. From Skechers and Pennie there were inspectional tears. |
| Page 288, Line 17 | A: Okay. Got it. | A: You also have copies of the high-res images. |
| Page 310, Line 3 | A: I didn't object. | A: I didn't object at the time. I only noticed later during my investigation in 2010. |
| Page 327, Line 1 | A: If they purchased that usage. | A: If they licensed that usage. |

K:\4814-2\MEM\RR CHANGES TO DEPO TRANSCRIPT OF 022812.wpd

EXHIBIT 6

70

# EXHIBIT 7



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

June 19, 2012

OUR FILE NUMBER
0798,320-43

**VIA E-MAIL AND FIRST CLASS MAIL**

WRITER'S DIRECT DIAL
(310) 246-6713

Henry L. Self, Esq.
Lavely & Singer
2049 Century Park East, Suite 2400
Los Angeles, CA 90067

WRITER'S E-MAIL ADDRESS
dbreuder@omm.com

Re:   ***Reinsdorf v. Skechers U.S.A., Inc., et al.***

Dear Henry:

We write in response to your May 18, 2012 letter purporting to enclose Richard Reinsdorf's changes to his February 28, 2012 deposition transcript. As you know, Federal Rule of Civil Procedure 30(e) requires that any changes be made within 30 days of the preparation of the deposition transcript. Mr. Reinsdorf's deposition took place on February 28, 2012, and the final transcript was prepared and circulated on or about March 12, 2012. No authority permits Mr. Reinsdorf to make changes to his testimony at this late date.

Very truly yours,

/s/
Drew E. Breuder

cc:   William J. Briggs, Esq.
Ricki Q. Melton, Veritext Reporting Service

EXHIBIT 7
71

# EXHIBIT 8

1           UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3

4    -----------------------------    **CERTIFIED**

                            **TRANSCRIPT**

5   RICHARD REINSDORF,        )

6         Plaintiff,     ) Case No.

7         vs.         ) CV10-7181-DDP (SSx)

8   SKECHERS U.S.A., INC.;    )

9   SKECHERS U.S.A., INC. II;   )

10  and DOES 1-10,        )

11         Defendants.    )

12   -----------------------------

13

14

15            VIDEOTAPED DEPOSITION OF

16               ROBERT HELLER

17

18          LOS ANGELES, CALIFORNIA

19         THURSDAY, MAY 10, 2012

20

21

22

23   Reported by:  WENDY S. SCHREIBER, CSR 3558, RPR

24   Job No. 144957

25   PAGES 1 - 348

                                              Page 1

```
 1              MR. WELSH:  How nice.                    12:22:07

 2      Q.   Are you his exclusive representative with   12:22:10

 3   regard to booking his services as a photographer?   12:22:14

 4      A.   I think that's more a question for Richard  12:22:17

 5   but we -- I'm probably his go-to representative for 12:22:20

 6   most everything.                                    12:22:25

 7      Q.   Okay.  And what is your understanding of    12:22:27

 8   your responsibilities as Mr. Reinsdorf's           12:22:34

 9   representative?                                     12:22:37

10              MR. SELF:  Objection:  vague and may call 12:22:39

11   for a legal conclusion.                            12:22:41

12              THE WITNESS:  It's a long answer.  Do you 12:22:45

13   want to break that down a little bit or --         12:22:47

14   BY MR. WELSH:                                       12:22:49

15      Q.   Well, as his representative, what things do 12:22:50

16   you do on his behalf?                               12:22:54

17      A.   I try to search out appropriate clients for 12:22:56

18   him to work for.  I create publicity for him to get 12:23:00

19   his images and his style out to the creative       12:23:08

20   community.  And once I engage a client that is     12:23:12

21   showing interest in Richard, I then find out what  12:23:18

22   that creative is, put Richard in touch with that   12:23:22

23   client, develop some sort of understanding of what 12:23:25

24   the project's needs are and then we estimate,      12:23:30

25   produce it, and conclude it and invoice it.        12:23:34
```

Page 89

```
 1      A.    Yes.                                    02:36:04

 2      Q.    And you indicated that this is just for one   02:36:07

 3  color setup, white, and that if you wanted to do    02:36:10

 4  additional colors it might be more but this is a    02:36:14

 5  good place to start.  Is that correct?             02:36:17

 6      A.    That's what it says, yes.                02:36:19

 7      Q.    All right.  And then it goes on to say,   02:36:20

 8  "Richard figured white would be easiest if you are   02:36:27

 9  going to digitally play with the images after its   02:36:30

10  shot."                                             02:36:34

11         Do you see that?                           02:36:34

12      A.    I do.                                    02:36:35

13      Q.    And that reflects your understanding I guess  02:36:36

14  from Mr. Reinsdorf that Skechers -- there was some   02:36:38

15  contemplation of Skechers digitally playing with the  02:36:43

16  images after they were being shot, correct?        02:36:46

17      A.    Yes, and to what capacity, I don't know.   02:36:49

18      Q.    Nor did you inquire, correct?            02:36:52

19      A.    No, no need to.                          02:36:54

20      Q.    And I take it you and Mr. Reinsdorf didn't   02:37:08

21  have any discussions about how Skechers was going to   02:37:11

22  digitally play with his images, did you?           02:37:14

23      A.    We've had so many -- I've had so many    02:37:18

24  digital conversations over the years I can't mesh   02:37:22

25  one from the other, but I know a host of reasons why   02:37:24
```

