1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  ROBERT C. WELSH (S.B. #130782)
   rwelsh@omm.com
3  DREW E. BREUDER (S.B. #198466)
   dbreuder@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  Attorneys for Defendants
   Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11 RICHARD REINSDORF,                  Case No. CV10-7181-DDP (SSx)

12            Plaintiff,               Hon. Dean D. Pregerson

13     v.                             **DEFENDANTS SKECHERS U.S.A.,
                                       INC. AND SKECHERS U.S.A., INC. II'S
14 SKECHERS U.S.A., INC.;             NOTICE OF MOTION AND MOTION
   SKECHERS U.S.A., INC. II; and      FOR CLARIFICATION OF THE
15 DOES 1-10,                         COURT'S RULING ON SKECHERS'
                                       MOTION FOR SUMMARY
16            Defendants.             JUDGMENT; AND MEMORANDUM
                                       OF POINTS AND AUTHORITIES IN
17                                     SUPPORT THEREOF**

18                                     **[DECLARATION OF ROBERT C.
                                       WELSH AND [PROPOSED] ORDER**
19                                     filed and/or lodged concurrently herewith]

20                                     Courtroom:      3 (2nd Floor)
                                       Hearing Date:   December 3, 2012
21                                     Time:           10:00 a.m.

22                                     Pretrial Conference:   Not Set
23                                     Trial Date:            Not Set

24

25

26

27

28

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 3, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 (2d Floor) of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California 90012, defendants Skechers U.S.A., Inc. and Skechers U.S.A., Inc. II (collectively, "Skechers") hereby moves for clarification regarding the Court's October 9, 2012 "Order Denying Defendant's Motion for Summary Judgment and Granting Defendant's Motions in Limine" (the "Order," Docket No. 196).

This motion is made pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Skechers seeks clarification with respect to the Court's ruling on:

(1)    Skechers' separate request for summary judgment on Plaintiff Richard Reinsdorf's ("Plaintiff") statutory damages and attorney's fees claim;

(2)    Skechers' separate request for summary judgment on Plaintiff's $33 million indirect profits claim;

(3)    Skechers' separate request for summary judgment on Plaintiff's copyright claim on the independent ground that Plaintiff's invoices are not copyright licenses and therefore, at most, only impose contractual obligations on Skechers—not restrictions enforceable under federal copyright law;

(4)    Skechers' evidentiary objection and motion to strike with respect to the late-disclosed Supplemental Report of Plaintiff's expert David Connelly; and

(5)    Skechers' joint work defense, including confirmation that the Court's Order was not meant to factually or legally preclude Skechers from pursuing its joint work defense at trial.

SKECHERS' NOTICE OF MOTION AND
MOTION FOR CLARIFICATION
CV10-7181-DDP (SSX)

1        This Motion is based on this Notice of Motion and Motion, the attached

2   Memorandum of Points and Authorities, the Declaration of Robert C. Welsh

3   ("Welsh Decl."), the pleadings and other materials on file in this action, and on

4   such other and further evidence or argument as the Court may consider at the

5   hearing on this motion.  This motion is made following the conference of counsel

6   pursuant to Local Rule 7-3 which took place on October 19, 2012.  Welsh Decl. ¶ 3.

7

8      Dated:  November 5, 2012       O'MELVENY & MYERS LLP

9

10                                By: /s/ Daniel M. Petrocelli

11                                   Daniel M. Petrocelli
                            Attorneys for Defendants Skechers U.S.A.,

12                              Inc. and Skechers U.S.A., Inc. II

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SKECHERS' NOTICE OF MOTION AND
MOTION FOR CLARIFICATION
CV10-7181-DDP (SSX)

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.  INTRODUCTION ................................................................................. 1

II.  SKECHERS IS ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S CLAIMS FOR STATUTORY DAMAGES AND
ATTORNEY'S FEES ............................................................................. 4

III.  SKECHERS IS ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S CLAIM FOR INDIRECT PROFITS .................................... 5

    A.  Why Clarification Is Necessary ....................................................... 5

    B.  The Summary Judgment Motion and Related Evidentiary
Motions and Objections .................................................................. 5

    C.  The Court's Ruling......................................................................... 7

    D.  The Supplemental Connelly Report Is Both Inadmissible and
Inadequate As a Matter of Law, Entitling Skechers to Summary
Judgment on Plaintiff's Indirect Profits Claim .................................... 9

    E.  Plaintiff Cannot Avoid Summary Judgment on the Basis of His
Alleged "Direct Profits" Claim ...................................................... 10

IV.  SKECHERS IS ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S COPYRIGHT CLAIM ON THE INDEPENDENT
GROUND THAT PLAINTIFF'S INVOICES WERE NOT
COPYRIGHT LICENSES AS A MATTER OF LAW ............................... 12

V.  SKECHERS REQUESTS CLARIFICATION OF THE COURT'S
FAILURE TO RULE ON SKECHERS' EVIDENTIARY
OBJECTION TO CONNELLY'S LATE-DISCLOSED
SUPPLEMENTAL REPORT AND ON THE COURT VACATING
SKECHERS' MOTION TO STRIKE ..................................................... 14

    A.  Why Clarification Is Necessary ...................................................... 14

    B.  Skechers Is Clearly Entitled to a Ruling in Its Favor on Both the
Evidentiary Objection and Motion to Strike the Supplemental
Connelly Report Under Well Settled Ninth Circuit Law.................... 16

        1.  The Applicable Law ............................................................. 16

        2.  The Court Should Sustain Skechers' Evidentiary
Objection and Grant the Motion to Strike the
Supplemental Connelly Report............................................. 18

    C.  Skechers Is Entitled To Summary Judgment on Plaintiff's Claim
for Indirect Profits ....................................................................... 19

VI.  SKECHERS REQUESTS CLARIFICATION THAT THE COURT
DID NOT INTEND TO PRECLUDE SKECHERS' JOINT WORK
DEFENSE AT TRIAL ........................................................................ 20

VII.  CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

<u>CASES</u>

*Aalmuhammed v. Lee*,
  202 F.3d 1227 (9th Cir. 1999) ................................................................... 13, 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................... 21

*FDIC v. N.H. Ins. Co.*,
  953 F.2d 478 (9th Cir. 1991) ............................................................................. 16

*Fedtro, Inc. v. Kravex Mfg. Corp.*,
  313 F. Supp. 990 (E.D.N.Y. 1970) .................................................................... 11

*Garcia v. Coleman*,
  No. C-07-2279 EMC, 2009 WL 799393 (N.D. Cal. Mar. 24, 2009) ................ 11