Page 147

```
 1    colors and things matter when you're -- when        02:37:27

 2    you're -- when you're digitally working with the    02:37:31

 3    images.                                             02:37:34

 4        Q.   But my question was:  You and Mr. Reinsdorf 02:37:34

 5    did not specifically discuss Skechers digitally     02:37:37

 6    playing with his photographs in connection with this 02:37:44

 7    photo shoot, correct?                               02:37:46

 8           MR. SELF:  Objection to the extent that      02:37:47

 9    question may misstate the prior testimony.          02:37:48

10    BY MR. WELSH:                                       02:37:56

11        Q.   You may answer, sir, but I'll be happy to  02:37:56

12    rephrase it.                                        02:37:59

13        A.   Yeah, thank you.                           02:38:00

14        Q.   Okay.  Do you recall having any            02:38:01

15    conversations with Mr. Reinsdorf specifically about 02:38:04

16    Skechers digitally playing with his photographs in  02:38:09

17    connection with the November 2006 photo shoot?      02:38:14

18           MR. SELF:  Other than the communication      02:38:21

19    reflected in this e-mail.                           02:38:22

20           THE WITNESS:  That was pretty much it.  Just 02:38:24

21    what was the easiest colors to work with if you're  02:38:26

22    going to do so.                                     02:38:30

23    BY MR. WELSH:                                       02:38:31

24        Q.   Okay.  And the colors that Richard was     02:38:31

25    picking out were the colors that would make it      02:38:37
```

Page 148

| | | |
|---|---|---|
| 1 | A.    Yeah. | 03:28:17 |
| 2 | Q.    Okay.  All right.  Now, on this invoice, | 03:28:19 |
| 3 | Exhibit 236, again, we don't see any -- strike that. | 03:28:31 |
| 4 | Under "Usage" it says, "(6) Months POS, Web and look | 03:28:44 |
| 5 | books." | 03:28:49 |
| 6 | Do you see that? | 03:28:49 |
| 7 | A.    Yes, sir. | 03:28:50 |
| 8 | Q.    And then it says, "Jan-July '07."  Do you | 03:28:50 |
| 9 | see that?  In handwriting right next to the -- | 03:28:54 |
| 10 | A.    Yes. | 03:29:01 |
| 11 | Q.    Did you have an understanding that as you | 03:29:02 |
| 12 | said the use of these photographs would be seasonal? | 03:29:06 |
| 13 | A.    Yes. | 03:29:10 |
| 14 | Q.    And is a January to July period for '07, is | 03:29:11 |
| 15 | that consistent with your understanding of a | 03:29:16 |
| 16 | seasonal use? | 03:29:18 |
| 17 | A.    Yes, that would be your spring/summer. | 03:29:19 |
| 18 | Q.    Now, in the usage terms that you prepared, | 03:29:24 |
| 19 | did you specify any date in which the six-month | 03:29:30 |
| 20 | period started? | 03:29:35 |
| 21 | A.    No. | 03:29:37 |
| 22 | Q.    And did you specify any date in which the | 03:29:37 |
| 23 | six-month period ended? | 03:29:40 |
| 24 | A.    No. | 03:29:42 |
| 25 | Q.    And did you specify whether each photo was | 03:29:43 |

Page 174

1       I, WENDY S. SCHREIBER, CSR No. 3558, a

2   Certified Shorthand Reporter of the State of

3   California, do hereby certify:

4       That the foregoing proceedings were taken

5   before me at the time and place herein set forth;

6   that any witnesses in the foregoing proceedings,

7   prior to testifying, were placed under oath; that a

8   verbatim record of the proceedings was made by me

9   using machine shorthand which was thereafter

10  transcribed under my direction; further, that the

11  foregoing is an accurate transcription thereof.

12      I further certify that I am neither

13  financially interested in the action nor a relative

14  or employee of any attorney of any of the parties.

15      IN WITNESS WHEREOF, I have this date

16  subscribed my name.