*Janky v. Lake Cnty. Convention & Visitors Bureau*,
  576 F.3d 356 (7th Cir. 2009) ............................................................................. 13

*Luke v. Emergency Rooms, P.S.*,
  No. C04-5759 FDB, 2008 WL 410672 (W.D. Wash. Feb. 12, 2008) ... 17, 18, 19

*Mackie v. Rieser*,
  296 F.3d 909 (9th Cir. 2002) ............................................................................. 10

*Pfingston v. Ronan Eng'g Co.*,
  284 F.3d 999 (9th Cir. 2002) ............................................................................. 16

*Polar Bear Prods. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ......................................................................... 6, 10

*Richlin v. MGM Pictures, Inc.*,
  531 F.3d 962 (9th Cir. 2008) ............................................................................. 14

*Scharf v. U.S. Attorney Gen.*,
  597 F.2d 1240 (9th Cir. 1979) ........................................................................... 16

*Seals v. Mitchell*,
  No. C 04-03764 NJV, 2010 WL 5094264 (N.D. Cal. Dec. 8, 2010) ................ 21

*Switz. Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*,
  385 U.S. 23, 87 S. Ct. 193, 17 L. Ed. 2d 23 (1966) .......................................... 21

*UMG Recordings, Inc. v. Augusto*,
  628 F.3d 1175 (9th Cir. 2011) ..................................................................... 12, 13

# TABLE OF AUTHORITIES
(continued)

**Page**

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP,*
593 F. Supp. 2d 1153 (S.D. Cal. 2008) ........................................................ 16, 17

*Wong v. Regents of the Univ. of Cal.,*
379 F.3d 1097 (9th Cir. 2004) ............................................................................ 17

## STATUTES

17 U.S.C. § 101 ..................................................................................................... 13

17 U.S.C. § 412 ....................................................................................................... 4

## OTHER AUTHORITIES

10A Charles A. Wright, et al., *Federal Practice and Procedure* § 2712
(3d ed. 2002) ..................................................................................................... 21

3 P. Goldstein, *Goldstein on Copyright* 4:13 (3d ed. 2012) .................................. 14

## RULES

FED. R. CIV. P. 56 ..................................................................................................... 4

FED. R. CIV. P. 56(a) ........................................................................................... 1, 20

FED. R. CIV. P. 56(c)(2) .................................................................................... 16, 19

Local Rule 6-1 ......................................................................................... 15, 16, 17

Local Rule 7-10 ..................................................................................................... 17

Local Rule 7-9 ........................................................................................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Skechers brings this motion for clarification of certain aspects of the Court's Order.  In particular, the Court's Order only addresses one of the issues on which Skechers sought summary judgment—namely, Skechers' joint work defense. However, in its Notice of Motion and Motion for Summary Judgment ("Mot.," Dkt. No. 125), Skechers sought summary judgment on a number of grounds in addition to its joint work defense, the only ground on which the Court denied the Motion.  The Court's Order states that Skechers' Motion was granted in part and denied in part (Order at 1), but ambiguity remains as to which, if any, of Skechers' other summary judgment requests were granted.  Under Rule 56(a) of the Federal Rules of Civil Procedure, Skechers is entitled to summary judgment on the issues for which it established there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Skechers respectfully requests that the Court issue an amended Order clarifying its ruling on the other issues or grounds on which Skechers sought summary judgment.

*First*, Skechers sought summary judgment that Plaintiff is not entitled to an award of statutory damages or attorney's fees.  (Mot. at 1:6-9.)  In its Motion, Skechers established that there was no genuine dispute of material fact and that the record supported judgment as a matter of law on this issue.  (*Id*. at 40:12-41:19.) *Importantly, Plaintiff did not oppose Skechers' request for summary judgment on this issue*.  (Dkt. No. 149 ("Opp.") at 10 n.1.)  Even though this issue was ripe for summary judgment, it appears that the Court did not rule on it.

*Second*, Skechers specifically sought summary judgment on Plaintiff's claim for $33 million in alleged "indirect profits," an issue that was briefed extensively in the Motion and related evidentiary motions and objections.  (Mot. at 1:6-9, 34:17-40:9; Dkt. No. 183 ("Reply") at 22:18-34:12; Dkt. No. 185 ("Objections" or "Obj.") at 2-9.)  In fact, a significant part of the parties' oral argument was directed

toward this issue.  (Welsh Decl. ¶ 2, Ex. 1 (July 23, 2012 Tr. ("Tr.")) at 23:2-38:17.)  While the Court excluded the testimony of two experts, Frank Luntz and Jamie Turner, on which Plaintiff relied for his indirect profits claim, and acknowledged that new and previously undisclosed expert opinions filed with Plaintiff's opposition were untimely, the Court did not state whether it was granting Skechers' request for summary judgment on Plaintiff's indirect profits claim.  The undisputed facts established that Plaintiff failed to carry his burden to identify a particular revenue stream having a legally sufficient relationship or causal nexus to the infringement and Skechers is entitled to summary judgment.  (*See* Order at 17:2-19 (discussing Plaintiff's burden to establish entitlement to indirect profits).)

*Third*, Skechers sought summary judgment on Plaintiff's copyright claim on the independent ground that Plaintiff's invoices were not copyright licenses as a matter of law, and therefore imposed only *contractual* restrictions on Skechers, not restrictions enforceable by federal copyright law.[1]  (Mot. at 1:23-28, 30:17-34:14.)  In its Order, the Court expressed doubt as to the continued relevance of this

---

[1] Skechers has maintained from the outset that this is at best a breach of contract case masquerading as a copyright case so Plaintiff can maintain outrageous damage claims that this Court has referred to as "incredulous."  (Tr. at 28:10-18.)  Indeed, the undisputed facts showed that five months before the parties were involved in any legal dispute, Plaintiff's agent Bobby Heller contacted Skechers and proposed a complete worldwide buyout for all the raw photographs at issue in this litigation for $200,000.  The buyout was broad and all-encompassing because, as stated by Plaintiff's agent Bobby Heller, the scope and extent of the additional usages were unclear.  Plaintiff's agent then sent a non-negotiated $200,000 invoice to Skechers for a "World Wide Buy Out," which stated "Due Upon Receipt."  Skechers asked for information relating to the alleged additional usages, and Plaintiff's agent then revoked the $200,000 buyout.  (*See* Mot. at 20:10-21:19; Plaintiff's Stmt. of Genuine Issues ¶¶ 76-88, Dkt. No. 155.)  Months later Plaintiff filed suit and has alleged at various times that Skechers' use of the images—the same ones represented by his $200,000 invoice—entitles him to anywhere from $33 million to $250 million in indirect profits.  (*See* Tr. at 28:10-23.)  Skechers has already incurred significant expense in this litigation and has established as a matter of law that Plaintiff cannot meet his burden for proving statutory damages, attorney's fees, and indirect and/or direct profits emanating from alleged copyright infringement—issues that Skechers properly presented for summary judgment and sought a ruling on.