17

18  Dated: May 12, 2012

19

20

21  _____

22      WENDY S. SCHREIBER, CSR No. 3558, RPR

23

24

25

Page 348

# EXHIBIT 9

```
 1            UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3      ------------------------------------------

 4    RICHARD REINSDORF,

 5                          Plaintiff,

 6              -against-

 7    SKECHERS, USA, INC.; SKECHERS, USA, INC.

 8    II; AND DOES 1-10,

 9                          Defendants.

10    Case No. CV10-7181-DDP (SSx)

11      ------------------------------------------

12

13

14      VIDEOTAPED DEPOSITION of JACK REZNICKI,

15    taken by Defendants, pursuant to Subpoena,

16    held at the offices of O'MELVENY & MYERS

17    LLP, 7 Times Square, New York, New York,

18    Wednesday, May 23, 2012, commencing at

19    11:31 a.m., before Wayne Hock, a Notary

20    Public of the State of New York.

21

22

23

24    Job No. 146057

25    PAGES 1 - 276
```

**CERTIFIED TRANSCRIPT**

Page 1

| | | |
|---|---|---|
| 1 | A. Correct. | 15:27:59 |
| 2 | Q. On page fifteen for the | 15:28:00 |
| 3 | paragraph page 7I, J, K, do you see | 15:28:29 |
| 4 | that one? | 15:28:34 |
| 5 | A. Yes. | 15:28:35 |
| 6 | Q. You say here, "substantial | 15:28:35 |
| 7 | reworking of raw images are still | 15:28:38 |
| 8 | derivatives of the original and the | 15:28:41 |
| 9 | original work is still fully protected. | 15:28:42 |
| 10 | If the work is that substantial then | 15:28:45 |
| 11 | Skechers may be able to file a | 15:28:48 |
| 12 | compilation copyright that incorporates | 15:28:51 |
| 13 | Mr. Reinsdorf's copyrighted image but | 14:56:48 |
| 14 | such a compilation copyright does not | 15:28:54 |
| 15 | give them any rights to exploit or | 15:28:55 |
| 16 | rides over Mr. Reinsdorf's copyrighted | 15:28:57 |
| 17 | image without his written approval." | 15:29:00 |
| 18 | A. Correct. | 15:29:03 |
| 19 | Q. So there you are | 15:29:03 |
| 20 | acknowledging that the finished | 15:29:05 |
| 21 | marketing images could be independently | 15:29:06 |
| 22 | copyrightable; correct? | 15:29:09 |
| 23 | A. Correct. | 15:29:10 |
| 24 | Q. With Skechers as an author; | 15:29:11 |
| 25 | correct? | 15:29:17 |

Page 205

| | | |
|---|---|---|
| 1 | A.    As an author? | 15:29:17 |
| 2 | Q.    Yes. | 15:29:19 |
| 3 | A.    I don't know that wording.  I | 15:29:19 |
| 4 | know they can own the -- in fact, I | 15:29:25 |
| 5 | would prefer many times that they do | 15:29:28 |
| 6 | own the copyright to the finished | 15:29:30 |
| 7 | pieces as a compilation. | 15:29:32 |
| 8 | Q.    I think I understand what | 15:29:34 |
| 9 | you're saying. | 15:29:36 |
| 10 | It's your professional | 15:29:36 |
| 11 | opinion that it's best for the client | 15:29:43 |
| 12 | to own the copyright in the finished | 15:29:45 |
| 13 | marketing materials? | 15:29:47 |
| 14 | A.    Yeah, because I'd like to see | 15:29:48 |
| 15 | a copyright notice on the finished | 15:29:50 |
| 16 | product and they're not going to put my | 15:29:53 |
| 17 | copyright on it.  So I'm very happy | 15:29:55 |
| 18 | when they copyright it and put their | 15:29:59 |
| 19 | copyright on that ad. | 15:30:00 |
| 20 | Q.    And that's a common practice | 15:30:01 |
| 21 | in the industry? | 15:30:03 |
| 22 | A.    Yes. | 15:30:04 |
| 23 | Q.    I guess I should define what | 15:30:04 |
| 24 | the "that" is. | 15:30:13 |
| 25 | And having the client own the | 15:30:13 |

Page 206

EXHIBIT 9

80

| | | |
|---|---|---|
| 1 | copyright in the finished marketing | 15:30:13 |
| 2 | materials is a common practice in the | 15:30:15 |
| 3 | commercial photography industry; | 15:30:18 |
| 4 | correct? | 15:30:21 |
| 5 | A.     Correct. | 15:30:21 |
| 6 | Q.     At the top of page sixteen of | 15:30:21 |
| 7 | your report, it's the carryover from | 15:30:57 |
| 8 | your discussion in the paragraph page | 15:31:00 |
| 9 | 8A. | 15:31:06 |
| 10 | A.     Uh-huh. | 15:31:07 |
| 11 | Q.     At the top of page sixteen, | 15:31:08 |
| 12 | the first full sentence on that page | 15:31:12 |
| 13 | states, "the invoices all clearly state | 15:31:14 |
| 14 | six months' usage." | 15:31:17 |
| 15 | Was that your assessment of | 15:31:19 |
| 16 | the invoices you were provided? | 15:31:22 |
| 17 | A.     Yes. | 15:31:24 |
| 18 | MR. BARKER: I'm going to hand | 15:31:39 |
| 19 | the court reporter a document | 15:31:41 |
| 20 | previously marked as Exhibit 255 at | 15:31:43 |
| 21 | the deposition of Mr. Heller. | 15:31:47 |
| 22 | We'll just hand that to the | 15:31:52 |
| 23 | witness. | 15:31:53 |
| 24 | Q.     Do you have Exhibit 255 in | 15:31:54 |
| 25 | front of you? | 15:31:56 |