1   alternative ground in light of its ruling on Skechers' joint work defense.  (Order at

2   20:22-24 & n.8.)  Skechers respectfully submits that regardless of the Court's

3   ruling on Skechers' joint work defense, Plaintiff cannot succeed with his copyright

4   claim as a matter of law because the undisputed evidence establishes that each of

5   the invoices woefully fails the Ninth Circuit's multi-factor test for establishing that

6   a writing imposes restrictions enforceable under federal copyright law.  As a result,

7   the invoices only impose contractual restrictions enforceable under California law.

8   Accordingly, Skechers requests clarification from the Court on this portion of the

9   motion, as well.

10          *Next*, Skechers seeks clarification regarding the Court's seemingly disparate

11   treatment of Skechers' evidentiary objections to and motion to strike the late-

12   disclosed expert opinions of Jamie Turner and David Connelly.  (*See* Obj., Dkt.

13   No. 185.)  The Court granted Skechers' objection as to Turner, but did not rule on

14   Skechers' objection to Connelly—even though the late-disclosed Turner and

15   Connelly opinions were filed by Plaintiff *at the same time* (*i.e.*, in opposition to the

16   Motion), *the Court acknowledged both submissions were late*, and both sets of

17   Skechers' objections were contained *in the same filing*.  (*Compare* Order at 18-19

18   n.5, *with id.* at 18 n.6.)  The Court also vacated Skechers' timely motion to strike

19   the Connelly submission, ruling that Skechers did not give the 28 days' notice

20   required by Local Rule 6-1, which Skechers respectfully submits does not apply to

21   a motion to strike summary judgment evidence.  Skechers respectfully submits that

22   as the Court sustained Skechers' timely-filed objection to the late-disclosed Turner

23   materials, it should likewise sustain Skechers' timely-filed objection and/or grant

24   the motion to strike to the late-disclosed Supplemental Connelly Report.[2]

---

[2] To be clear, Skechers contends it is entitled to summary judgment on Plaintiff's
indirect profits claim regardless of whether the Court considers either Turner's or
Connelly's untimely submissions.  *See* Order at 18 n.5 ("The court does not
consider Turner's newly proffered opinion, submitted as an opposition to
Skechers' Motion in Limine.  *Even if the court were to consider Turner's
declaration, the result here would not change.*).

*Finally*, Skechers seeks clarification that the Court did not intend the Order to factually or legally preclude Skechers from pursuing its joint work defense at trial.  As the Court knows, relief on summary judgment is restricted to the moving party (here, Skechers), and Plaintiff cannot obtain affirmative relief through the denial of Skechers' motion.  However, the Order contains language that could be interpreted as indicating that Skechers is foreclosed from presenting its joint work defense at trial.  (*See* Order at 21:4-6 ("Skechers has not demonstrated that the parties intended to be co-authors of the finished marketing images, which are, therefore, not joint works.").)  To avoid any confusion, Skechers' motion requests confirmation that the Court's Order has concluded no more than that a genuine dispute of material fact remains as to whether the Skechers marketing images at issue are joint works.

## II.   SKECHERS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR STATUTORY DAMAGES AND ATTORNEY'S FEES.

There is no dispute that summary judgment is warranted on Plaintiff's claims for statutory damages and attorney's fees under the Copyright Act.  The Copyright Act states that in order to obtain an award of statutory damages or attorney's fees, a plaintiff must register the works at issue within three months of the alleged infringement.  (Mot. at 40:12-41:19 (*citing* 17 U.S.C. § 412).)  The undisputed record established that Plaintiff did not timely register his photographs as required by the Act.  (*Id.* at 41:1-19.)  Plaintiff conceded he was not entitled to either of these remedies.  (Opp. at 10 n.1 ("Reinsdorf does not oppose the motion insofar as it concerns recovery of statutory damages and attorneys' fees.").)  Accordingly, Skechers respectfully submits it is entitled to summary judgment on this issue under Rule 56 of the Federal Rules of Civil Procedure.

### III.   SKECHERS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INDIRECT PROFITS.

#### A.   Why Clarification Is Necessary.

Skechers also respectfully requests clarification of the Court's ruling on Plaintiff's $33 million indirect profits claim.  Skechers specifically sought summary judgment on Plaintiff's indirect profits claim.  Skechers also filed related evidentiary objections and motions directed at Plaintiff's failure of proof on a critical element of their indirect profits claim—namely, proffering admissible evidence showing a "causal nexus" between Skechers' alleged infringing use of marketing images containing Plaintiff's photographs and an identifiable and particularized stream of revenue.  Without admissible evidence showing the requisite "causal nexus," Plaintiff's claim for indirect profits necessarily fails as a matter of law.

Clarification is necessary here because (i) the Court did not rule on Skechers' request for summary judgment, despite its ruling excluding the expert testimony of Jamie Turner and Frank Luntz on which Plaintiff relies to establish the requisite causal nexus; (ii) the Court's failure to rule on Skechers' objection to the late-filed Supplemental Report of David Connelly (the "Supplemental Connelly Report"), Plaintiff's sole remaining indirect profits expert, is inconsistent with its decision sustaining Skechers' identical objection as to the late-filed Turner Declaration; and (iii) even if the Supplemental Connelly Report were considered, it was wholly inadequate to establish the required causal nexus, entitling Skechers to summary judgment on this claim.

#### B.   The Summary Judgment Motion and Related Evidentiary Motions and Objections.

A considerable portion of the parties' summary judgment briefing and oral argument concerned whether Plaintiff had met his burden to establish a particular revenue stream bearing a legally sufficient relationship to the alleged infringement.