Page 207

| | | |
|---|---|---|
| 1 | shoes floating around her head; | 16:24:24 |
| 2 | correct? | 16:24:27 |
| 3 | A.    Correct. | 16:24:27 |
| 4 | Q.    And then in the finished | 16:24:31 |
| 5 | marketing image that involves | 16:24:32 |
| 6 | photograph that Mr. Reinsdorf took you | 16:24:33 |
| 7 | see that the woman is looking up and to | 16:24:36 |
| 8 | the right but again at a group of | 16:24:39 |
| 9 | shoes? | 16:24:41 |
| 10 | A.    Correct. | 16:24:41 |
| 11 | Q.    Okay. | 16:24:42 |
| 12 | Do you have any reason to | 16:24:44 |
| 13 | believe that Skechers didn't direct Mr. | 16:24:45 |
| 14 | Reinsdorf to take a picture that can be | 16:24:47 |
| 15 | used in a finished marketing image that | 16:24:52 |
| 16 | looks like Exhibit 80? | 16:24:52 |
| 17 | A.    I got lost in the question. | 16:24:55 |
| 18 | I think you asked it fine. | 16:24:59 |
| 19 | Can you just repeat it? | 16:24:59 |
| 20 | Q.    Sure. | 16:24:59 |
| 21 | Do you have any reason to | 16:25:01 |
| 22 | believe that Skechers did not direct | 16:25:02 |
| 23 | Mr. Reinsdorf to take a picture that | 16:25:04 |
| 24 | looks like the photograph that has been | 16:25:07 |
| 25 | incorporated into Exhibit 80? | 16:25:10 |

Page 246

| | | |
|---|---|---|
| 1 | A.    I have no reason to -- I have | 16:25:12 |
| 2 | no reason to doubt that. | 16:25:14 |
| 3 | Q.    Okay. | 16:25:16 |
| 4 | And with respect to | 16:25:17 |
| 5 | Exhibit 80, is that the sort of | 16:25:22 |
| 6 | finished marketing image that, in your | 16:25:23 |
| 7 | experience, would be copyrightable and | 16:25:26 |
| 8 | copyrighted by Skechers? | 16:25:30 |
| 9 | A.    Yes. | 16:25:31 |
| 10 | Q.    I did have a follow-up | 16:25:32 |
| 11 | question for you on the DLA Piper | 16:25:55 |
| 12 | article that you cite in your expert | 16:25:57 |
| 13 | report. | 16:26:00 |
| 14 | A.    Yes. | 16:26:01 |
| 15 | Q.    We tried to pull that article | 16:26:01 |
| 16 | off of the address you gave us and the | 16:26:05 |
| 17 | link didn't work. | 16:26:09 |
| 18 | Do you have a copy of that | 16:26:10 |
| 19 | article? | 16:26:11 |
| 20 | A.    No. | 16:26:11 |
| 21 | Q.    Have you previously relied on | 16:26:13 |
| 22 | that article for other purposes such as | 16:26:17 |
| 23 | one of your books? | 16:26:19 |
| 24 | A.    No. | 16:26:20 |
| 25 | MR. SELF: Jeff, this is not | 16:26:25 |

Page 247

EXHIBIT 9

83

```
 1              CERTIFICATION BY REPORTER

 2

 3         I, Wayne Hock, a Notary Public of the

 4    State of New York, do hereby certify:

 5         That the testimony in the within

 6    proceeding was held before me at the

 7    aforesaid time and place;

 8         That said witness was duly sworn

 9    before the commencement of the testimony,

10    and that the testimony was taken

11    stenographically by me, then transcribed

12    under my supervision, and that the within

13    transcript is a true record of the

14    testimony of said witness.

15         I further certify that I am not

16    related to any of the parties to this

17    action by blood or marriage, that I am not

18    interested directly or indirectly in the

19    matter in controversy, nor am I in the

20    employ of any of the counsel.

21         IN WITNESS WHEREOF, I have hereunto

22    set my hand this 29th day of May, 2012.

23                    Wayne Hock

24    _____

25         WAYNE HOCK
```

Page 276

EXHIBIT 9
84