(*See* Mot. at 1:6-9, 34:17-40:09; Tr. at 23:2-38:17.)  In both its Motion and Reply in Support of Summary Judgment, Skechers established that in order to be entitled to indirect profits, Plaintiff had to establish a "legally significant relationship" between the alleged infringement and the segment of the Skechers' business Plaintiff claims benefitted from the infringement.  (Mot. at 37:13-16 (quoting *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 711-12 (9th Cir. 2004)).)  Further, during oral argument the Court examined this issue at length, asking Plaintiff how his experts had accounted for potentially confounding variables such as the effects on profit of the design of the shoes (Tr. at 27:7-8), goodwill toward the Skechers brand (*id.* at 27:10-11), and Skechers' general marketing efforts aside from those in which Plaintiff was involved (*id.* at 27:19-21).  Plaintiff was unable to adequately address the Court's concerns.  (*Id.* at 27:9-28:9.)[3]

In further support of its summary judgment motion on this claim, Skechers filed evidentiary motions and objections directed to *all* of Plaintiff's indirect profits evidence, including separate *motions in limine* to exclude expert testimony from Jamie Turner (the "Turner Report") and Frank Luntz (the "Luntz Report") (Dkt. Nos. 127, 139) and objections to and motions to strike the late-filed Declaration of Jamie Turner (the "Turner Declaration") and Supplemental Connelly Report (Dkt. No. 185).  Skechers was forced to file the objections and motion to strike the Turner Declaration and Supplemental Connelly Report in connection with its Reply because these new expert opinions were filed late by Plaintiff as part of his Opposition.[4]

_____

[3] Skechers also established that, even considering the expert opinions of Luntz and Turner, Plaintiff failed to demonstrate his right to any indirect profits from Skechers.  (Mot. at 34:17-40:9; Reply at 22:21-34:12.)  As explained below, now that the Court has excluded expert testimony from Plaintiff's causation and damages experts, Plaintiff's evidence establishing a financial nexus between his photographs and Skechers' profits is non-existent.

[4] This is not the first time Plaintiff has submitted untimely expert reports.  For example, Plaintiff failed to comply with the initial March 2, 2012 deadline for exchanging expert reports (*see* Dkt. No. 37 (8/9/11 Scheduling Order); Dkt. No. 67 at 15:12-18:20).  Plaintiff also failed to comply with a later April 11, 2012

## C.   The Court's Ruling.

The Court's Order only addressed indirect profits in the context of Skechers' evidentiary motions and objections, but did not specifically address Skechers' request for summary judgment on that claim.  In the Order, the Court expressly adopted the Ninth's Circuit's *Polar Bear* standard for proving indirect profits, holding that "a plaintiff cannot merely present an infringer's gross revenue, but rather must identify a particular revenue stream that bears a legally sufficient relationship to the infringement."  (Order at 17:16-19 (internal quotation marks omitted).)  The Court then addressed at length the evidentiary submissions of Luntz and Turner and excluded them or sustained Skechers' objections:

- *The Luntz Report*:  This consisted of a survey purportedly measuring a "purchasing power link between Plaintiff's photography displayed in the Skechers' marketing images and the profits created from those images…."  (Opp. at 37:2-5.)  After finding that the Luntz Report "violate[d] numerous accepted practices in the field of survey research," the Court granted Skechers' motion to exclude Luntz's testimony and report stating, the "inadequacies speak not merely to the weight that should be accorded to the survey but rather to the fundamental reliability of Luntz's approach."  (Order at 16:18-26.)

- *The Turner Report*:  This submission purportedly provided an "expert opinion regarding branding and the causal link between Skechers' unauthorized use of Reinsdorf's photographs and Skechers' revenues and profits."  (Opp. at 38:8-10.)  In granting Skechers' motion to exclude, the Court held that the Turner Report "is not the product of reliable methods," "identifies no causal link, let alone a non-speculative

---

deadline for exchanging expert reports after the Court granted Plaintiff relief from the first violation but stated "no further extensions shall be granted."  (*See* Dkt. No. 69 (3/15/12 Order); Dkt. No. 72 at 2-18; Dkt. No. 74 at 2-7.)

SKECHERS' MEMORANDUM OF
POINTS AND AUTHORITIES
CV10-7181-DDP (SSX)

1    connection between Skechers' alleged infringement and any particular

2    revenue stream," and "cannot serve as the basis for granting [Plaintiff]

3    Skechers' indirect profits."  (Order at 18:17-19:6.)

4    • *The Turner Declaration*:  The Court sustained Skechers' objection to this

5       late-filed submission but added that, even if it had been considered, it

6       would not change the Court's conclusion to exclude Turner's opinion

7       because the late "declaration is internally inconsistent" and "relies on

8       *other late-filed declarations* that conflict with Turner's statements and

9       conclusions."  (Order at 18 n.5.)

10   After these rulings, the only evidentiary submission before the Court on the

11   critical issue of causal nexus is the Supplemental Connelly Report, another late-

12   filed submission to which Skechers objected and moved to strike.  The Court

13   expressly acknowledged that the Supplemental Connelly Report was filed late.

14   (*See* Order at 19 n.5 (noting that the Turner Declaration "purports to rely on other

15   late-filed declarations" in reference to the late Supplemental Connelly Report).)

16   The Court did not, however, consider Skechers' objection to this late-filed material

17   and determined that Skechers' motion to strike was untimely—thereby making it

18   impossible for Skechers to prevent the Court from considering this material.  *See*

19   Section V, *infra*.  Additionally, the Court's Order fails to address Skechers'

20   showing that, even if the late-filed Connelly material were considered, it woefully

21   fails to provide the requisite evidence establishing a causal relationship between

22   the marketing images containing Plaintiff's photographs, as distinct from

23   Skechers' many other advertising marketing campaigns, and any specific stream of

24   income.

25

26

27

28

**D.**     **The Supplemental Connelly Report Is Both Inadmissible and Inadequate As a Matter of Law, Entitling Skechers to Summary Judgment on Plaintiff's Indirect Profits Claim.**

Plaintiff submitted the Supplemental Connelly Report to purportedly demonstrate that "the gross profits attributable to [Skechers'] infringement" was "$33.66 million." (Opp. at 42:13-43:5.)  Skechers' motion to strike and its Reply set forth at length reasons why the Supplemental Connelly Report is inadmissible and, even if it was admitted, wholly inadequate to establish a causal nexus between Skechers' alleged infringement and any particular revenue stream.  (Objection at 6:3-9:10; Reply at 30:4-33:13.)

Skechers maintains the Court should have considered Skechers' evidentiary objection to the late-filed Supplemental Connelly Report and that, like the late-disclosed submission of Jamie Turner, the Court should have sustained Skechers' objection and stricken the Supplemental Connelly Report.

Further, regardless of whether the Supplemental Connelly Report is considered by the Court, Plaintiff still failed to establish a causal nexus between Skechers' alleged infringement and any increases in Skechers' gross profits.  First, Connelly relies on the now-excluded Luntz Report to make this causal connection, observing that Luntz's "survey serves to attribute Skechers' increasing gross revenues to the Reinsdorf photos." (Briggs Supp. Decl. ISO Opp'n, Ex. 56 (Supp. Connelly Rep.) at 11, Dkt. No. 180.)  Second, as Skechers established in its Reply, critical deficiencies in the Supplemental Connelly Report undermine his indirect profits opinion.  As a glaring example, Connelly acknowledges that Plaintiff cannot provide evidence showing the actual sales or revenue that Skechers derived from particular Skechers footwear styles or lines.  (Reply at 30:15-19.)  Nor does Connelly even attempt to subtract non-infringing uses from his estimate of damages.  (*Id.* at 31:15-17.)  Equally fatal to his analysis, Connelly merely asserts that Skechers' gross profits would have been lower had Skechers not used Plaintiff's photographs in its marketing images, without providing any evidence or

substantiation for this assertion.  (*See* Reply at 32:3-33:13; Tr. at 37:17-38:15.)
Analysis based merely on assumed facts does not satisfy the "legally significant
relationship" requirement of *Polar Bear*.  384 F.3d at 711-12.

In sum, the Court addressed indirect profits in its Order, adopting the
applicable legal standard (Order at 17:16-19), and excluding Luntz's and Turner's
testimony.  As set forth above and in Section V below, the sole remaining
evidentiary submission, the untimely Supplemental Connelly Report, is both
inadmissible and wholly inadequate to create a triable issue preventing summary
judgment in Skechers' favor.  Plaintiff's complete failure to proffer reliable
evidence establishing his entitlement to indirect profits and to carry his burden of
showing a "causal nexus between the infringement and [Skechers'] gross revenue"
entitles Skechers to summary judgment on this claim as a matter of law.  *Polar
Bear*, 384 F.3d at 711-12.  Skechers therefore requests further clarification on the
Court's ruling on this issue and that the Court enter summary judgment in its
favor.[5]

### E.   Plaintiff Cannot Avoid Summary Judgment on the Basis of His Alleged "Direct Profits" Claim.

Plaintiff previously opposed Skechers' motion for summary judgment on
indirect profits by claiming, *in an entirely new argument*, that he also sought a
portion of Skechers' "direct profits."[6]  Specifically, Plaintiff claimed for the first

---

[5] If the Court is inclined to deny Skechers' summary judgment motion on indirect profits based upon the Supplemental Connelly Report, Skechers requests that the Court allow the parties a hearing prior to its ruling; Skechers intends to file a motion *in limine* to exclude Connelly's testimony prior to such a hearing.  (*See* Order at 19 n.6 ("Skechers remains free to file a Motion in Limine regarding the supplemental Connelly report.").)

[6] As the Ninth Circuit explained, "direct profits are "those that are generated by selling an infringing product"—for example, monies derived from the sale of infringing artwork—while "indirect profits" consist of "revenue that has a more attenuated nexus to the infringement."  *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002).  Plaintiff's contention that he is entitled to a portion of Skechers' profits from shoes which it marketed by using images incorporating photographs taken by Plaintiff is a classic "indirect profits" claim.

SKECHERS' MEMORANDUM OF
POINTS AND AUTHORITIES
CV10-7181-DDP (SSX)

time in his Opposition to Skechers' summary judgment motion that he should
receive some part of Skechers' profits from the sale of shoes which used a
particular marketing image (the "Disco Kiss" image) on the cover of the shoe box.
(Opp. at 31:2-10.)  As Skechers explained in its Reply, however, this claim cannot
withstand scrutiny for several reasons:

- Plaintiff never identified any direct profits claim in response to pointed
  written discovery concerning his alleged damages.

- Plaintiff never asked for in discovery, and has no proof for, his
  unsubstantiated assertion that the Disco Kiss image was used "on each
  box of Cali footwear sold by Skechers" or that that image "was an
  integral part of the Cali footwear product line" and was "inextricably
  linked to that product line."  (Opp. at 31:6-22.)  Indeed, to support this
  assertion Plaintiff explicitly relied on the Luntz Report and the Turner
  Report—both of which have since been excluded by the Court.  (*See*
  Order at 16:18-26, 18:17-19:6.)

- The legal authorities on which Plaintiff relied make clear that Skechers'
  use of the Disco Kiss image on shoe boxes does not give rise to a direct
  profits claim.  In both *Fedtro, Inc. v. Kravex Mfg. Corp.*, 313 F. Supp.
  990 (E.D.N.Y. 1970), and *Garcia v. Coleman*, No. C-07-2279 EMC,
  2009 WL 799393 (N.D. Cal. Mar. 24, 2009), the copyrighted article was
  directly affixed to the products that were sold by defendants and
  plaintiffs proffered sufficient evidence to show that the copyrighted
  materials performed functions that likely influenced consumers'
  purchasing decision.  None of those factors are present here, and
  Plaintiff's evidence on this point has now been excluded by the Court.

(*See* Reply at 25:10-27:6.)

Put simply, there is no disputed issue of fact concerning whether Plaintiff's
photographs were a material factor in causing any purchases of Skechers footwear.

1   Plaintiff's claim otherwise is nothing more than an unsubstantiated claim for
2   "<u>indirect</u> profits" and Skechers is therefore entitled to summary judgment in its
3   favor on such claim.

4   **IV.   <u>SKECHERS IS ENTITLED TO SUMMARY JUDGMENT ON
5         PLAINTIFF'S COPYRIGHT CLAIM ON THE INDEPENDENT
          GROUND THAT PLAINTIFF'S INVOICES WERE NOT
6         COPYRIGHT LICENSES AS A MATTER OF LAW.</u>**

7         In its Order, the Court expressed doubt as to the continued relevance of
8   Skechers' separate request for summary judgment on the ground that Plaintiff's
9   invoices were not copyright licenses as a matter of law.  (Order at 20:22-24.)  The
10  Court stated that "[h]aving determined that the finished advertisements are not
11  joint works, it is unclear to the court whether Skechers' license argument remains
12  relevant."  (*Id.*)  Skechers respectfully submits that this separate ground for
13  summary judgment remains not only highly "relevant," but dispositive of
14  Plaintiff's summary judgment claim.

15        Plaintiff's copyright claim is expressly predicated on his contention that the
16  parties entered into written "license agreements" (the terms of which are contained
17  in the invoices sent to Skechers), and that Skechers infringed by exceeding the
18  scope of those alleged licenses.  (*See*, *e.g.*, Dkt. No. 1 (Compl.) ¶ 5 (alleging
19  Skechers "engaged Reinsdorf's services and his photographs *under a very limited
20  license*…."); *see also id.* ¶¶ 6, 16, 19, 22, 25, 29 (same).)  As set forth in Skechers'
21  Motion and Reply papers, the Ninth Circuit has adopted a multi-factor test for
22  determining whether a writing is a copyright license—*i.e.*, whether the document
23  imposes restrictions enforceable by federal copyright law—or merely imposes
24  contractual limitations enforceable under state law.  As illustrated by the Ninth
25  Circuit's decision in *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175 (9th Cir.
26  2011), a court's determination that a writing does not constitute a copyright license
27  has resulted in summary judgment of the plaintiff's copyright claim.

28

SKECHERS' MEMORANDUM OF
POINTS AND AUTHORITIES
CV10-7181-DDP (SSX)

1    In *UMG*, the plaintiff record company sued for copyright infringement

2 arising out of the defendant's sale of specially-produced compact discs that the

3 record company provided to music critics and radio disc jockeys.  Applying the

4 Ninth Circuit's balancing test, the Court determined that any writing that

5 accompanied distribution of the compact discs did not amount to a copyright

6 license because "UMG ... did not retain 'sufficient incidents of ownership'" (*id*. at

7 1183) of the copies such that the defendant's subsequent distribution of the

8 promotional copies did not constitute a violation of the plaintiff's rights under

9 copyright.  Likewise here, Plaintiff's invoices fail to satisfy the Ninth Circuit's

10 multi-factor test and it is undisputed that Skechers has at all times retained

11 possession of the photographs in question.  (Mot. at 30:17-34:14; Reply at 16:23-

12 22:17.)  As the undisputed facts establish that the invoices are not copyright

13 license agreements, any claimed breaches by Skechers can only give rise to a state

14 law claim for breach of contract—not a federal law claim for copyright

15 infringement.  Accordingly, Skechers requests clarification from the Court

16 regarding its ruling on this separate ground for summary judgment of Plaintiff's

17 copyright claim.[7]

18

19 _____

[7] As indicated in its Joint Response to Court's Order Regarding Trial Date (Dkt.

20 No. 197), Skechers may also bring a motion requesting the Court to certify its
ruling on Skechers' joint work defense, for interlocutory review.  Skechers

21 respectfully submits that the Court incorrectly applied the Ninth Circuit's test in
*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 1999), to the undisputed facts as

22 found by the Court.  Here, the Court found that undisputed evidence established
that Skechers satisfied two of the three *Aalmuhammed* factors, including what the

23 Ninth Circuit described as the "most important" (*id*. at 1243) control factor.  (*See*
Order at 7:11-9:8.)  Nonetheless, the Court concluded that the marketing images

24 were not "joint works" because disputed evidence existed as to the one remaining
factor, whether or not the parties intended to be co-authors.  (*Id*. at 12:20-25.)

25   Skechers respectfully submits that by requiring a party asserting a joint work
defense to satisfy the "intent to be co-authors" factor even though the other factors

26 have been found in that party's favor, amounts to the legal imposition of a new
"intent" requirement onto the Copyright Act's definition of "joint works" (*see* 17

27 U.S.C. § 101) that is neither found in the text of the Copyright Act nor supported
by legislative history.  *See, e.g., Janky v. Lake Cnty. Convention & Visitors*

28 *Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) ("[T]he intent prong [of the Copyright
Act's definition of "joint works"] does not have to do with the collaborators' intent

SKECHERS' MEMORANDUM OF
POINTS AND AUTHORITIES
CV10-7181-DDP (SSX)

**V.  SKECHERS REQUESTS CLARIFICATION OF THE COURT'S FAILURE TO RULE ON SKECHERS' EVIDENTIARY OBJECTION TO CONNELLY'S LATE-DISCLOSED SUPPLEMENTAL REPORT AND ON THE COURT VACATING SKECHERS' MOTION TO STRIKE.**

**A.  Why Clarification Is Necessary.**

In opposition to Skechers' Motion, Plaintiff submitted the Turner Declaration and Supplemental Connelly Report as expert testimony on the issue of indirect profits.  These brand new expert reports were also *first served on Skechers with Plaintiff's Opposition*, long after the close of expert discovery.  The new Turner Declaration attempted to bolster the excluded Turner Report, and relied in part on the late-filed Supplemental Connelly Report.  Along with its Reply, Skechers filed *both* evidentiary objections and motions to strike *both* submissions on the grounds that they were untimely and contained new and previously undisclosed expert opinions long after the close of expert discovery.  (Obj. at 1-9.)

- *The Court's Ruling on the Turner Declaration:*  In ruling on the evidentiary objections and motion to strike the late-filed Turner Declaration, the Court sustained Skechers' objection (*see* Order at 19 n.6 ("the court has sustained Skechers' objection to Turner's newly-filed expert opinion")), and acknowledged that both the Turner Declaration

---

to recognize each other as coauthors for purposes of copyright law; the focus is on the parties' intent to work together in the creation of a single product, not on the legal consequences of that collaboration."); 3 P. Goldstein, *Goldstein on Copyright* 4:13 (3d ed. 2012) ("The plain language of section 101's definition of joint work—supported by its legislative history—reflects Congress's intention that the state of mind required for a joint work to be created should be the authors' intention that their contributions merge into a unitary whole, and not the authors' legal conclusions that they will be joint authors.").  Skechers also respectfully submits that the Court's insistence that Skechers satisfy *all* the *Aalmuhammed* factors is inconsistent with the Ninth Circuit's statement that the *Aalmuhammed* factors "cannot be reduced to a rigid formula."  202 F.3d at 1235.  Indeed, the Ninth Circuit has made it clear that a party need not satisfy all the *Aalmuhammed* factors in order to prevail on the joint work issue.  *See, e.g., Richlin v. MGM Pictures, Inc.*, 531 F.3d 962, 970 (9th Cir. 2008) (affirming judgment in favor of the party satisfying two of the three *Aalmuhammed factors*, even though the third factor favored the other party).

and Supplemental Connelly Report were late (*see id*. at 19 n.5 (noting that the Turner Declaration "purports to rely on *other late-filed* declarations" in reference to the late Supplemental Connelly Report)).

- *The Court's Ruling on the Supplemental Connelly Report*:  The Court, however, reached an entirely different conclusion with respect to Skechers' evidentiary objection and motion to strike the Supplemental Connelly Report.  Despite recognizing that both the Turner Declaration and Supplemental Connelly Report were both late-filed submissions (Order at 19 n.5), the Court *did not rule* on Skechers' evidentiary objection and, without prejudice to Skechers later filing a *motion in limine*, vacated Skechers' motion to strike the Supplemental Connelly Report as untimely under Local Rule 6-1, which requires that motions be made on 28 days' notice.  (*Id*. at 19 n.6.)

The reason for the Court's disparate rulings remains uncertain.  On the one hand, it might be inferred from the text that the Court inadvertently overlooked the objection and concluded that Skechers only moved to strike the Supplemental Connelly Report and only objected to the Turner Declaration.  (*See* Order at 19 n.6 ("Skechers presented its [objection to Turner] in combination with a purported motion to strike the supplemental report of David Connelly.").)  Alternatively, it might also be the Court concluded that an evidentiary objection combined with a motion to strike cannot be considered unless by a fully noticed motion under Local Rule 6-1.

Clarification is thus necessary to determine (i) why the Court reached disparate results on Skechers' evidentiary objections to the Supplemental Connelly Report and Turner Declaration, even though Skechers included its objections to both submissions within the same document and the Court recognized both were untimely; (ii) why the Court vacated the motion to strike the Supplemental Connelly Report as untimely under Local Rule 6-1, which does not apply to

1   motions to strike evidence on summary judgment; and (iii) the prejudicial effect of

2   not ruling on the evidentiary objection and vacating the motion to strike on

3   Skechers' summary judgment motion on Plaintiff's indirect profits claim, which

4   should have been granted.

**B.   Skechers Is Clearly Entitled to a Ruling in Its Favor on Both the Evidentiary Objection and Motion to Strike the Supplemental Connelly Report Under Well Settled Ninth Circuit Law.**

1.   *The Applicable Law.*

8   It is well-established that "the Court has discretion to strike inadmissible

9   evidence filed in support of a summary judgment motion." *Vaxiion Therapeutics,*

10  *Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1161 n.5 (S.D. Cal. 2008); *see*

11  *also* FED. R. CIV. P. 56(c)(2) ("[A] party may object that the material cited to

12  support or dispute a fact cannot be presented in a form that would be admissible in

13  evidence."). An objection to admissibility of evidence filed in support or

14  opposition to summary judgment may be presented in two ways: as an evidentiary

15  objection or motion to strike. *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1003

16  (9th Cir. 2002) (holding that motion to strike or objection were equally able to

17  preserve defendant's evidentiary objection). The case law does not distinguish

18  between these two types of evidentiary challenges and treats a motion to strike

19  summary judgment evidence no differently than an objection. As the Ninth Circuit

20  has recognized, "[d]efects in evidence submitted in opposition to a motion for a

21  summary judgment are waived 'absent a motion to strike or other objection.'"

22  *FDIC v. N.H. Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (quoting *Scharf v. U.S.*

23  *Attorney Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979)).

24  The Court vacated Skechers' motion to strike the Supplemental Connelly

25  Report as untimely on the grounds that Skechers did not comply with Central

26  District Local Rule 6-1, requiring 28 days' notice. There is no authority in the

27  Ninth Circuit holding that a party challenging summary judgment evidence by a

28  motion to strike—as opposed to an evidentiary objection—must file a motion on

SKECHERS' MEMORANDUM OF
POINTS AND AUTHORITIES
CV10-7181-DDP (SSX)

1   28 days' notice under Local Rule 6-1 (or similar local court rules).  Further,

2   imposing such a requirement cannot be squared with both Ninth Circuit law and

3   the Local Rules governing motions in general, including summary judgment

4   motions.  As noted, Ninth Circuit law treats both evidentiary objections and

5   motions to strike as objections that must be must be made or waived *during*

6   *summary judgment proceedings*.  *Id.*  Since the Local Rules permit parties to file

7   evidence in opposition to summary judgment 21 days before a hearing and a reply

8   14 days before a hearing (Local Rule 7-9, 7-10), requiring a motion to strike on 28

9   days' notice would completely eviscerate this evidentiary challenge in such

10  circumstances (and logically invite abuse).  Again, the Ninth Circuit has made no

11  such distinction and clearly treats a motion to strike as a vehicle for an evidentiary

12  objection, not as a regularly noticed motion.[8]

13       The Court also has discretion to sustain an objection to, or grant a motion to

14  strike, inadmissible expert testimony offered in the context of summary judgment.

15  *Vaxiion Therapeutics*, 593 F. Supp. 2d at 1162-64 (granting motion to strike

16  evidence cited in motion for summary judgment after finding expert not qualified

17  to offer opinion); *see also Wong v. Regents of the Univ. of Cal.*, 379 F.3d 1097,

18  1105 (9th Cir. 2004) (affirming district court's exclusion of late-disclosed expert

19  opinions offered in opposition to motion for summary judgment); *Luke v.*

20  *Emergency Rooms, P.S.*, No. C04-5759 FDB, 2008 WL 410672 (W.D. Wash.

21  Feb. 12, 2008) (explaining that summary judgment order was vacated and

22  remanded by appellate court after court failed to rule on an evidentiary objection to

23  late-disclosed expert testimony).

24

25  _____

26  [8] Even if the Court were to conclude that requiring a regularly noticed motion to strike under Local Rule 6-1 is not inconsistent with Ninth Circuit law governing such motions on summary judgment, there is no authority for not ruling on Skechers' timely evidentiary objection to the Supplemental Connelly Report. There is no notice requirement imposed on an objection, whether or not it is combined with a motion to strike.

27

28

SKECHERS' MEMORANDUM OF
POINTS AND AUTHORITIES
CV10-7181-DDP (SSX)

2.   *The Court Should Sustain Skechers' Evidentiary Objection and Grant the Motion to Strike the Supplemental Connelly Report.*

Here, Skechers clearly objected to and moved to strike the Supplemental Connelly Report and the Turner Declaration on the grounds that they were untimely and contained new expert opinions long after the close of expert discovery.  Skechers' unambiguous evidentiary objection to the Supplemental Connelly Report is clearly stated on the caption page of the document it filed with the Court.  (*See* Dkt. No. 185.)  The Court even acknowledged that both the Supplemental Connelly Report and Turner Declaration were filed late, but failed to rule on the objection to the Supplemental Connelly Report and vacated the motion to strike.  (*See* Order at 18-19 n.5, n.6.)  Under Ninth Circuit law, Skechers is clearly entitled to a ruling both sustaining its evidentiary objection and granting its motion to strike the Supplemental Connelly Report.

The recent case of *Luke v. Emergency Rooms, P.S.*, No. C04-5759 FDB, 2008 WL 410672 (W.D. Wash. Feb. 12, 2008), is directly on point.  In *Luke*, the court vacated and remanded a district court order on summary judgment after the court failed to explicitly rule on an evidentiary objection to late-disclosed expert testimony.  The Ninth Circuit remanded because the district court failed to specifically rule on the admissibility of newly-disclosed "supplemental" expert declarations offered in opposition to a motion for summary judgment.  *Id.* at *2. On remand, the district court entered an order allowing defendants to file a motion to strike the supplemental expert declarations and renew their summary judgment motion.  *Id.*  The court then granted the motion to strike because the supplemental declarations presented new, contradictory opinions as compared to the initial expert reports.  *Id.* at *3.  The court noted:

> All of Plaintiffs' experts in initial disclosures stated that the change in liver function could not be detected until sometime between two and four weeks after initiation of

Antabuse . . . . It was not until response to the motion for summary judgment that these experts (and newly-named experts) opined that testing ten days after initiating Antabuse would have revealed elevated liver functions.

*Id.* The court also granted the defendants' motion for summary judgment, as the plaintiffs previously had relied on the inadmissible supplemental expert declarations to create a genuine dispute of material fact. *Id.* at *5.

Similarly, Skechers objected to and moved to strike the Supplemental Connelly Report, moving on nearly identical grounds to those in *Luke*. Skechers' objection was based on Connelly's late-filed opinion on indirect profits, despite admitting at his deposition that he lacked the data needed to render such an opinion and, as of the date of his Supplemental Report, still did not possess such data. (Obj. at 6:16-7:18.) Connelly's supplemental opinion was in turn used by Plaintiff to argue that a genuine dispute of material fact existed as to indirect profits. (*See, e.g.*, Reinsdorf's Stmt. of Genuine Issues ¶¶ 91-92, Dkt. No. 155.) But just as in *Luke*, Connelly's new opinion came well after the close of discovery, and only after Skechers had moved for summary judgment, and contradicts—rather than supplements—his previous testimony. (Obj. at 6:3-9:10.) The Supplemental Connelly Report is therefore inadmissible and cannot be used to support Plaintiff's Opposition. Fed. R. Civ. P. 56(c)(2).

## C. Skechers Is Entitled To Summary Judgment on Plaintiff's Claim for Indirect Profits.

As discussed at length in Section III, *infra*, the Supplemental Connelly Report is the only evidentiary submission before the Court in support of Plaintiff's claim for indirect profits. Skechers moved for summary judgment on that claim and made related evidentiary motions. The Court excluded all of Plaintiff's other evidence as inadequate, unreliable, untimely and inconsistent—but did not rule on the summary judgment motion. (Order at 12:26-19:6.)

As discussed in both Section III and this Section, the Supplemental Connelly Report, which the Court acknowledged was late-filed, is both inadmissible and inadequate to create an issue of fact.  The practical effect of the Court's interpreting Skechers' evidentiary objection as a standalone motion to strike and vacating the motion is to deprive Skechers of recourse against Plaintiff for his severely prejudicial late disclosure of an entirely new opinion from Connelly.  Thus, Skechers requests that the Court clarify its ruling as to the Supplemental Connelly Report, sustain Skechers' evidentiary objection and/or grant the motion to strike, and enter summary judgment for Skechers on Plaintiff's indirect profits claim.

## VI. SKECHERS REQUESTS CLARIFICATION THAT THE COURT DID NOT INTEND TO PRECLUDE SKECHERS' JOINT WORK DEFENSE AT TRIAL.

Skechers' Motion sought a ruling as a matter of law that its marketing images containing Plaintiff's photographs were joint works.  While it is clear that the Court denied Skechers' Motion on this point, the above-referenced language in the Order makes the import of that ruling on the remainder of the litigation open to misinterpretation.  (*See* Order at 21:4-6.)  Skechers thus seeks confirmation that the Court did not intend to factually or legally preclude Skechers from pursuing its joint work defense at trial.

Rule 56 restricts the Court's granting of relief on a motion for summary judgment to the movant.  FED. R. CIV. P. 56(a).  A movant is entitled to summary judgment if it shows that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  *Id.*  However, the failure of a movant to establish its entitlement to relief on the challenged issue does not—in the absence of a cross-motion—establish the opposing legal proposition.  As Wright & Miller recognize:

1                [T]he denial of summary judgment does not preclude

2                either party from raising at trial any of the issues dealt

3                with on the motion.  This is because a denial of summary

4                judgment is not a decision on the merits; it simply is a

5                decision that there is a material factual issue to be tried.

6  10A Charles A. Wright, et al., *Federal Practice and Procedure* § 2712 (3d ed.

7  2002).  The Supreme Court has likewise established that a denial of summary

8  judgment does not "touch on the merits of the claim"; it is "strictly a pretrial order

9  that decides only one thing—that the case should go to trial." *Switz. Cheese Ass'n,*

10  *Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25, 87 S. Ct. 193, 17 L. Ed. 2d 23

11  (1966).  Moreover, in line with Wright & Miller, California federal courts

12  recognize that the denial of summary judgment on an affirmative defense does not

13  preclude a defendant from raising that same defense at trial.[9]  *See, e.g.*, *Seals v.*

14  *Mitchell*, No. C 04-03764 NJV, 2010 WL 5094264, at *6 (N.D. Cal. Dec. 8, 2010)

15  (rejecting argument that loss of motion for summary judgment on qualified

16  immunity defense precluded defendant from raising the issue at trial).

17        Likewise here, Skechers presumes that the Court's ruling that it did not meet

18  its burden on summary judgment means that there exists a genuine dispute which

19  must be resolved at trial—not that Skechers' defense has been definitively resolved

20  against it.  Skechers therefore requests clarification from the Court that its denial

21  of Skechers' Motion does not factually or legally preclude Skechers from pursuing

22  its joint work defense at trial.

23

24

25

---

26  [9] That a denial of summary judgment does not establish the nonmoving party's legal position is evident in how a court must view the facts on summary judgment:

27  in deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."

28  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986); *see also* Order at 3:14-16 (employing *Anderson* standard).

SKECHERS' MEMORANDUM OF
POINTS AND AUTHORITIES
CV10-7181-DDP (SSX)

## VII.   <u>CONCLUSION</u>

Based upon the foregoing, Skechers respectfully requests that the Court clarify its Order on summary judgment with respect to (1) Plaintiff's entitlement to statutory damages and attorney's fees; (2) Plaintiff's entitlement to indirect profits; (3) whether Plaintiff's copyright infringement claim fails because the invoices are not copyright licenses and therefore, at most, only impose contractual obligations for any usage beyond any limitations that may be found to be contained in the documents; (4) the Court's ruling on Skechers' Objection and Motion to Strike with respect to the Supplemental Connelly Report; and (5) confirmation that Skechers is not factually or legally precluded from pursuing its joint work defense at trial.

Dated:  November 5, 2012          O'MELVENY & MYERS LLP

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli
Attorneys for Defendants Skechers U.S.A.,
Inc. and Skechers U.S.A., Inc. II